UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SHERI RODRIGUEZ,

                          Plaintiff,

v.                                                          5:22-CV-1050
                                                            (GTS/CFH)
EXCELLUS BLUECROSS BLUESHIELD, INC.,

                          Defendant.
_____

APPEARANCES:                                OF COUNSEL:

WIGDOR LLP                                  MARJORIE MESIDOR, ESQ.
  Counsel for Plaintiff
85 Fifth Avenue, Fifth Floor
New York, NY 10003

PHILLIPS & ASSOCS., PLLC                    STEVEN J. FINGERHUT, ESQ.
  Co-counsel for Plaintiff
45 Broadway, Suite 430
New York, NY 10006

BOND SCHOENECK & KING, PLLC                 ADAM P. MASTROLEO, ESQ.
  Counsel for Defendants                    HANNAH K. REDMOND, ESQ.
One Lincoln Center                          PETER A. JONES, ESQ.
Syracuse, NY 13202

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

       Currently before the Court, in this civil rights action filed by Sheri Rodriguez

("Plaintiff") against Excellus BlueCross BlueShield, Inc.[1] ("Defendant"), is Defendant's motion

to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted

_____

[1]       Defendant states in its opening memorandum that its proper name is "Excellus Health
Plan, Inc. d/b/a Excellus BlueCross BlueShield, Inc."  (Dkt. No. 14, Attach. 1.)  The Clerk of
Court is respectfully directed to amend the caption to reflect this correction.

pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt. No. 14.)  For the reasons set forth below, Defendant's

motion is granted in part and denied in part.

## I.      RELEVANT BACKGROUND

### A.      Plaintiff's Complaint

Generally, in her Complaint, Plaintiff asserts four claims.  (Dkt. No. 1.)  First, Plaintiff

claims that Defendant discriminated against her on the basis of her race in violation of 42 U.S.C.

§ 1981 both by treating her in a discriminatory or disparate manner and by creating a hostile

work environment ("First Claim").  (*Id.* at ¶¶ 65-71.)

Second, Plaintiff claims that Defendant retaliated against her in violation of 42 U.S.C. §

1981 by engaging in various hostile conduct and ultimately terminating her for reporting ongoing

harassment and racial discrimination that was occurring against Plaintiff and other Black

employees ("Second Claim").  (*Id.* at ¶¶ 72-79.)

Third, Plaintiff claims that Defendant discriminated against her in the same manner as

alleged above also in violation of the New York State Human Rights Law ("NYSHRL"), N.Y.

Exec. L. § 296(a) ("Third Claim").  (*Id.* at ¶¶ 80-86.)

Fourth, Plaintiff claims that Defendant retaliated against her in the same manner as

alleged above also in violation of the NYSHRL, N.Y. Exec. L. § 296 ("Fourth Claim").  (*Id.* at

¶¶ 87-95.)

### B.      Parties' Briefing on Defendant's Motion to Dismiss

#### 1.      Defendant's Memorandum of Law

Generally, in its motion to dismiss, Defendant makes four arguments.  (Dkt. No. 14,

Attach. 1.)  First, Defendant argues that Plaintiff's discrimination claims should be dismissed

because she has failed to plead facts plausibly suggesting the necessary inference of a

discriminatory motivation.  (*Id.* at 10-14.)  More specifically, Defendant argues that Plaintiff has

not alleged sufficient facts to plausibly suggest that any actions taken by Defendant, particularly

terminating her employment, were causally related to her race, because she has not pled

sufficient facts to show that the employees she alleges were treated more favorably than her are

similarly situated comparators.  (*Id.*)  Defendant also argues that the only adverse action that

Plaintiff has plausibly alleged is her termination, because none of the other conduct she alleges

Defendant engaged in following her protected activity constitutes a materially adverse action for

the purposes of showing a prima facie case of discrimination.  (*Id.* at 10-11.)

Second, Defendant argues that, to the extent that Plaintiff has intended to assert a claim

of discrimination also based upon her gender, she has not done so in any of the four explicitly

asserted claims in her Complaint, and in any event she has not included allegations sufficient to

plead such additional claim.  (*Id.* at 10 n.2.)

Third, Defendant argues that, to the extent Plaintiff has pled a separate claim for

discrimination based on a hostile work environment, such claim also should be dismissed as a

matter of law because (1) she has failed to allege facts sufficient to plausibly suggest the

existence of conduct rising to the level of a hostile work environment, and (2) she has failed to

plausibly allege that any such conduct was because of her race, particularly given that she has

alleged that both Black and White employees were subjected to the same allegedly hostile

conduct.  (*Id.* at 14-20.)

Fourth, Defendant argues that Plaintiff's retaliation claims should also be dismissed

because Plaintiff has not adequately pled that a causal nexus plausibly exists between her alleged

protected activity of reporting harassment or discriminatory conduct and the termination of her employment. (*Id.* at 20-22.) More specifically, Defendant argues that Plaintiff's Complaint is vague about what she reported as well as whether she specifically told Defendant that she understood the conduct she was reporting to implicate her race, and that part of the conduct that Plaintiff reported was, by her own admission, directed towards a White employee and therefore not plausibly suggestive of a protected activity. (*Id.*)

### 2. Plaintiff's Opposition Memorandum of Law

Generally, in her opposition memorandum of law, Plaintiff makes three arguments. (Dkt. No. 15.) First, Plaintiff concedes that she does not oppose dismissal of her hostile work environment claims. (*Id.* at 5 n.1.)

Second, regarding her discrimination claims based on disparate treatment, Plaintiff argues that (1) there is no question that the termination of her employment constitutes an adverse action, and (2) she has sufficiently pled facts plausibly suggesting that such termination occurred in circumstances that give rise to an inference of discriminatory intent by providing allegations regarding two employees who occupied the same position as Plaintiff and who were not terminated despite making costly mistakes, mistakes that were far more egregious than the conduct for which Plaintiff was terminated. (*Id.* at 9-12.)

Third, regarding her retaliation claims, Plaintiff argues that (1) she engaged in protected activity by informing her supervisor that another employee was treating her differently than the White male directors, as well as by reporting other conduct by that employee that she found to be objectionable, and (2) there is a causal connection between such reports and her termination

based on the fact that her employment was terminated approximately a month after her protected activity.  (*Id.* at 12-14.)

### 3.      Defendant's Reply Memorandum of Law

Generally, in its reply memorandum of law, Defendant makes three arguments.  (Dkt. No. 17.)  First, Defendant argues that its motion should be granted as to the arguments that Plaintiff has not opposed, namely related to her hostile work environment claims and any gender discrimination claim she may have intended to assert in the Complaint.  (*Id.* at 5-7.)

Second, Defendant argues that Plaintiff has not plausibly alleged a race discrimination claim under either the federal or state statutes because she has not plausibly alleged that her race was a motivating factor or was causally related to her termination.  (*Id.* at 7-11.)  More specifically, Defendant argues that allegations regarding the two comparators are insufficient because, although she alleges those individuals were "Directors," she does not allege that they were in the same specific director position as her in the same department, had a similar level of seniority, or had similar educational or experiential backgrounds as her, and her own allegations clearly show that the conduct in which those individuals engaged was not comparable to her own conduct.  (*Id.*)

Third, Defendant argues that Plaintiff has not alleged facts stating a plausible claim of retaliation because, notwithstanding the temporal proximity between her alleged protected activity and her termination, she has not plausibly alleged that her reports to her supervisor sufficiently constituted protected activity.  (*Id.* at 11-12.)  Specifically, Defendant argues that Plaintiff has not included facts sufficiently indicating that her employer was on notice that she felt she was the object of discrimination based on her race.  (*Id.*)

5

## II.     GOVERNING LEGAL STANDARDS

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cty.*, 549 F. Supp.2d 204, 211 nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J.) (adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate.  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) [emphasis added].  In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal."  *Jackson*, 549 F. Supp. 2d at 212 n.20 (citing Supreme Court case).  On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests."  *Jackson*, 549 F. Supp. 2d at 212 n.17 (citing Supreme Court cases) (emphasis added).

6

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212 n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213 n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 560-61, 577. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 555-70. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 555. More specifically, the

7

"[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (internal quotation marks and citations omitted). However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

## III.   ANALYSIS

8

A.      **Whether Plaintiff Has Stated a Plausible Claim of Discrimination Based on Her Race**

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Plaintiff's memorandum of law.  *See* Part I.B.2. of this Decision and Order.  To those reasons, the Court adds the following analysis.

"To state a § 1981 claim, a plaintiff must allege that: '(1) [s]he is a member of a racial minority; (2) [there was] an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute.'"[2] *Bentley, Jr. v. Mobil Gas Station*, 599 F. App'x 395, 396 (2d Cir. 2015) (quoting *Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 7 F.3d 1085, 1087 [2d Cir. 1993]).  "To survive a motion to dismiss, a plaintiff must specifically allege the 'circumstances giving rise to a plausible inference of racially discriminatory intent,'" and it is not sufficient to merely assert naked allegations that the defendant acted based on the plaintiff's race.  *Bentley, Jr.*, 599 F. App'x at 397 (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 [2d Cir. 1994]; citing *Albert v. Carovano*, 851 F.3d 561, 572 [2d Cir. 1988]).  Of note, at the motion-to-dismiss stage, a plaintiff "does not need substantial evidence of discriminatory intent," but rather need only plead "sufficient factual content giving rise to a 'minimal inference of discriminatory motivation.'"  *Cooper v. Templeton*,

---

[2]      Activities enumerated in the statute include the right to (1) make and enforcing contracts, (2) sue, (3) be party to an action, (4) give evidence, and (5) enjoy the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.  42 U.S.C. § 1981.  Defendant has not raised any argument that Plaintiff has failed to plead that the discrimination alleged concerns one or more of these activities.  Discrimination that occurs in the performance of an employment contract have been recognized as falling under the right to make and enforce contracts.  *Humphrey v. Council of Jewish Federations*, 901 F. Supp. 703, 710-11 (S.D.N.Y. 1995); *see also Lauture v. Int'l Bus. Machs. Corp.* 216 F.3d 258, 261-64 (2d Cir. 2000) (holding that at-will employment agreements constitute a "contract" for the purposes of Section 1981).

629 F. Supp. 3d 223, 230 (S.D.N.Y. 2022) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 [2d Cir. 2015]) (internal quotation marks omitted).  Discrimination claims brought under Section 1981 and NYSHRL are generally subject to the same pleading standard.  *Bautista v. PR Gramercy Square Condominium*, 642 F. Supp. 3d 411, 424 (S.D.N.Y. 2022); *Hill v. City of New York*, 136 F. Supp. 3d 304, 331-32 (E.D.N.Y. 2015); *Jackson v. Battaglia*, 63 F. Supp. 3d 214, 222 (N.D.N.Y. 2014) (Hurd, J.).

One way in which to show a minimal inference of discriminatory motivation is for the plaintiff to plead sufficient facts to plausibly suggest that he or she was treated differently than a similarly situated person of another race.  *Hu v. City of New York*, 927 F.3d 81, 101 (2d Cir. 2019) (citing *Brown v. City of Oneonta*, 221 F.3d 329, 339 [2d Cir. 2000]).  However, at the motion-to-dismiss stage, the plaintiff need not provide factual allegations that would *definitively prove* such comparators are similarly situated; rather, he or she must merely provide sufficient allegations that would permit the Court to "plausibly infer 'a reasonably close resemblance'" between the plaintiff and the alleged comparator.  *Hu*, 927 F.3d at 97.  The assessment of whether an alleged comparator is similarly situated uses the same standard applicable to equal protection claims discussed in *LeClair v. Saunders*, 627 F.2d 606 (2d Cir. 1980).  *Hu*, 927 F.3d at 101-02.  Specifically, the plaintiff must allege facts plausibly suggesting that comparators "were similarly situated in all material respects" to the plaintiff; the "circumstances need not be identical, but there should be a reasonably close resemblance of facts and circumstances." *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 101 (2d Cir. 2001) (citing *Shumway v. United Parcel Serv. Inc.*, 118 F.3d 60, 64 [2d Cir. 1997]; *Graham v. Long Island R.R.*, 230 F.3d 34, 40 [2d Cir. 2000]).  The Second Circuit has cautioned that the question of whether a comparator is similarly

situated is "generally a fact intensive inquiry that depends heavily on the particular context of the case at hand" and that, as a result, courts should hesitate to determine such question on a motion to dismiss. *Hu*, 927 F.3d at 97 (citing *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 [2d Cir. 2006]; *Brown*, 221 F.3d at 230).

Here, Defendant chiefly argues that Plaintiff has failed to allege facts plausibly raising an inference that its termination of her employment was motivated by discriminatory animus based on her race. Specifically, Defendant argues that Plaintiff's allegations regarding certain White employees who committed mistakes related to their job duties and were not fired are insufficient to show that such other employes were similarly situated to Plaintiff in all material respects because she has not pled that those individuals "were similarly situated in terms of 'seniority, job responsibilities, business unit, performance, length of experience, or even geography,'" or that the conduct they engaged in was comparable to the conduct for which Plaintiff was terminated. (Dkt. No. 14, Attach. 1, at 12-13; Dkt. No. 17, at 8-11.) Defendant demands more from Plaintiff's Complaint than the law of the Second Circuit requires.

Plaintiff has alleged that she, a Black woman, was terminated from her job as a Contract Negotiation Director II after negotiating a contract with one of Defendant's clients. (Dkt. No. 1, at ¶¶ 13, 46-51.) Specifically, she has alleged that she transitioned that client's agreement to "an APG reimbursement" that would cover that facility "at the lowest reimbursement rate set in [Defendant's] system" such that, "[b]y the end of the deal, [Plaintiff's] 2022 budget for the client was 2.4% and [Plaintiff's] 2023 budget for the client was 7.5%," which "only used a quarter of the budget and established continued business and revenue for [Defendant]." (*Id.* at ¶¶ 46-47.) Plaintiff has further alleged that this agreement was "below budget and ensured [Defendant's]

11

continued profit in the future years with the option to not increase reimbursement rates for the client," and that it was structured "to ensure $25 million in revenue for [Defendant] beginning in 2023." (*Id.* at ¶ 51.)

Plaintiff also has alleged facts plausibly suggesting two individuals who she asserts are comparators who were treated more favorably: Mr. Brown and Paul Gandolfo, both of whom Plaintiff alleges were "Directors" employed by Defendant. (Dkt. No. 1, at ¶¶ 53-55.) As to Mr. Brown, Plaintiff alleges that he was her "predecessor," that he had in the past "made an error which cost [Defendant] 'millions of dollars,'" and that, despite this error, he kept his position without any disciplinary action and was later promoted. (*Id.* at ¶¶ 46, 54.) As to Mr. Gandolfo, who is also alleged to be a Director, Plaintiff alleges that he once erroneously told Defendant's former president that Defendant owed a client $500,000, which resulted in the president promising the client that money would be promptly paid, and Defendant was therefore obligated to pay that money to the client even after Mr. Gandolfo realized he had made a mistake and the client was not owed money; she alleges that, despite this costly error, Mr. Gandolfo's employment was not terminated. (*Id.* at ¶¶ 53, 55.)

The Court notes, as an initial matter, that Plaintiff has not specifically alleged in the Complaint that either Mr. Brown or Mr. Gandolfo are White. (Dkt. No. 1, at ¶¶ 53-55.) However, reasonable inferences that those comparators are White, or at the very least a race other than Black, can be made from other factual allegations in the Complaint. Specifically, she has alleged that she was "the only Black employee in the entire department" and "the only Black Director," and she further alleges multiple times that she believed she was being treated differently than the "white male directors" or "white members of leadership." (*Id.* at ¶¶ 14, 22,

36, 40, 42, 56.)  Although the allegation that she was the only Black Director does not lead to an inference that all the other Directors were White, her specification that she was treated differently than White Directors can reasonably permit an inference that Mr. Brown and Mr. Gandolfo, both of whom were Directors whom Plaintiff alleges received preferential treatment, are indeed White.  Further, despite all the other reasons Defendant has asserted regarding why it believes those individuals are not similarly situated to Plaintiff, notably absent is any argument that either Mr. Brown or Mr. Gandolfo are not White, a fact that would presumably be within the scope of Defendant's knowledge.  Because there is no reason to believe on the information presented to the Court that dismissal of Plaintiff's discrimination claim with leave to amend to add specific allegations regarding the alleged comparators' race would be anything more than a formulaic exercise, the Court will not dismiss on that basis.[3]

Setting aside Mr. Gandolfo (about whom the factual allegations are less definite), the Court finds that Plaintiff's allegations regarding Mr. Brown are sufficient to plausibly suggest he is similarly situated to Plaintiff for the purposes of surviving a motion to dismiss.  Although she has not specifically alleged that Mr. Brown was a Contract Negotiation Director II, she has alleged that Mr. Brown was her "predecessor," an allegation that plausibly suggests he was in fact at one point in the same position as Plaintiff.  This allegation, combined with Plaintiff's allegations that Mr. Brown had worked on contracts in previous years for the client with whom Plaintiff was negotiating the new contract that ultimately led to her termination and that he was "later promoted" after the alleged error that costed Defendant money, plausibly suggests that

---

[3]     This of course does not preclude dismissal at a later stage should Defendant present evidence that the race of these individuals would preclude Plaintiff's claim, particularly under Section 1981, as a matter of law.

such error occurred while Mr. Brown was acting in his capacity as a Director, and that he was indeed in the same position that Plaintiff held at the relevant time.  Plaintiff's allegations regarding the error Mr. Brown supposedly made in that capacity are admittedly lacking in detail as to the specific nature of that error, but the Complaint is clear that it caused Defendant to suffer at least one million dollars in losses.

Therefore, Plaintiff has alleged that, while she was acting her capacity as a Contract Negotiation Director II, her employment was terminated for negotiating a contract that was structured to provide profit and significant revenue to Defendant, while a Director who had occupied the same title (indeed, seemingly the exact position that Plaintiff later was hired into after Mr. Brown was promoted) had previously committed an error in the performance of his duties that caused Defendant to suffer a loss of one million dollars, but was not terminated and indeed did not face any disciplinary ramifications.  Although it is true that discovery may reveal that the details of the circumstances under which Mr. Brown committed his error are not materially similar to Plaintiff's action in negotiating a contract with a client, such questions are not for the Court to determine at this stage.  *See Hu*, 927 F.3d at 97 (finding that, although the complaint did not include allegations regarding many relevant details bearing on similarity of the conduct, the allegation that plaintiff and the comparators both had a standing pool of water at the same jobsite but were treated differently was sufficient to meet the plausibility standard).  Plaintiff has plausibly alleged that she was disciplined for job-related conduct that was seemingly not even ostensibly financially harmful to Defendant, while Mr. Brown faced no adverse consequences for subjecting Defendant to a significant loss of money through his job-related conduct.  The fact that Plaintiff's conduct did not incur a similar level of loss is not

14

inherently fatal to her comparison, given that a worse outcome for better job performance is arguably a stronger indicator of an improper motive than a worse outcome for identical job performance. The relevant pleading standard is intended to ensure that a plaintiff can demonstrate right to relief that rises "above the speculative level," and Plaintiff's allegations have met that bar. *Twombly*, 550 U.S. at 555.

Defendant's reliance in its opening memorandum on *Cooper* is unavailing. In that case, the court found that the comparators alleged could not plausibly be considered to be similarly situated for numerous reasons, including (1) the fact that none of them had a similar job title or duties to the plaintiff, and (2) the fact that their alleged conduct was not comparable because actions such as engaging in insider trading, insisting on meeting a client at an adult entertainment venue, plagiarizing a presentation, being accused of sexual harassment in the workplace, and being convicted of domestic violence were too dissimilar from the plaintiff's alleged conduct of engaging in nationally publicized racial discrimination outside of the workplace. *Cooper*, 629 F. Supp. 3d at 231-32. Here, again, Plaintiff has plausibly alleged that Mr. Brown committed an error (while performing his job duties in the same position she later held) that caused Defendant to suffer a large loss of money. Although Plaintiff has not alleged that such loss was specifically in the context of negotiating a contract, the Court nonetheless finds that the allegations narrowly entitle her to proceed with this claim because they plausibly suggest that Mr. Brown's conduct was sufficiently comparable to satisfy the legal standard; Plaintiff should not be penalized for being unable to provide greater details prior to discovery where she has shown some plausible basis for believing Mr. Brown is similarly situated to herself. The allegations here, while far less detailed than the more extensive ones present in *Cooper*, are certainly more sufficient to

15

plausibly suggest that Plaintiff and Mr. Brown both had similar roles and engaged in sufficiently similar types of conduct.

Further, the allegations related to Mr. Brown are not the only allegations in the Complaint that bear on the question of whether Plaintiff's termination occurred in a context that raises an inference of race discrimination. The Court agrees with Defendant that Plaintiff's allegations related to Ms. Brown becoming hostile with her and accusing her of being late for meetings, and to statements by Defendant's Vice President of Provider Contracting to the effect that she relied on legal too much, do not plausibly implicate her race merely because she subjectively believed they do; there is nothing to plausibly suggest that these facially race-neutral comments were indications of racial bias, nor that she specifically reported any such belief that they were to her supervisor or anyone other than Ms. Brown herself. However, Plaintiff has alleged that, in or about February 2022, she recommended to her supervisor, Ms. Nichols, that a Black woman, Ms. Best, be promoted to an open position for Senior Manager of Contract Negotiation. (Dkt. No. 1, at ¶¶ 26-28.) She alleges that Ms. Nichols "dismissed Ms. Best's application" and "immediately stated Ms. Best would not be considered for the position and offered no explanation or justification." (*Id.* at ¶ 28.) However, when Plaintiff then recommended another candidate, a White woman, Ms. Nichols "immediately agreed" to hire the White candidate. (*Id.* at ¶ 29.) While certainly not as persuasive as the evidence of a comparator, this allegation serves to circumstantially support Plaintiff's overall assertion that Defendant, including through Ms. Nichols, harbored racial bias against her and other Black employees.

Based on the above analysis, the Court finds that Plaintiff has alleged facts plausibly stating claims of racial discrimination under Section 1981 and the NYSHRL.  Defendant's motion to dismiss as to these claims is denied.

**B.      Whether Plaintiff Has Stated a Plausible Claim of Retaliation Based on Her Race**

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Plaintiff's memorandum of law.  *See* Part I.B.2. of this Decision and Order.  To those reasons, the Court adds the following analysis.

Claims of retaliation brought under Section 1981 and the NYSHRL are analyzed under the familiar *McDonnell Douglas* burden-shifting framework.  *Carr v. New York City Transit Auth.*, 76 F.4th 172, 178 (2d Cir. 2023); *see Bermudez v. City of New York*, 783 F. Supp. 2d 560, 576-77 (S.D.N.Y. 2011) ("[R]etaliation claims under the NYSHRL are treated the same as retaliation claims under Section 1983 and Section 1981."); *accord Wenchun Zheng v. Gen. Elec. Co.*, 15-CV-1232, 2016 WL 10859373, at *14 (N.D.N.Y. Jan. 12, 2016) (Hummel, M.J.).  "[T]o establish a prima facie case of retaliation, a plaintiff must demonstrate that (1) she engaged in protected activity, (2) the defendant was aware of that activity, (3) she was subjected to a retaliatory action, or a series of retaliatory actions, that were materially adverse, and (4) there was a causal connection between the protected activity and the materially adverse actions or actions."  *Carr*, 76 F.4th at 180.  "[A] defendant may rebut a prima facie showing of retaliation by providing a legitimate non-retaliatory reason for the allegedly retaliatory action."  *Carr,* 76 F.4th at 178 (citing *Chen v. City Univ. of N.Y.*, 805 F.3d 59, 70 [2d Cir. 2015]).  If the defendant can show such a reason, "'the presumption of retaliation dissipates, and the plaintiff must prove

17

that the desire to retaliate was the but-for cause of the challenged employment action.'" *Carr,* 76 F.4th at 178 (citing *Chen*, 805 F.3d at 70).

Here, there does not appear to be any dispute that Plaintiff has sufficiently alleged that the termination of her employment was a materially adverse action.  "[A] 'materially adverse' action is one that 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Carr,* 76 F.4th at 180 (quoting *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 [2006]).  Termination of one's employment is certainly an action that would dissuade a reasonable worker from reporting discrimination.  *See Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004) ("Examples of materially adverse employment actions include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation.").  Nor does Defendant dispute that Plaintiff has alleged that she made various reports that she asserts to be protected activity to her supervisor, Ms. Nichols, and thus there has been no real challenge to the allegation that Defendant had general knowledge of such reports.  *See Hexemer v. Gen. Elec. Co.*, 12-CV-1808, 2015 WL 3948418, at *12 (N.D.N.Y. June 29, 2015) (Kahn, J.) (noting that "the knowledge element is satisfied where the entity that carried out the adverse employment action had notice of the employee's protected activity") (citing *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 92 [2d Cir. 2011]).  Defendant does, however, dispute two of the other elements required to plausibly allege a prima facie case of retaliation.  These will be discussed in turn.

First, Defendant argues that Plaintiff has not plausibly alleged that she engaged in protected activity.  "An employee engages in protected activity under § 1981 when she

complains about or otherwise opposes conduct that she reasonably believes to have violated §

1981." *Hexemer*, 2015 WL 3948418, at \*4 (citing *Sumner v. U.S. Postal Serv.*, 899 F.2d 203,

209 [2d Cir. 1990]).  Although it has been recognized that "informal protests of discriminatory

employment practices, including making complaints to management, can constitute protected

activity," those complaints "must be sufficiently specific so that the employer is put on notice

that the plaintiff believes she is being discriminated against on the basis of a protected

characteristic." *Belton v. Borg & Ide Imaging, P.C.*, 512 F. Supp. 3d 433, 445 (W.D.N.Y. 2021)

(internal quotation marks omitted).

Although Plaintiff alleges in the Complaint that she made various reports in October

2021 and May 2022 regarding conduct by another employee, Ms. Brown, that she found to be

objectionable and harassing, the Court agrees with Defendant that Plaintiff's allegations

regarding those reports do not appear to plausibly suggest that she reported to Defendant that she

believed she was being discriminated against specifically because of her race.  Notably, her

reports to Ms. Nichols of harassing conduct by Ms. Brown towards her subordinate, Ms.

Robinson, do not appear to plausibly suggest any racial discrimination given that Plaintiff alleges

Ms. Robinson is White.  (Dkt. No. 1, at ¶ 19.)  Plaintiff does allege that, when responding to Ms.

Brown after Ms. Brown "became hostile and aggressive" and accused Plaintiff of being late for

meetings (the truth of which accusation Plaintiff admits), Plaintiff "noted that Ms. Brown had

never spoken to white members of leadership in such an unprofessional manner."  (*Id.* at ¶ 22.)

It is not entirely clear from the wording of this allegation whether Plaintiff made such a comment

to Ms. Brown at that time or whether she merely acknowledged in her mind that Ms. Brown had

not spoken to White members of leadership in such a manner; but, even assuming the former

19

circumstance, Plaintiff does not allege facts plausibly suggesting that she reported specifically that Ms. Brown spoke to her differently than she did to White members of leadership when she reported the alleged harassment to Ms. Nichols or Human Resources.  (*Id.* at ¶¶ 23-25.)  Other instances of Plaintiff allegedly reporting "new complaints of race discrimination" against herself and Ms. Robinson by Ms. Brown do not specify what Plaintiff reported, and such vague generalities cannot suffice to plausibly state that she engaged in protected activity.  (*Id.* at ¶¶ 37-39, 41.)  Further, Plaintiff alleged that, during a conversation with Ms. Nichols, she stated that she was "uncomfortable with the complaints against Ms. Brown" and expressed that she feared she "would be retaliated against and seen as 'a problem' for supporting another Black employee." (*Id.* at ¶ 38.)

Although reporting unlawful conduct against another employee can be a valid basis for finding that a plaintiff has engaged in protected activity, Plaintiff has not plausibly alleged that here.  Specifically, although Plaintiff alleges she expressed fear she would be retaliated against for supporting another Black employee, this comment was made to Ms. Nichols in the context of speaking about Ms. Brown's harassment of Ms. Robinson.  Yet, Plaintiff has alleged that both Ms. Brown and Ms. Robinson are White.  (*Id.* at ¶¶ 19-20.)  On the facts alleged, Plaintiff could not have plausibly believed she was engaging in protected activity in this instance.[4]

---

[4]      To the extent that Plaintiff's concerns over "supporting another Black employee" were intended to refer to her previous allegations that she had recommended a Black employee for a promotion, such conduct has no relation to her reports to Ms. Nichols about Ms. Brown's alleged harassing and discriminatory conduct, and Plaintiff has made no separate allegations to plausibly suggest that she raised any complaints to Defendant that she believed the choice not to promote that Black employee was based in race discrimination.  (Dkt. No. 1, at ¶¶ 26-31.)

However, Plaintiff has also alleged that, on or about June 15, 2022, Ms. Nichols asked her if she felt Ms. Brown treated her differently, and that she "agreed and noted Ms. Brown had always treated [Plaintiff] differently as compared to the white male Directors by refusing to share work data, by excluding [Plaintiff] from emails pertinent to [Plaintiff's] position, by refusing to work with [Plaintiff], and by purposely not inviting [Plaintiff] to Director meetings and inviting only the white male directors."  (Dkt. No. 1, at ¶ 42.)  Such allegation, which indicates that she reported not only that she felt she was treated differently than the White directors, but also that she provided examples of how she was treated differently as part of that report, is sufficient to plausibly suggest that Plaintiff engaged in protected activity.  *See Weiping Liu v. Indium Corp. of Am.*, 16-CV-1080, 2019 WL 3825511, at *20 (N.D.N.Y. Aug. 15, 2019) (Sannes, J.) (concluding that reports that plaintiff's complaints were treated differently than those of White female employees and that "the company only treated Chinese/Asians in this dictatorial manner" in response to having his cubicle switched were sufficient to raise a reasonable inference that he had engaged in protected activity).  Defendant's entirely conclusory argument that reporting that she felt she was treated differently than White directors is insufficient to put Defendant on notice that she was reporting race discrimination is not supported by the case it cites and is not persuasive.  *Cf. Fouche v. St. Charles Hosp.*, 64 F. Supp. 3d 452, 458 (S.D.N.Y. 2014) (finding employer was not put on notice by plaintiff's complaints "regarding the Defendant's policies and practices concerning defibrillators that allegedly endangered patients" because such complaints were entirely "race-neutral").  The Court therefore finds that Plaintiff has plausibly alleged that she engaged in protected activity.

21

Second, Defendant argues that Plaintiff has not plausibly alleged that there was a causal connection between her reports to Ms. Nichols and the termination of her employment.  "'A causal connection between protected activity and an adverse employment activity on the basis of timing alone can be inferred if the temporal proximity is very close.'"  *Mills-Sanchez v. Research Foundation for State Univ. of New York*, 18-CV-0723, 2019 WL 2549726, at *12 (N.D.N.Y. June 20, 2019) (quoting *Morisseau v. DLA Piper*, 532 F. Supp. 2d 595, 616 [S.D.N.Y. 2008], *aff'd*, 355 F. App'x 487 [2d Cir. 2009]).  One month has been held to be sufficiently close in time, while three months has been found to be too remote.  *Mills-Sanchez*, 2019 WL 2549726, at *12 (citing *Bush v. Fordham Univ.*, 452 F. Supp. 2d 394, 417 [S.D.N.Y. 2006]; *Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 85-86 [2d Cir. 1990]).  Here, Plaintiff's alleged protected activity occurred on or around June 15, 2022, and her employment was terminated on July 21, 2022.  There therefore exists a sufficient temporal proximity to plausibly infer a causal connection between Plaintiff's report and the decision to terminate her.  In addition to this temporal proximity, Plaintiff has alleged that she received good performance reviews and was complemented on her work abilities multiple times before engaging in protected activity, the most recent of which occurred in April 2022, approximately two months before such activity. (Dkt. No. 1, at ¶¶ 17-18, 32-34.)  These allegations supplement the temporal proximity, and further plausibly suggest that Plaintiff's termination was causally connected to her protected activity.

Based on the above analysis, the Court finds that Plaintiff has alleged facts plausibly stating claims of retaliation under Section 1981 and the NYSHRL.  Defendant's motion to dismiss as to this claim is denied.

C.      **Whether Plaintiff Has Stated a Plausible Claim of Discrimination Based on Her Gender**

After careful consideration, the Court answers this question in the affirmative for the following reasons.

There is a question as to whether Plaintiff has asserted a claim of gender discrimination. The Complaint contains a statement that Defendant discriminated against her on the basis of her gender, although in other parts of the Complaint Plaintiff appears to have indicated she is asserting only that Defendant discriminated against her based on her race.  Plaintiff did not explicitly respond to Defendant's argument that any claim related to gender should be dismissed as inadequately pled.  (Dkt. No. 14, Attach. 1, at 10 n.2.)

As an initial matter, any gender discrimination claim asserted under Section 1981 would necessarily require dismissal, because that statute covers only discrimination based on race.  *See* 42 U.S.C. § 1981(a) (stating that the statute guarantees all persons the same stated rights as are "enjoyed by white citizens"); *Rolley-Redford v. Modern Disposal Servs., Inc.*, 21-CV-1229, 2023 WL 5105418, at *5 (W.D.N.Y. Aug. 9, 2023) (*sua sponte* dismissing gender discrimination claim asserted pursuant to Section 1981 because "section 1981 does not protect against discrimination or retaliation on the basis of sex or gender").

However, the NYSHRL covers claims of gender discrimination.  *See* N.Y. Exec. L. § 296(a) (making it unlawful for an employer to discriminate against an individual based upon, among many attributes, gender identity or sex).  Although the Court agrees that the overall context of Plaintiff's Complaint appears to suggest she intended to primarily assert claims based upon her race, it also cannot ignore the fact that she (1) does explicitly state that Defendant discriminated against her on the basis of her sex/gender in one numbered allegation within the

23

Complaint, and (2) has provided allegations regarding both her own gender and that she reported she felt she was being treated differently than "white *male* directors," and it can also be inferred she is asserting the two alleged comparators are male based on the use of "Mr." to address them. (Dkt. No. 1, at ¶¶ 54-55.)  The fact that Plaintiff's numbered claims specify that they relate to race discrimination is not dispositive of whether she has asserted a claim also based in gender. *See Quinones v. City of Binghamton*, 997 F.3d 461, 468-69 (2d Cir. 2021) (finding the plaintiff had sufficiently stated a claim for discrimination in the complaint despite failing to enumerate that as a separate cause of action because the complaint "sufficiently informed Defendants of the factual basis for" such claim) (quoting *Johnson v. City of Shelby*, 574 U.S. 10, 12 [2014]) (internal quotation marks omitted).  Because the Complaint sufficiently informs Defendant of the basis for a claim of discrimination based on gender, as discussed above, the Court will not dismiss those as inadequately pled simply because it is somewhat unclear whether she actually intended to assert such a claim.

Indeed, the allegations in the Complaint related to gender are sufficient to survive a motion to dismiss for many of the same reasons that were discussed above regarding her race discrimination claims, particularly as to her identification of comparators and reports that plausibly suggest she engaged in protected activity.  The Court acknowledges that there are fewer allegations in the Complaint that regard gender than there are that regard race, which likely will make proof of a claim regarding gender more difficult; but proof is not what is required at this stage, only plausibility.

Further, although Plaintiff does not explicitly respond to Defendant's argument regarding her allegation of gender discrimination, neither does her response suggest she intended to

disavow such claim.  This is because, although she cites case law specifically addressing racial discrimination, she includes multiple references to gender in addition to race when discussing relevant allegations, and does not frame her responses in a way that limits those responses to race.  (Dkt. No. 15, at 9-14.)

Under these circumstances, although a gender-based discrimination claim asserted under Section 1981 must be dismissed as a matter of law, the Court sees no basis at this time to dismiss the gender-based discrimination claim that was seemingly asserted under the NYSHRL.

**ACCORDINGLY**, it is

**ORDERED** that the Clerk of Court shall amend the caption in this action in accordance with Note 1 of this Decision and Order; and it is further

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 14) is <u>**GRANTED**</u> **in part** and <u>**DENIED**</u> **in part**, such that Plaintiff's claims relating to a hostile work environment under both Section 1981 and the NYSHRL[5] and gender discrimination under Section 1981 are <u>**DISMISSED**</u>, but her claims for disparate treatment race discrimination and retaliation under both 42 U.S.C. § 1981 and the NYSHRL and gender discrimination under the NYSHRL <u>**SURVIVE**</u> this Decision and Order.

Dated: January 17, 2024
      Syracuse, New York

Glenn T. Suddaby
U.S. District Judge

---

[5]     As discussed in Part I.B.2, Plaintiff stated that she does not oppose the dismissal of her hostile work environment claims.