UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

SHERI RODRIGUEZ,

                Plaintiff,

         v.

EXCELLUS BLUECROSS BLUESHIELD, INC.,

                Defendant.

Civil Action No.  5:22-cv-1050
(GTS/CFH)

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BOND, SCHOENECK & KING, PLLC
*Attorneys for Defendants*
One Lincoln Center
Syracuse, New York 13202
Telephone:  315-218-8000
Fax:  315-218-8100

Of Counsel:

    Hannah K. Redmond, Esq.
    Adam P. Mastroleo, Esq.

22738443.v5-12/31/25

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF FACTS ............................................................................................ 2

    A.   Excellus BCBS......................................................................................................... 2

    B.   Plaintiff's Employment with Excellus BCBS........................................................... 2

    C.   Plaintiff's Team ....................................................................................................... 5

    D.   Plaintiff's Performance ............................................................................................ 6

    E.   Concerns Regarding Christie Brown ....................................................................... 7

    F.   Plaintiff Is Instructed Not to Offer Unauthorized Mid-Term Rate Increases ................... 11

    G.   Despite the Directive Given During the June 14 Meeting, Plaintiff Extended an Unauthorized Offer of Mid-Year Rate Increases to River Hospital ............................... 13

SUMMARY JUDGMENT STANDARD ...................................................................... 16

ARGUMENT ............................................................................................................... 17

POINT I ....................................................................................................................... 17

PLAINTIFF CANNOT ESTABLISH A *PRIMA FACIE* CLAIM OF DISCRIMINATION ....... 17

    A.   Plaintiff Cannot Demonstrate That She Was Terminated Because of Her Race or Gender........................................................................................................................ 17

        i.   The Same Actor Inference Precludes a Discriminatory Discharge Claim.............. 18

        ii.   Plaintiff's Bald Allegation that Other Excellus BCBS Employees Experienced Discrimination Is Insufficient to Establish Causation ........................................... 19

        iii.   Plaintiff's Attempt to Rely on Comparator Evidence Falls Flat............................. 20

    B.   Plaintiff's Remaining Allegations Fail to Support a Discrimination Claim...................... 23

        i.   Allegations Regarding Plaintiff's Workload ......................................................... 23

        ii.   Allegations Regarding Plaintiff's Access to Unspecified Data .............................. 26

        iii.   Allegations Regarding Commentary That Plaintiff Relied Too Heavily on Legal . 26

22738443.v5-12/31/25

iv. The Senior Manager of Contract Negotiation Position........................................... 27

POINT II ......................................................................................................................... 29

PLAINTIFF CANNOT ESTABLISH A *PRIMA FACIE* CLAIM OF RETALIATION ............. 29

    A.   Plaintiff Did Not Engage In Protected Activity............................................... 29

    B.   Plaintiff's Termination Was the Sole Result Her Unauthorized Offer of a Mid-Term Rate Increase to River Hospital........................................................................... 32

POINT III........................................................................................................................ 34

PLAINTIFF WAS TERMINATED FOR LEGITIMATE, NON-DISCRIMINATORY, NON-RETALIATORY REASONS ............................................................................................. 34

POINT IV......................................................................................................................... 35

PLAINTIFF CANNOT PREVAIL AT THE THIRD STAGE OF THE *MCDONNELL DOUGLAS* BURDEN-SHIFTING ANALYSIS ........................................................... 35

CONCLUSION................................................................................................................ 40

22738443.v5-12/31/25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bart v. Golub Corp.*,
  96 F.4th 566 (2d Cir. 2024) ...................................................................................36, 39

*Burlington Coat Factory Warehouse Corp. v. Esprit De Corp*,
  769 F.2d 919 (2d Cir. 1985)...............................................................................20, 21, 22

*Campbell v. Bottling Group, LLC*,
  814 Fed. Appx. 630 (2d Cir. 2020)...................................................................................21

*Castro v. City of New York*,
  24 F. Supp. 3d 250 (E.D.N.Y. 2014) ...............................................................................30

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986).........................................................................................................16

*Chansamone v. IBEW Local 97*,
  523 Fed. Appx. 820 (2d. Cir. 2013)...............................................................20, 21, 22

*Dabney v. Christmas Tree Shops*,
  958 F. Supp. 2d 439 (S.D.N.Y. 2013).............................................................................19

*Ellison v. Chartis Claims, Inc.*,
  178 A.D.3d 665 (2d Dep't 2019) ....................................................................................33

*Encarnacion v. Spinner*,
  9:15-cv-01411 (BKS/ML), 2020 U.S. Dist. LEXIS 95248 (N.D.N.Y. June 1, 2020).............16

*Filozof v. Monroe Cmty. College*,
  411 Fed. App'x 423 (2d Cir. 2011)..................................................................................18

*Fleming v. MaxMara USA, Inc.*,
  371 F. App'x 115 (2d Cir. 2010) .....................................................................................39

*Forrest v. Jewish Guild for the Blind*,
  3 N.Y.3d 295 (N.Y. 2004) ...............................................................................................29

*Grady v. Affiliated Cent., Inc*,
  130 F.3d 553 (2d Cir. 1997)............................................................................................18

*Grella v. St. Francis Hosp.*,
  149 A.D.3d 1046 (2d Dep't 2017)....................................................................................36

*Hanfland v. Brennan*,
  No. 10-CV-6106-FPG, 2015 U.S. Dist. LEXIS 141128 (W.D.N.Y. Oct. 16, 2015)...............30

22738443.v5-12/31/25

*Hart v. New York Univ. Hosps. Ctr.*,
  No. 09 CIV. 5159, 2011 U.S. Dist. LEXIS 116538 (S.D.N.Y. Oct. 7, 2011), *aff'd sub nom.*
  *Hart v. New York Univ. Hosp. Ctr.*, 510 F. App'x 22 (2d Cir. 2013)........................................34

*Haynes v. Exec. Chamber for the Off. of the Govenor of N.Y.*,
  1:23-cv-08051, 2025 U.S. Dist. LEXIS 193763 (S.D.N.Y. Sept. 30, 2025) ..........................27

*Int'l Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC*,
  470 F. Supp. 2d 345 (S.D.N.Y. 2007)........................................................................................30

*Isaac v. City of N.Y.*,
  701 F. Supp. 2d 477 (S.D.N.Y. Mar. 22, 2010) .......................................................................36

*Johnson v. City Univ. of New York*,
  48 F. Supp. 3d 572 (S.D.N.Y. 2014).................................................................................30, 31

*Kurtanidze v. Mizuho Bank, Ltd.*,
  23 Civ. 8716 (PAE), 2024 U.S. Dist. LEXIS 44178 (S.D.N.Y. Mar. 13, 2024) .....................32

*Lee v. Winthrop Univ. Hosp.*,
  No. 13-CV-5003 ADS GRB, 2015 U.S. Dist. LEXIS 153939 (E.D.N.Y. Nov. 13, 2015) .....22

*Lehman v. Bergmann Assoc.*,
  11 F. Supp. 3d 408 (W.D.N.Y. 2014) .......................................................................................30

*Lynch v. Nat'l Fuel Gas Distribution Corp.*,
  25 F. Supp. 3d 358 (W.D.N.Y. 2014) .......................................................................................31

*Malone v. Town of Clarkstown*,
  No. 19 CV 5503 (VB), 2022 U.S. Dist. LEXIS 128891, at *20 (S.D.N.Y. July 20, 2022).....31

*Mania v. Alper Holdings USA, Inc.*,
  No. 95 CIV. 1846 (DC), 1996 U.S. Dist. LEXIS 11076 (S.D.N.Y. Aug. 5, 1996).................19

*Mauze v. CBS Corp.*,
  15-CV-4905 (RDJ)(SLT), 2019 U.S. Dist. LEXIS 228561 (E.D.N.Y. Jan. 23, 2019)............33

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792 (1973)................................................................................................17, 35, 40

*Meiri v. Dacon*,
  759 F.2d 989 (2d Cir. 1985).....................................................................................................16

*Moy v. Perez*,
  712 Fed. Appx. 38 (2d Cir. 2017).................................................................................25, 26, 27

*Orellana v. Reiss Wholesale Hardware Co.*,
  14 CV 1913 (LB), 2016 U.S. Dist. LEXIS 76073 (E.D.N.Y. June 8, 2016)...........................19

iv

*Panzarino v. Deloitte & Touche LLP*,
No. 05 CIV.8502 BSJ RLE, 2009 U.S. Dist. LEXIS 101209 (S.D.N.Y. Oct. 29, 2009) ........30

*Pierre v. Air Serv Sec.*,
No. 14-CV-5915 (MKB) (ST), 2016 U.S. Dist. LEXIS 128891 (E.D.N.Y. Sept. 21, 2016) ..34

*Placide-Eugene v. Visiting Nurse Serv. of New York*,
86 F. Supp. 3d 132 (E.D.N.Y. 2015) ...................................................................34

*Pompey v. Cnty. of Westchester*,
No. 23-CV-9337 (KMK), 2025 U.S. Dist. LEXIS 190667 (S.D.N.Y. Sept. 24, 2025).....17, 29

*Pompey-Howard v. N.Y. State Educ. Dep't*,
275 F. Supp. 3d 356 (N.D.N.Y. 2017)..................................................................33

*Sharpe v. MCI Commc'ns Servs., Inc.*,
684 F. Supp. 2d 394 (S.D.N.Y. 2010)..................................................................25

*Trivedi v. St. Peter's Health Partners Med. Assocs., P.C.*,
No. 23-7608-cv, 2024 U.S. App. LEXIS 31543 (2d Cir. Dec. 12, 2024)..........................17, 29

*Trovato v. Air Express Intern.*,
254 A.D.2d 349 (2d Dep't 1998) .......................................................................33

*Wood v. New York City Transit Auth.*,
699 Fed. Appx. 76 (2d. Cir. 2017)...................................................................20, 21

*Yarde v. Good Samaritan Hosp.*,
360 F.Supp.2d 552 (S.D.N.Y.2005)....................................................................34

*Ying Jing Gan v. City of New York*,
996 F.2d 522 (2d Cir. 1993)............................................................................16

*Zhao-Royo v. New York State Educ. Dep't*,
1:14-CV-0935, 2017 U.S. Dist. LEXIS 5080 (N.D.N.Y. Jan. 13, 2017)..........................32, 33

## Statutes

42 U.S.C. § 1981................................................................................................17

## Other Authorities

Fed. R. Civ. P. 56..............................................................................................16

v

Defendant Excellus Health Plan, Inc. d/b/a Excellus BlueCross BlueShield ("Excellus BCBS" or "Defendant") respectfully submits this memorandum of law in support of its motion for summary judgment dismissing plaintiff, Sheri Rodriguez's ("Plaintiff"), Complaint in its entirety and with prejudice.

## PRELIMINARY STATEMENT

Plaintiff was employed by Excellus BCBS as a Contract Negotiation Director II from January 2021 through July 2022. In this role, Plaintiff's primary duty was to negotiate the rates at which Excellus BCBS would reimburse healthcare entities and providers.

In June 2022, Senior Vice President of Network Engagement, Antonio (Tony) Vitagliano ("Mr. Vitagliano"), specifically instructed Plaintiff (and all other Contract Negotiation Directors) not to offer any mid-year reimbursement rate increases to providers without his approval and authorization. Less than a month after receiving this instruction, Plaintiff reopened a provider contract without authorization, offered a rate increase, and bound Excellus BCBS to a new contract that caused significant financial harm. Plaintiff was subsequently terminated for failing to follow Mr. Vitagliano's clear and unambiguous direction.

In an effort to reconstruct the reality of her brief employment and termination, Plaintiff claims she was subjected to: (i) discrimination on the basis of her race in violation of 42 U.S.C. § 1981 ("Section 1981"); (ii) discrimination on the basis of her race and gender in violation of the New York State Human Rights Law ("NYSHRL"); and (iii) retaliation in violation of Section 1981 and the NYSHRL.[1]

As discussed in detail below, Plaintiff's claims are unsupported by the undisputable material facts of this case. Initially, Plaintiff cannot state a *prima facie* case because the record is

---

[1] Plaintiff also initially asserted hostile work environment claims under both Section 1981 and the NYSHRL, which have been dismissed. *Dkt. No. 19.*

devoid of any evidence, other than her own speculation, that she was subjected to an adverse employment action because of her race, gender, or alleged protected activity.  The absence of any such causal nexus is fatal to each of her claims.  In addition, even if Plaintiff could state a *prima facie* claim of discrimination or retaliation (which she cannot), Excellus BCBS had legitimate, non-discriminatory and non-retaliatory reasons for terminating Plaintiff's employment, including her insubordination and failure to follow a clear directive.

Because Plaintiff cannot carry her initial or ultimate burden of proof, she has not and cannot establish a discrimination or retaliation claim under Section 1981 or the NYSHRL.  Accordingly, the Complaint should be dismissed in its entirety, with prejudice, for the grounds set forth more fully below.

**STATEMENT OF FACTS**

### A.    Excellus BCBS

Excellus BCBS is a nonprofit independent licensee of the Blue Cross Blue Shield Association.  Declaration of Jennifer Nichols, sworn to December 29, 2025 ("Nichols Dec."), ¶3. Excellus BCBS is a part of a family of companies headquartered in Rochester, New York that finance and deliver health care services across upstate New York and long-term care insurance nationwide.  *Id*.  Collectively, Excellus BCBS provides health insurance to approximately 1.5 million people and employs more than 4,000 individuals.  *Id*., ¶4.

### B.    Plaintiff's Employment with Excellus BCBS

Plaintiff, an African American female, was hired by Excellus BCBS on or about January 18, 2021 as a Contract Negotiation Director II ("Contract Director").  Deposition of Sheri Rodriguez, taken April 29, 2025 ("Rodriguez Depo. Day 1"), p. 23; Nichols Dec., ¶6.  At the time of hire, Plaintiff earned an annual salary of $145,000, she was also eligible for additional bonuses. Rodriguez Depo. Day 1, pp. 31-32.  As a Contract Director, Plaintiff was responsible for

2

negotiating, planning, directing, and controlling activities related to Excellus BCBS's contracts with hospitals and other healthcare providers.  Nichols Dec., ¶8; Rodriguez Depo. Day 1, pp. 32-33, 54-55.  Plaintiff specifically had the "authority to negotiate the contractual obligations between the Company and its [healthcare] providers and ha[d] overall responsibility to finalize all contracts under [] her assigned area within an established budget." Nichols Dec., Ex. A.

Crucially, Plaintiff's negotiation efforts were binding on Excellus BCBS.  Nichols Dec., ¶8, Ex. A; Rodriguez Depo. Day 1, p. 56.  Ensuring that Excellus BCBS was a "prudent purchaser" of healthcare services was also among Plaintiff's core responsibilities.  Nichols Dec., Ex. A. Indeed, the "whole purpose of the job is to keep costs down as much as reasonable while maintaining participation in [the Excellus BCBS] network." Deposition of Antonio Vitagliano, taken July 22, 2025 ("Vitagliano Depo."), p. 57. This was "fundamental" to Plaintiff's position. *Id*.

Plaintiff reported to Vice President for Provider Contracting and Administration, Jennifer Nichols ("Ms. Nichols"), throughout the entirety of her employment.  Rodriguez Depo. Day 1, p. 35; Nichols Dec., ¶6.  Ms. Nichols, in turn, reported to Mr. Vitagliano, who was Senior Vice President of Network Engagement at the time.  Deposition of Jennifer Nichols, taken June 23, 2025 ("Nichols Depo."), at p. 15.  Both Ms. Nichols and Mr. Vitagliano were involved in hiring Plaintiff.  Nichols Dec., ¶6; *see also* Rodriguez Depo. Day 1, pp. 23-28.

Prior to joining Excellus BCBS, Plaintiff worked for St. Joseph's Health Hospital ("St. Joseph's"), a Syracuse-area healthcare provider that contracted with Excellus BCBS.  Rodriguez Depo. Day 1, pp. 22-24.  In her role at St. Joseph's, Plaintiff interfaced with the Excellus BCBS contracting team, including Ms. Nichols, Mr. Vitagliano, and Kurt Brown ("Mr. Brown"), Excellus BCBS's Contract Director for Central New York at the time, among others.  *Id*.; Nichols Depo.,

at pp. 17-19; Vitagliano Depo., p. 20. As a result of Mr. Brown's retirement, the Central New York Contract Director position became available in early 2021. Nichols Dec., ¶7; Rodriguez Depo. Day 1, p. 24.

Given Excellus BCBS's positive interactions with Plaintiff while she was employed by St. Joseph's, Ms. Nichols recruited Plaintiff for the open Contract Director position. Rodriguez Depo. Day 1, pp. 23-24; Nichols Depo., pp. 19-20. Though Ms. Nichols is not typically involved in recruiting efforts, she personally reached out to Plaintiff and encouraged her to apply. Nichols Depo., pp. 20-21; Rodriguez Depo. Day 1, pp. 23-24. After a series of interviews with Ms. Nichols, Mr. Vitagliano, and others, Plaintiff was offered the Contract Director position. Nichols Depo., pp. 21-22; Rodriguez Depo. Day 1, pp. 29-30. Throughout her employment at Excellus BCBS, Plaintiff worked remotely except on rare occasions. Rodriguez Depo. Day 1, pp. 31, 36.

Plaintiff was one of three Contract Directors reporting to Ms. Nichols in 2021-2022. Nichols Dec., ¶9. By way of relevant background, Excellus BCBS purchases healthcare on behalf of the employer groups (*i.e.*, its members) participating in its health plan. Nichols Depo., p. 12; Nichols Dec., ¶5. It is the responsibility of Ms. Nichols' team to negotiate the purchase agreements or contracts between Excellus BCBS and healthcare providers. *Id*.

During Plaintiff's employment, each Contract Director was assigned responsibility for distinct geographic regions and for contracting with healthcare providers therein. Nichols Dec., ¶11. Plaintiff was primarily responsible for the Central New York region. Nichols Dec., ¶12; Rodriguez Depo. Day 1, pp. 33-34. Following restructuring on Ms. Nichols' team in 2021, however, Plaintiff also became responsible for contracting in the Southern Tier. *Id*. Plaintiff's counterparts, Daniel Kane ("Mr. Kane") and Chris McGann ("Mr. McGann"), were Contract Directors for the Utica and Rochester regions, respectively. Nichols Dec., ¶9.

4

For contracting purposes, Excellus BCBS measures each region's size by spend and volume of care more than geographic area. Vitagliano Depo., pp. 29-30; Nichols Depo., pp. 58-60. Rochester constitutes Excellus BCBS's largest regional market in terms of volume. Vitagliano Depo., pp. 29-30. The Southern Tier is the smallest of Excellus BCBS's markets. *Id*. Central New York is a mid-size region; it is smaller than Rochester, but larger than the Southern Tier. *Id*.

### C. Plaintiff's Team

During 2021, several organizational and personnel changes occurred within Ms. Nichols' team. Along with these changes came a redivision of regional assignments. Nancy Dorfman ("Ms. Dorfman"), the Contract Director in the Southern Tier, retired not long after Mr. Brown. Nichols Dec., ¶¶12-13; Nichols Depo., p. 26. Ms. Dorfman's duties were split amongst two positions – a newly created Senior Manager of Contract Negotiation position and a Manager of Physician Contracting position. Nichols Dec., ¶13; Nichols Depo., p. 26.

Rather than hiring a fourth Contract Director, provider contracting responsibilities in the Southern Tier were assigned to the Senior Manager of Contract Negotiation. Nichols Dec., ¶13. The Senior Manager worked under a Contract Director, but retained primary responsibility for contracting with providers in the Southern Tier region. *Id*., ¶14. It was at this point that Plaintiff became responsible for the Southern Tier in addition to Central New York. *Id*., ¶13; Rodriguez Depo. Day 1, pp. 33-34. While Plaintiff was the only Director responsible for two regions, she was also the only Director with a Senior Manager reporting to her and supporting that contracting work. Rodriguez Depo. Day 1, p. 128; Nichols Depo., p. 61.

With the input and approval of Ms. Nichols, Plaintiff ultimately hired Amanda Zimmerman ("Ms. Zimmerman"), a White female, for the Senior Manager position. Rodriguez Depo. Day 1, p. 42. Ms. Zimmerman reported directly to Plaintiff and had duties similar to Plaintiff's duties, albeit on a smaller scale. Nichols Dec., ¶15; Rodriguez Depo. Day 1, p. 44. That is, Ms.

5

Zimmerman was responsible for negotiating contracts and holding relationships with providers in the Southern Tier. Rodriguez Depo. Day 1, p. 44; Nichols Dec., ¶¶14-15. Ms. Zimmerman had prior provider contracting experience, which was essential given the relative seniority of her position. Nichols Dec., ¶15; Rodriguez Depo. Day 1, p. 44.

In addition to Ms. Zimmerman, Plaintiff had two other direct reports, Sabrina Robinson ("Ms. Robinson") and Allison Nickerson ("Ms. Nickerson"), on her team. Ms. Robinson and Ms. Nickerson are White females. Rodriguez Depo. Day 1, p. 170. Plaintiff hired Ms. Robinson (who she had previously worked with at St. Joseph's) as a Provider Contract and Specialist Liaison in or about August 2021. *Id*., p. 41. Ms. Nickerson, who had previously supported Mr. Kane in the Utica region, transitioned to the Central New York region to report to Plaintiff. Nichols Dec., ¶16.

Although Ms. Robinson directly reported to Plaintiff, she was also responsible for supporting certain work performed by Christie Brown ("Ms. Brown"), Manager of Physician Contracting. *Id*., ¶17; *see* Rodriguez Depo. Day 1, p. 42. Ms. Brown, like Plaintiff, reported directly to Ms. Nichols. Nichols Depo., p. 81. Plaintiff and Ms. Brown were coworkers; neither supervised nor had managerial authority over the other. *Id*., p. 82; Rodriguez Depo. Day 1, p. 53.

### D.      Plaintiff's Performance

While Ms. Nichols was eager and excited for Plaintiff to take the Contract Director position, it soon became evident that Plaintiff had less contracting knowledge and experience than anticipated. Nichols Depo., pp. 36-37, 42. Plaintiff struggled to understand the analysis necessary for assessing contracts, contract budgets, and rate increases. *Id*., pp. 36-39. There were also concerns that Plaintiff did not fully understand the terms of the contracts that she was negotiating. *Id*., pp. 38-41. Ms. Nichols discussed these performance issues with Plaintiff and provided coaching. *Id*., pp. 37-38. Overall, however, it became evident that Plaintiff did not have the expertise for the role she was in. *Id*., p. 42.

6

E.    **Concerns Regarding Christie Brown**

In February 2022, during a meeting with Ms. Nichols, Plaintiff reported concerns about Ms. Brown on behalf of Ms. Robinson and Mr. Nickerson.  Rodriguez Depo. Day 1, p. 168; Nichols Depo., pp. 82-87.  Plaintiff reported that Ms. Robinson and Ms. Nickerson had concerns about working with Ms. Brown, specifically, that they felt "bullied" by Ms. Brown.  Rodriguez Depo. Day 1, p. 168; Nichols Depo., p. 86.  Ms. Robinson complained that Ms. Brown was not welcoming and that she felt criticized by Ms. Brown.  Rodriguez Depo. Day 1, p. 168.

With respect to Ms. Nickerson, Plaintiff reported that Ms. Nickerson and Ms. Brown had not had a "good working relationship" for years.  Id.  Ms. Nickerson also reported Ms. Brown "beats up on Dan [Kane]," the White male Contract Director in the Utica region.  Id., pp. 170-171; Nichols Depo., p. 98.  Neither Ms. Robinson nor Ms. Nickerson offered any explanation as to why they believed Ms. Brown was bullying them.  Rodriguez Depo. Day 1, p. 169; Deposition of Sheri Rodriguez, taken May 13, 2025 ("Rodriguez Depo. Day 2"), pp. 15-16.  Ms. Brown, like Ms. Robinson and Ms. Nickerson, is a White female.  Rodriguez Depo. Day 1, p. 170.

Ms. Robinson also informed Plaintiff that Ms. Brown made "negative comments" about Plaintiff.  The only allegedly negative comment attributed to Ms. Brown is that she noted when Plaintiff was late to, or missed, meetings.  Id., pp. 162-165.  Plaintiff alleges that when she confronted Ms. Brown about this comment, Ms. Brown was argumentative and "yell[ed]" at her, though Plaintiff could not recall what Ms. Brown said.  Id., pp. 163-164.  During her conversation with Ms. Nichols in February 2022, Plaintiff also reported this interaction with Ms. Brown.  Nichols Dec., ¶20.

The majority of these concerns were raised by Plaintiff on behalf of Ms. Robinson and Ms. Nickerson.  Id.  While Plaintiff noted her hesitation to come forward with her team's concerns because Plaintiff was new to Excellus BCBS and a "leader of color," Plaintiff did not attribute Ms.

7

Brown's conduct to race, gender, or discrimination of any kind.  Rodriguez Depo. Day 1, p. 161, 175-177; Rodriguez Depo. Day 2, p. 12; *see also* Nichols Dec., ¶21.    Indeed, Plaintiff testified that she never complained of discrimination at any point during her employment.  Rodriguez Depo. Day 2, p. 12.  Following this conversation with Plaintiff, Ms. Nichols engaged Human Resources. Nichols Depo., pp. 87, 100; Nichols Dec., ¶22.

Several months later, on or about May 25, 2022, Plaintiff informed Ms. Nichols that Ms. Robinson wanted to meet with Ms. Nichols to discuss her concerns about working with Ms. Brown.  Nichols Depo., pp. 102-103; Nichols Dec., ¶23; Rodriguez Depo. Day 2, p. 16.  Ms. Nichols connected with Ms. Robinson the same morning (on May 25).  Nichols Dec., ¶23. Plaintiff did not participate in the meeting between Ms. Robinson and Ms. Nichols.  *Id*.; Rodriguez Depo. Day 2, p. 16.  During her conversation with Ms. Nichols, Ms. Robinson reiterated many of the concerns Plaintiff shared in February 2022.  Nichols Dec., ¶23. Ms. Robinson specifically reported that she felt that Ms. Brown was a "bully," was rude, that she questioned Ms. Robinson's work, and made Ms. Robinson feel anxious about her work.  *Id*.; Nichols Depo., pp. 102-103.

During the conversation with Ms. Nichols, Ms. Robinson also unexpectedly shared a concern that Ms. Brown's behavior was "possibly" race related with Plaintiff.  Nichols Depo., p. 103; Nichols Dec., ¶24.  No prior concern had been made about Ms. Brown.  Nichols Dec., ¶24. Ms. Robinson was careful to state that she did not have any evidence that Ms. Brown's conduct toward Plaintiff was racially motivated and repeatedly stated that she was not making any accusations.  *Id*.; Nichols Depo., p. 103.

After hearing Ms. Robinson's concerns, Ms. Nichols immediately involved Human Resources Business Partner, Monique Wallenhorst ("Ms. Wallenhorst").  Nichols Dec., ¶25.  Ms. Wallenhorst spoke with Ms. Robinson regarding her concerns about Ms. Brown.  Deposition of

8

Monique Wallenhorst ("Wallenhorst Depo."), pp. 28-30. Ms. Robinson shared that she felt Ms. Brown was "short with her." *Id.*, p. 29. Ms. Robinson further shared that she had a "gut feeling" that Ms. Brown's treatment of Plaintiff was race related. *Id.* Ms. Wallenhorst probed for information about the basis for Ms. Robinson's "gut feeling," however, Ms. Robinson was unable to offer any reason other than "it [was] just a feeling she had." *Id.*, pp. 29-30.

Consistent with standard practice at Excellus BCBS, after speaking with Ms. Robinson, Ms. Wallenhorst engaged Manager of Employee Relations, Jamie DeFonde ("Ms. DeFonde"). *Id.*, pp. 13, 32; Deposition of Jamie DeFonde ("DeFonde Depo."), pp. 56-58. Ms. DeFonde subsequently commenced an investigation and consulted with Francine Shea ("Ms. Shea") of Defendant's Ethics department in doing so. Wallenhorst Depo., pp. 32-33, 74; DeFonde Depo., p. 15; Deposition of Francine Shea ("Shea Depo."), pp. 34-36.

On June 14, 2022, while the investigation was ongoing, Plaintiff called Ms. Nichols to discuss the conflict between Ms. Robinson and Ms. Brown. Nichols Dec., ¶26. By this time, Ms. Robinson had declined to work further with Ms. Brown on a rate project, and Plaintiff reached out to discuss that situation. *Id.*; Rodriguez Depo. Day 2, pp. 17-19.

During their conversation, Plaintiff raised a concern about her own relationship with Ms. Brown. Nichols Dec., ¶27, Ex. B. Plaintiff felt that Ms. Brown treated her differently than Mr. Kane and Mr. McGann, however, she was unable to provide any reason that might be. *Id.*; Rodriguez Depo. Day 2, pp. 18-19. Plaintiff was also unable to explain how Ms. Brown treated her differently. *Id.* Ms. Nichols subsequently informed Ms. DeFonde and Ms. Wallenhorst about her conversation with Plaintiff. *Id.*

On or about June 14, 2022, Ms. DeFonde met with Ms. Robinson to review her concerns. DeFonde Depo., p. 15; Declaration of Jamie DeFonde, sworn to December 19, 2025 ("DeFonde

9

Dec."), ¶3. Like Ms. Wallenhorst, Ms. DeFonde inquired about the basis for Ms. Robinson's concern that Ms. Brown's treatment of Plaintiff might be race related. *Id.*, ¶4; DeFonde Depo., p. 17. Once again, Ms. Robinson was unable to provide Ms. DeFonde with any examples or evidence to support her concern. DeFonde Depo., pp. 17-18, 20; DeFonde Dec., ¶4. Ms. Robinson explained that there had recently been a racially motivated shooting, that there was "a lot going on in the world at the time," and that everything was weighing heavily on her mind. DeFonde Depo., pp. 17-18; DeFonde Dec., ¶4. Ms. Robinson stated that she was not in a clear headspace and subsequently disavowed her concern that Ms. Brown's conduct toward Plaintiff was race related. DeFonde Depo., p. 18; DeFonde Dec., ¶4.

Ms. Robinson also described her own issues with Ms. Brown, telling Ms. DeFonde that they did not communicate well. DeFonde Depo., pp. 18-19. Ms. Robinson described Ms. Brown as a "bully," and complained about how Ms. Brown critiqued her work, spoke to her, and talked down to her. *Id.*, pp. 18-20.

After speaking with Ms. Robinson, Ms. DeFonde reviewed the situation and evidence – or lack thereof – with Ms. Shea, Director of Ethics and Strategic Projects. *Id.*, pp. 15, 25-26; Shea Depo., pp. 5, 34-37. Given the absence of any evidence supporting Ms. Robinson's concern that Ms. Brown's treatment of Plaintiff was related to race, it was determined that there were no discrimination concerns. DeFonde Depo., pp. 25-26; Shea Depo., pp. 36-37. It was, however, clear that communication-related conflicts were occurring among Ms. Brown, Ms. Robinson, and Plaintiff, and that they were struggling to work together effectively. DeFonde Depo., pp. 25-26.

To address this concern and close out the investigation, Ms. DeFonde scheduled a series of group meetings between herself, Ms. Wallenhorst, Ms. Nichols, Ms. Brown, Ms. Robinson, and Plaintiff. *Id.*, pp. 25-27, 63; Nichols Depo., p. 104. Three meetings were held. DeFonde Depo.,

10

p. 63.  The first was attended by Ms. DeFonde, Ms. Wallenhorst, Ms. Nichols, Ms. Brown, and Ms. Robinson; the second was attended by Ms. DeFonde, Ms. Wallenhorst, Ms. Nichols, Ms. Brown, and Plaintiff; and the final meeting was attended by Ms. DeFonde, Ms. Wallenhorst, Ms. Nichols, Ms. Brown, Ms. Robinson, and Plaintiff.  *Id*.; *see also* Nichols Depo., p. 107; Rodriguez Depo. Day 2, p. 24.  The first two meetings occurred on or about June 17, 2022, and the final meeting occurred on or about June 22, 2022.  DeFonde Depo., pp. 89-92.  These meetings were intended to help facilitate better communication and productive, collaborative working relationships moving forward.  *Id*., pp. 26, 63-64.

While Plaintiff was initially defensive during the June 17 meeting, there was ultimately consensus amongst Plaintiff, Ms. Brown, and Ms. Robinson that everyone would collaboratively "work to remediate tensions on the team."  Rodriguez Depo. Day 2, p. 24; *see also* DeFonde Depo., p. 64-65; Nichols Depo., pp. 108, 128-129; Wallenhorst Depo., pp. 36-38.  Plaintiff acknowledges that everyone was aligned in that goal.  Rodriguez Depo. Day 2, p. 24.  Plaintiff did not raise any additional concern on behalf of herself or Ms. Robinson following these meetings in June 2022.  Nichols Dec., ¶28; Nichols Depo., p. 129; DeFonde Dec., ¶6; Declaration of Monique Wallenhorst, sworn to December 22, 2025 ("Wallenhorst Dec."), ¶4.

**F.    Plaintiff Is Instructed Not to Offer Unauthorized Mid-Term Rate Increases**

On or about June 14, 2022, a hospital "SWOT" review meeting was held to review negotiation strategies for Excellus BCBS's agreements with various hospitals.  Nichols Dec., ¶29.  These strategy discussions and planning documents are internally referred to as SWOT analyses or SWOTs.[2]  *Id*.

The June 14 meeting attendees included Mr. Vitagliano, Ms. Nichols, Plaintiff, Mr. Kane,

---

[2] "SWOT" stands for strategies, weaknesses, opportunities, and threats.  Nichols Depo., p. 168.

Mr. McGann, Ms. Zimmerman, and several others. *Id.*, ¶30. During the meeting, Mr. Vitagliano advised attendees that mid-term reimbursement rate increases for hospitals could not be offered without his advance approval. *Id.*, ¶31; Vitagliano Depo., p. 34. Mr. Vitagliano specifically explained that if there was an opportunity to lengthen provider agreements or obtain long-term agreements of 3-5 years, Excellus BCBS would consider increasing reimbursement rates in otherwise closed contracts. Vitagliano Depo., pp. 34, 37. These increases were not to be offered gratuitously, but in exchange for the stability provided by a long term agreement. *Id.*

As a general matter, reopening existing contracts to increase reimbursement rates is "very unusual." *Id.*, pp. 35-36. While it is out of the ordinary to increase previously agreed upon reimbursement rates, thereby committing Excellus BCBS to pay more for the same contracted services, the goal of obtaining long-term contracts presented business justification for offering such mid-term increases in the right situation. *Id.*, pp. 34-37. Mr. Vitagliano explained that mid-year increases would only be considered on a case by case basis, requiring his involvement and approval. *Id.*, p. 64. He therefore instructed the meeting attendees that if there was a business justification for exploring mid-term rate increases in exchange for long-term stability, that could be explored. *Id.*, pp. 35-36. Because it was not typical to change the terms of an existing agreement, however, Mr. Vitagliano specifically stated that he needed to approve any such amendments in advance. *Id.*

As a result of this directive, all Contract Directors were instructed not to reopen existing contracts or offer mid-term rate increases without Mr. Vitagliano's involvement and express authorization. *Id.*, pp. 34-37; Nichols Depo., p. 160.

12

G.    **Despite the Directive Given During the June 14 Meeting, Plaintiff Extended an Unauthorized Offer of Mid-Year Rate Increases to River Hospital**

One of the provider relationships that Plaintiff was responsible for managing was River Hospital.  Nichols Dec., ¶32; *see* Rodriguez Depo. Day 1, pp.64-65; 79.  At the time of Mr. Vitagliano's directive on June 14, 2022, the agreement between Excellus BCBS and River Hospital was closed and the reimbursement rate was fixed as of January 1, 2022. Nichols Dec., ¶33; Rodriguez Depo. Day 1, pp. 65-66, 72.

Relevant here, the agreement between Excellus BCBS and River Hospital contains a provision that allows Excellus BCBS to renew the contract year after year on the same terms and at the same commercial reimbursement rates absent timely notice from River Hospital of its desire to renegotiate. Nichols Dec., ¶34.  If such notice is not provided, Excellus BCBS has the right to "roll" River Hospital during the subsequent year at the then-operative rates. *Id*.  Because River Hospital did not give notice to renegotiate for 2022, Plaintiff rolled River Hospital for 2022 at the same rates in effect for 2021. *Id*., ¶35; *see also* Rodriguez Depo. Day 1, pp. 65-66.  On September 30, 2021, Plaintiff wrote to River Hospital to explain that the rates for 2022 would remain the same as rates for the prior year.  Rodriguez Depo. Day 1, p. 65-66.  In other words, there was no increase to the reimbursement rate in 2022 and River Hospital was rolled at 0%.  Nichols Dec., ¶35.  As a result, Defendant's budget for commercial reimbursement rate increases for River Hospital in 2022 became 0%. *Id*.; Nichols Depo., p. 191; Vitagliano Depo., pp. 59-60.

Despite the directive from Mr. Vitagliano on June 14, 2022, Plaintiff nevertheless reopened the River Hospital contract in July 2022 and negotiated a mid-term increase to River Hospital's reimbursement rate without Mr. Vitagliano's approval.  Nichols Dec., ¶36; Rodriguez Depo. Day 1, p. 86.  Specifically, on July 7, 2022, Plaintiff offered River Hospital an amendment which increased the commercial reimbursement rate by 2.4%, effective September 1, 2022, instead of

13

0%.  Nichols Dec., ¶37; Rodriguez Depo. Day 1, pp. 88-89.  The amendment provided further increases in 2023, with the rate increasing another 3% on January 1, 2023.  *Id*.; Rodriguez Depo. Day 1, pp. 89-90.  The same day Plaintiff made this unauthorized offer (July 7, 2022), River Hospital accepted and executed the amendment, binding Excellus BCBS to the increases that Plaintiff had offered.  Nichols Dec., ¶38; *see also* Rodriguez Depo. Day 1, pp. 91-92.

On July 7, 2022, only *after* River Hospital had accepted and executed the amendment, Plaintiff sent the amendment to Ms. Nichols for her countersignature.  Nichols Dec., ¶39.  This was the first time Ms. Nichols learned that Plaintiff had offered River Hospital a mid-term rate increase for 2022.  *Id.*; Nichols Depo., pp. 185-186.  While Plaintiff and Ms. Nichols had discussed the possibility of opening the River Hospital contract before the June 14 meeting with Mr. Vitagliano, Plaintiff had been given an express directive that no such amendments were permitted without Mr. Vitagliano's involvement.  Nichols Dec., ¶40.

When Ms. Nichols questioned Plaintiff about this unauthorized offer, Plaintiff was unable to explain why she had provided River Hospital a rate increase for 2022.  *Id*., ¶41.  There is no dispute that Plaintiff did not consult Mr. Vitagliano, or obtain his authorization, prior to reopening the River Hospital contract and offering the mid-term rate increase.  Rodriguez Depo. Day 1, p. 86; *see* Vitagliano Depo., pp. 33-41; Declaration of Antonio Vitagliano, sworn to December 29, 2025 ("Vitagliano Dec."), ¶5.

The amendment that Plaintiff offered River Hospital was also inconsistent with the planning documents and strategy that Plaintiff had previously presented.  Vitagliano Depo., pp. 57-61; Nichols Depo., p. 187; Rodriguez Depo. Day 1, pp. 72-73.  Prior to the River Hospital amendment, Plaintiff previously proposed a strategy aimed at reaching a five-year agreement with

14

River Hospital for 2023 and beyond. *Id*. The five-year plan is what Plaintiff presented to both Ms. Nichols and Mr. Vitagliano. *Id*.

Instead, Plaintiff committed Excellus BCBS to a short-term agreement, which included unauthorized and unbudgeted costs. Vitagliano Depo., pp. 35, 59-60, 74-76; Nichols Depo., pp. 187, 191. The amendment Plaintiff offered River Hospital committed Excellus BCBS to pay more for already contracted services. At the same time, the amendment did not achieve the goal of long-term stability articulated by Mr. Vitagliano on June 14, 2022. Vitagliano Depo., pp. 74-76.

The financial impact of Plaintiff's unauthorized offer of a mid-term increase was estimated to be approximately $100,000. Nichols Depo., pp. 196-97; *see also* Vitagliano Depo., pp. 53-56. Fortunately, the cost of Plaintiff's insubordination was contained as River Hospital is a modest volume provider. Vitagliano Depo., pp. 74-75. While Plaintiff refuses to acknowledge that the mid-term amendment resulted in increased costs for Excellus, she concedes that Excellus would have been "more under budget" had she not offered River Hospital the unauthorized amendment. Rodriguez Depo. Day 1, p. 101.

Ultimately, Excellus BCBS countersigned the River Hospital amendment and honored the offer Plaintiff made given that Plaintiff's position gave her the authority to negotiate and create contracts with providers. Vitagliano Depo., pp. 94-95; Nichols Depo., pp. 192-193, 198.

Because Plaintiff failed to follow an express directive to seek advance approval from Mr. Vitagliano before reopening the River Hospital contract, and offered binding mid-year increases, Plaintiff's employment was terminated on July 19, 2022. Nichols Depo., pp. 159-160; Nichols Dec., ¶44. Ms. Nichols, Mr. Vitagliano, and Ms. DeFonde were involved in the termination decision. Nichols Depo., pp. 193-195; Vitagliano Depo., pp. 80-81; DeFonde Depo., p. 38.

Ms. Nichols and Ms. DeFonde met with Plaintiff virtually on July 19, 2022 to convey the

15

termination decision.  Ms. Nichols informed Plaintiff that she was being terminated effective immediately (on July 19) due to Plaintiff's failure to follow the correct process to have the River Hospital amendment reviewed for approval prior to extending the offer to the provider.  Nichols Depo., pp. 230-232; Rodriguez Depo. Day 1, pp. 116-118.

## SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, a party is entitled to summary judgment when it shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  To establish a genuine issue of material fact, a plaintiff "may not rely simply on conclusory statements or on contentions that the [evidence] supporting the motion [is] not credible."  *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir. 1993).

This Court, like others in the Second Circuit, has followed these principles and has granted summary judgment in many employment discrimination cases like this one where the plaintiff is unable to present specific facts, based upon competent evidence, sufficient to show that a genuine issue of material fact exists requiring a trial.  *Encarnacion v. Spinner*, 9:15-cv-01411 (BKS/ML), 2020 U.S. Dist. LEXIS 95248, at *30-31 (N.D.N.Y. June 1, 2020); *see also id.*; *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985) (observing that "[g]iven the ease with which [employment discrimination suits] may be brought and the energy and expense required to defend such actions," a party opposing summary judgment must present "concrete particulars" of discrimination).

Defendant respectfully submits that its motion for summary judgment should be granted and the Complaint should be dismissed in its entirety for each of the separate and alternative grounds set forth below.

16

## ARGUMENT

### POINT I

### PLAINTIFF CANNOT ESTABLISH A *PRIMA FACIE* CLAIM OF DISCRIMINATION

To state a *prima facie* claim of race or gender discrimination under Section 1981[3] or the NYSHRL, Plaintiff must demonstrate that: "(1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Pompey v. Cnty. of Westchester*, No. 23-CV-9337 (KMK), 2025 U.S. Dist. LEXIS 190667, at *23 (S.D.N.Y. Sept. 24, 2025) (quotations and citations omitted). "Claims of discrimination under [Section 1981 and the NYSHRL] are analyzed pursuant to the familiar and well-known three-part framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Id*. at *23 (citations omitted); *Trivedi v. St. Peter's Health Partners Med. Assocs., P.C.*, No. 23-7608-cv, 2024 U.S. App. LEXIS 31543, at *2 (2d Cir. Dec. 12, 2024) (summary order).

Upon establishing a *prima facie* case, the burden shifts to the employer to offer a legitimate, non-discriminatory reason for the employment action. *Pompey*, 2025 U.S. Dist. LEXIS 190667, at *23-24. Where an employer does so, the burden shifts back to the plaintiff to show that the employer's proffered, non-discriminatory reason is a mere pretext for actual discrimination. *Id.* Here, Plaintiff cannot meet either her initial or ultimate burden of proof.

### A. Plaintiff Cannot Demonstrate That She Was Terminated Because of Her Race or Gender

Plaintiff alleges that she was terminated because of her race and gender in violation of

---

[3] Section 1981 applies solely to Plaintiff's race discrimination claim. *See* 42 U.S.C. § 1981; *see also Dkt. No. 19* (dismissing any gender discrimination claim under Section 1981 as "that statute covers only discrimination based on race").

Section 1981 and the NYSHRL.  For each of the reasons that follow, Plaintiff cannot establish the requisite causal link between her race or gender and her termination.  Accordingly, she cannot state a *prima facie* case and her discrimination claims must be dismissed.

    *i.   The Same Actor Inference Precludes a Discriminatory Discharge Claim*

As set forth above, both Ms. Nichols and Mr. Vitagliano were intimately involved in hiring Plaintiff.  <u>Rodriguez Depo.</u>, pp. 23-28; <u>Nichols Dec.</u>, ¶6.  In fact, Ms. Nichols personally reached out to Plaintiff and encouraged her to apply for the Contract Director position.  <u>Nichols Depo.</u>, pp. 20-21; <u>Rodriguez Depo. Day 1</u>, pp. 23-24.  Both Ms. Nichols and Mr. Vitagliano had met Plaintiff while she was employed by St. Joseph's and were aware that she is an African American female before the recruiting and hiring processes began.  *See* <u>Nichols Depo.</u>, pp. 17-21; <u>Vitagliano Depo.</u>, p. 20.  It is also undisputed that a mere eighteen months later, Ms. Nichols, in consultation with Mr. Vitagliano and Employee Relations, made the decision to terminate Plaintiff's employment due to her misconduct in offering the River Hospital amendment.[4]

These undisputed facts give rise to the "same actor" inference, which virtually precludes a claim that a subsequent decision to terminate Plaintiff was because of her race or gender.  "[W]hen the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire.  This is especially so when the firing has occurred only a short time after the hiring." *Grady v. Affiliated Cent., Inc*, 130 F.3d 553, 560 (2d Cir. 1997) (quotations and citations omitted); *see also Filozof v. Monroe Cmty. College*, 411 Fed. App'x 423, 427 (2d Cir. 2011) (summary order).  Indeed, "[w]here the termination occurs within a relatively short time after the hiring—as it did here—there is a significant inference that racial animus *was not* a motivating factor in the

---

[4] While Ms. DeFonde also participated in the decision to terminate Plaintiff's employment, Plaintiff does not attribute any discriminatory animus to Ms. DeFonde.  *See* <u>Rodriguez Depo. Day 1</u>, p. 159.

18

employment decision." *Dabney v. Christmas Tree Shops*, 958 F. Supp. 2d 439, 453–54 (S.D.N.Y. 2013) (emphasis added).  A period of less than two years is sufficiently short that the same actor inference applies.  *Id*. (collecting cases); *see also Orellana v. Reiss Wholesale Hardware Co.*, 14 CV 1913 (NGG)(LB), 2016 U.S. Dist. LEXIS 76073, at *21-22 (E.D.N.Y. June 8, 2016).

### ii.  *Plaintiff's Bald Allegation that Other Excellus BCBS Employees Experienced Discrimination Is Insufficient to Establish Causation*

The Complaint suggests that Excellus BCBS has a "well-documented history of discriminating against Black employees."  Complaint, ¶61 (*Dkt. No. 1*).  Plaintiff specifically alleges that Kevin Leyseth ("Mr. Leyseth"), Joseph Searles ("Mr. Searles"), and LaRhonda Williams ("Ms. Williams") faced race discrimination and retaliation by Defendant.  *Id*.  This speculative and unsupported allegation does not provide any support for Plaintiff's claim that she was terminated based upon her race.

This facially bald allegation fails to support a discrimination claim.  Plaintiff does not and cannot offer any factual or evidentiary support for the contention that these individuals experienced any adverse action let alone that such adverse action was *because of* their race.  *See Mania v. Alper Holdings USA, Inc.*, No. 95 CIV. 1846 (DC), 1996 U.S. Dist. LEXIS 11076, at *12-13 (S.D.N.Y. Aug. 5, 1996) ("the additional facts that six employees over 40 were discharged and four employees under 40 were hired after November 1992, when [defendant] underwent the change in control, as plaintiff alleges," fails to create an issue of material fact as plaintiff "has presented no concrete evidence to show that these individuals were hired or fired because of their ages").  Critically, Plaintiff admitted that she has absolutely no evidence that Mr. Leyseth, Mr. Searles, or Ms. Williams were discriminated against except that they allegedly told Plaintiff that they had experienced discrimination following Plaintiff's termination.  Rodriguez Depo. Day 2, pp. 35-42.

As a threshold matter, this kind of hearsay evidence is inadmissible and therefore cannot

19

create an issue of material fact. *Chansamone v. IBEW Local 97*, 523 Fed. Appx. 820, 822, n.4 (2d. Cir. 2013) (summary order) (excluding co-worker testimony that defendant would not hire him due to his race "because that testimony is inadmissible hearsay"); *see also Burlington Coat Factory Warehouse Corp. v. Esprit De Corp*, 769 F.2d 919, 924 (2d Cir. 1985) (holding a plaintiff "cannot rely on inadmissible hearsay in opposing a motion for summary judgment . . .").

Furthermore, Plaintiff testified that she has no knowledge about Mr. Leyseth, Mr. Searles, or Ms. Williams' employment with Excellus BCBS, she does not know whether any of these individuals complained of discrimination, and she does not know the circumstances of their separations from employment. Rodriguez Depo. Day 2, pp. 35-42. Given her lack of personal knowledge, Plaintiff's threadbare attempt to suggest a larger pattern of race discrimination at Excellus BCBS fails as a matter of law. Indeed, it is well-established that "conclusory statements or mere allegations [are] not sufficient to defeat a summary judgment motion." *Wood v. New York City Transit Auth.*, 699 Fed. Appx. 76, 77 (2d. Cir. 2017) (summary order).

### iii. Plaintiff's Attempt to Rely on Comparator Evidence Falls Flat

In a futile effort to demonstrate that her termination occurred under circumstances giving rise to an inference of discrimination, Plaintiff further alleges that two White male employees – Mr. Brown and Paul Gandolfo ("Mr. Gandolfo") – made errors that resulted in significant financial losses for Excellus BCBS, but were not disciplined as a result. Rodriguez Depo. Day 1, pp. 123-124. Because neither Mr. Brown nor Mr. Gandolfo is an appropriate comparator, this too fails to establish that Plaintiff was terminated under circumstances giving rise to an inference of discrimination.

To establish that Mr. Brown and Mr. Gandolfo are appropriate comparators, Plaintiff must demonstrate that "[s]he and the alleged comparator employee(s) were 'similarly situated in all material respects.'" *Wood*, 699 Fed. Appx. at 78 (quoting *Graham v. Long Island RR.*, 230 F.3d

20

34, 39 (2d Cir. 2000)).  Employees are similarly situated if they are "'(1) subject to the same performance evaluation and discipline standards and (2) engaged in comparable conduct.'"  *Id.* (quoting *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 493-94 (2d Cir. 2010)); *see also Campbell v. Bottling Group, LLC*, 814 Fed. Appx. 630, 633 (2d Cir. 2020) (summary order) (holding that a "comparator must have engaged in 'comparable conduct' of 'comparable seriousness.'" (quoting *Graham v. Long Island R.R.,* 230 F.3d 34, 40 (2d Cir. 2000))).  Plaintiff cannot meet this burden because neither Mr. Brown nor Mr. Gandolfo meet this test.

While Mr. Brown was Plaintiff's predecessor, Plaintiff has not and cannot demonstrate that he engaged in misconduct comparable to her misconduct in amending the River Hospital contract. In her effort to cast Mr. Brown as an appropriate comparator, Plaintiff alleges that Mr. Brown told her that he made an error which resulted in millions of dollars of loss to Excellus BCBS.  Rodriguez Depo. Day 1, pp. 137-138.  As with Plaintiff's allegations about Mr. Leyseth, Mr. Searles, and Ms. Williams, this is inadmissible hearsay which Plaintiff cannot rely upon to defeat summary judgment.  *Chansamone*, 523 Fed. Appx. at 822, n.4; *Burlington Coat Factory Warehouse Corp.*, 769 F.2d at 924.

Plaintiff also admitted a complete lack of personal knowledge or substantive information about Mr. Brown's alleged million dollar mistake.  Rodriguez Depo. Day 1, pp. 137-138.  Plaintiff is unable identify any of the circumstances of Mr. Brown's alleged mistake, including what the mistake was or when it occurred.  *Id.*  Defendant's witnesses similarly lack knowledge of any such mistake.  Nichols Depo., pp. 220-221; Vitagliano Depo., p. 98; *see also* DeFonde Depo., p. 43. Without any information about the mistake allegedly made by Mr. Brown – *including whether it occurred in the first instance* – Plaintiff cannot establish that he is an appropriate comparator. *Wood*, 699 Fed. Appx. at 78 (holding comparator evidence insufficient where plaintiff "presented

21

no details of the nature of [the alleged comparator's] incident, nor did he fulfill his burden of proving that the circumstances of [the alleged comparator]'s accident were comparable to the circumstances of his own"); *Lee v. Winthrop Univ. Hosp.*, No. 13-CV-5003 ADS GRB, 2015 U.S. Dist. LEXIS 153939, at *30 (E.D.N.Y. Nov. 13, 2015) ("it is well-established that mere conclusory assertions that the employees outside of the plaintiff's class were treated more favorably will not suffice to create a triable issue of fact").

Critically, even if this mistake occurred, Plaintiff cannot submit any evidence to demonstrate that Mr. Brown ignored a clear directive, which is what Plaintiff did in this case.

Mr. Gandolfo is similarly not an appropriate comparator under either prong of the above-described test. Plaintiff admits a complete lack of knowledge about Mr. Gandolfo's employment at Excellus BCBS, including as to his title, duties, supervisor(s), or the circumstances of his separation. Rodriguez Depo. Day 1, pp. 139-141. At no point did Mr. Gandolfo report to Ms. Nichols or Mr. Vitagliano, nor did he work in the area of provider contracting. Vitagliano Depo., p. 99; Nichols Dec., ¶46. As such, Mr. Gandolfo was not subject to the same performance evaluation and discipline standards as Plaintiff. This alone makes him an inappropriate comparator.

With respect to his alleged mistake, Plaintiff claims that Mr. Gandolfo committed an error that cost Excellus BCBS $500,000. Rodriguez Depo. Day 1, pp. 141-142. Plaintiff has no personal knowledge of this alleged mistake, but claims she learned about it from Ms. Nichols. *Id*., p. 142. Plaintiff once again runs into a hearsay problem with respect to these allegations. *Chansamone*, 523 Fed. Appx. at 822; *Burlington Coat Factory Warehouse Corp.*, 769 F.2d at 924.

Moreover, Plaintiff makes no allegation that Mr. Gandolfo was insubordinate or acted in defiance of an express directive. *See* Rodriguez Depo. Day 1, pp. 138-144. Thus, even assuming

22

*arguendo* that Plaintiff's allegation that Mr. Gandolfo made a financial error is true, she cannot establish that his alleged error was at all similar to her own misconduct.

For each of the foregoing reasons, Plaintiff cannot establish a *prima facie* discriminatory discharge claim.

### B.    Plaintiff's Remaining Allegations Fail to Support a Discrimination Claim

Plaintiff alleges several additional categories of discriminatory treatment.  Plaintiff specifically claims that: (i) her workload was heavier than her White male counterparts, Mr. Kane and Mr. McGann; (ii) Ms. Brown did not share certain unspecified work data with her; (iii) Mr. Vitagliano told a provider that she relied too heavily on legal; and (iv) Defendant declined to hire Katrina Best ("Ms. Best"), another African American employee, for the Senior Manager of Contract Negotiation position.  <u>Rodriguez Depo. Day 1</u>, pp. 123-156.  None of these allegations supports a race or gender discrimination claim.

 Importantly, Plaintiff previously conceded that she is not pursuing a harassment or hostile work environment claim.  *See Dkt. No. 19* ("Ordered that Defendants' motion to dismiss is GRANTED in part . . . such that Plaintiff's claims relating to a hostile work environment under both Section 1981 and the NYSHRL . . . are dismissed.").  Thus, the familiar burden-shifting discrimination analysis applies to each of these alleged instances of discriminatory treatment. Much of this conduct fails to amount to adverse employment action and none has any causal nexus to Plaintiff's race or gender.  Accordingly, none of the complained of conduct constitutes race or gender discrimination.

### i.    *Allegations Regarding Plaintiff's Workload*

While a disproportionately heavy workload may constitute adverse employment action in certain circumstances, Plaintiff has not and cannot demonstrate that her workload was in fact heavier or more burdensome than the workloads of Mr. Kane or Mr. McGann.  Nor can Plaintiff

23

demonstrate that any difference in the Contract Directors' respective workloads was the result of race or gender discrimination.

In support of this allegation, Plaintiff alleges that she was the only Contract Director with responsibility for two regions. Rodriguez Depo. Day 1, pp. 33-34. While this is factually accurate, Plaintiff fails to appreciate all of the relevant facts and circumstances. As Ms. Nichols and Mr. Vitagliano testified, Rochester is Excellus BCBS's largest, highest volume region. Vitagliano Depo., pp. 29-30; Nichols Depo., pp. 58-59. This is undisputed. In fact, Plaintiff testified that she does not know how contract size or volume differs amongst regions. Rodriguez Depo. Day 1, p. 127. While Plaintiff's regions covered more geography, she was not responsible for the most demanding or highest volume region. Vitagliano Depo., pp. 29-30; Nichols Depo., pp. 58-59.

Plaintiff's allegation about regional assignments also disregards the fact that Ms. Zimmerman had contracting responsibility for the Southern Tier. Rodriguez Depo. Day 1, p. 128. Plaintiff was, therefore, not singlehandedly responsible for two regions while the other Contract Directors were assigned only one region. Id., p. 128. Moreover, Plaintiff was the only Contract Director with a Senior Manager working under them. See id., p. 128; Nichols Depo., p. 61.

Plaintiff, who never complained about her workload during her employment, was also unable to explain why she believed she was assigned a heavier workload than Mr. Kane and/or Mr. McGann. Rodriguez Depo. Day 1, p. 129. Plaintiff made no allegation that her workload was disproportionate due to her race or gender:

Q:     Why do you believe you were given a larger workload than Dan and Chris?

A:     I – I cannot answer that. I can only make assumptions. So I can't answer that because I did not make that decision.

24

*Id.* It is also worth noting that Plaintiff was more highly compensated than Mr. Kane, further eliminating any suggestion that she was treated worse than, or subject to lesser terms and conditions of employment than, he was. Nichols Dec., ¶10.

Finally, Plaintiff claims that she spent more time working than Mr. Kane and Mr. McGann. Rodriguez Depo. Day 1, p. 129. Like her other assertions, this is nothing more than a speculative and unsupported allegation. Plaintiff provides no comparative data of her workload versus the workloads of Mr. Kane and Mr. McGann. Indeed, Plaintiff confirmed that she was not required to submit a timesheet or any accounting of her time and that she was unaware whether Mr. Kane or Mr. McGann were required to do so. *Id.*, p. 130. Plaintiff further conceded that she could not speak to Mr. McGann's workload or how much time he spent working. *Id.*, p. 131. With respect to Mr. Kane's workload, Plaintiff testified that she believes she worked more than Mr. Kane did because he mentioned "he was going to go golfing in the afternoon" during meetings. *Id.*, p. 130. From this, Plaintiff deduced that Mr. Kane's "workload was noticeably less." *Id.* These allegations cannot support a discrimination claim.

"On a motion for summary judgment, the non-moving party must present concrete particulars and cannot succeed with purely conclusory allegations." *Sharpe v. MCI Commc'ns Servs., Inc.*, 684 F. Supp. 2d 394, 400 (S.D.N.Y. 2010) (quotations and citations omitted). Because Plaintiff is unable to meaningfully compare her workload and hours of work to those of Mr. Kane or Mr. McGann, Plaintiff's workload related discrimination claims necessarily fail. *Moy v. Perez*, 712 Fed. Appx. 38, 42-43 (2d Cir. 2017) (summary order) ("arguments, which are founded on 'speculation and conjecture' and based on 'guesswork' or 'theorization,' are insufficient to admit a reasonable inference of discrimination on summary judgment" (citations omitted)); *Sharpe*, 684 F. Supp. 2d at 400 ("Personal speculation is insufficient as a matter of law to raise an inference of

25

discrimination.").

### ii. Allegations Regarding Plaintiff's Access to Unspecified Data

Plaintiff's allegation that Ms. Brown declined to share certain unspecified work data with her fares no better. Even assuming *arguendo* that restricting access to certain data constitutes adverse employment action, Plaintiff's allegations are too vague and speculative to establish a discrimination claim. Plaintiff claims that Ms. Brown would not work with Plaintiff or provide her analytics to Plaintiff, but "seemed more willing to help or work with Dan." Rodriguez Depo. Day 1, pp. 174-175. Plaintiff was unable to specify what provider this data pertained to and could not provide any additional detail about Ms. Brown's alleged resistance to sharing data. Rodriguez Depo. Day 1, p. 172. Further when she allegedly discussed the situation with Ms. Nichols, Plaintiff provided no explanation as to why she believed Ms. Brown would not share the data with her. Rodriguez Depo. Day 1, p. 173. Plaintiff cannot satisfy the causation element of a discrimination claim as there is no evidence that the complained of conditions were at all related to Plaintiff's race or gender.

### iii. Allegations Regarding Commentary That Plaintiff Relied Too Heavily on Legal

Plaintiff also complains that Mr. Vitagliano allegedly told a provider that Plaintiff relied too heavily on legal. Rodriguez Depo. Day 1, pp. 125-126, 147. Plaintiff alleges that during a virtual Zoom meeting with a provider, one of the provider representatives left early because he had a call scheduled with Mr. Vitagliano. *Id.*, pp. 125-126, 146-147. Rather than disconnect from Zoom, however, the provider representative took the call and unknowingly remained in the Zoom meeting. *Id.* Plaintiff alleges that when the provider representative was on the call, he stated something to the effect of "remember when you said [Plaintiff] always leans on legal . . . I'm on the phone with her now and she's leaning on legal." *Id.*, pp. 125-126. Because the provider

26

representative had not disconnected from the Zoom meeting, Plaintiff and other meeting attendees allegedly overheard this remark. *Id*.

While Plaintiff complains of this situation, Mr. Vitagliano's alleged comment does not constitute adverse employment action. *See Haynes v. Exec. Chamber for the Off. of the Govenor of N.Y.*, 1:23-cv-08051 (MKV), 2025 U.S. Dist. LEXIS 193763, at \*21 (S.D.N.Y. Sept. 30, 2025) ("Similarly, the allegations that Defendant [] spoke to Plaintiffs in an antagonistic or condescending manner and both privately and publicly criticized Plaintiffs, both fall into the category of 'petty slights or minor annoyances that often take place at work,' and do not constitute adverse employment actions." (quoting *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68)). Nor does Mr. Vitagliano's alleged comment create circumstances giving rise to an inference of discrimination. The alleged comment that Plaintiff always relies on legal is race and gender neutral, related purely to performance and client relations, and – most importantly – the statement was not untrue. Indeed, Plaintiff admitted that she "always lean[s] to legal." Rodriguez Depo. Day 1, p. 125.

Critically, when asked why she believes Mr. Vitagliano made a comment about her reliance on legal, Plaintiff stated it was because she, unlike her predecessor, did not do "handshake deals." Rodriguez Depo. Day 1, p. 150. Thus, Plaintiff did not attribute Mr. Vitagliano's comment to race or gender, precluding any suggestion that this comment was discriminatorily motivated.

### iv. The Senior Manager of Contract Negotiation Position

Plaintiff also complains that Ms. Best was not hired for the Senior Manager of Contract Negotiation position despite being Plaintiff's first choice. Rodriguez Depo. Day 1, pp. 42-46. According to Plaintiff, Ms. Nichols did not support hiring Ms. Best. Rodriguez Depo. Day 1, p. 46. While the Complaint alleges that Ms. Nichols provided no explanation or justification for her decision, this is indisputably false. Complaint, ¶ 28 (*Dkt. No. 1*). Plaintiff herself admits as much.

27

Plaintiff testified that when she presented Ms. Best as her top choice, Ms. Nichols expressed a concern that Ms. Best was not the strongest fit for the Senior Manager position because "she did not have enough contracting experience." Rodriguez Depo. Day 1, p. 46; Nichols Depo., pp. 139-140, 143.

In fact, Ms. Best, an internal applicant, did not have *any* experience in provider contracting. Nichols Depo., pp. 139-140, 143; *see also* Rodriguez Depo. Day 1, p. 46. The Senior Manager position was not an entry level position. Nichols Dec., ¶¶14-15. The successful candidate was responsible for negotiating and contracting with providers, similar to a Contract Director. *Id*.; Rodriguez Depo. Day 1, p. 44. As such, the position demanded a candidate with prior provider contracting experience. *Id*. Ms. Zimmerman had this experience and was, therefore, the best candidate for the role. *Id*. Ms. Best was not selected because she lacked contracting experience, and was therefore not qualified. Nichols Depo., pp. 139-140.

In an effort to provide Ms. Best exposure to provider contracting, Ms. Nichols arranged for Ms. Best to be mentored by Mr. Vitagliano. Nichols Depo., pp. 140, 143; Vitagliano Dec., ¶6. This was intended to provide Ms. Best an opportunity to gain more knowledge of, and exposure, to provider contracting. Nichols Depo., p. 140; Vitagliano Dec., ¶6. Ms. Nichols' effort to arrange this mentoring undermines any suggestion that the decision not to hire Ms. Best for the Senior Manager position was discriminatorily motivated.

To the extent Plaintiff intends to rely on the Senior Manager hiring decision as a circumstance giving rise to an inference of discrimination, this is nothing more than a red herring. The Senior Manager hiring decision was wholly unrelated to Plaintiff's own employment or termination.

**POINT II**

**PLAINTIFF CANNOT ESTABLISH A *PRIMA FACIE* CLAIM OF RETALIATION**

To establish a *prima facie* claim of retaliation, Plaintiff must demonstrate that "(1) she has engaged in protected activity, (2) her employer was aware that she participated in such activity, (3) she suffered an adverse employment action based upon her activity, and (4) there is a causal connection between the protected activity and the adverse action." *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 313 (N.Y. 2004); *Trivedi*, 2024 U.S. App. LEXIS 31543, at *9. Plaintiff's retaliation claims are subject to the same burden-shifting scheme as her discrimination claims. *Pompey*, 2025 U.S. Dist. LEXIS 190667, at *37.

**A.    Plaintiff Did Not Engage In Protected Activity**

Plaintiff cannot establish a *prima facie* retaliation claim because she did not engage in protected activity. With respect to complaints of discrimination, Plaintiff conceded at her deposition that she made none:

> Q:    At any time during your employment with Excellus, did you make a complaint about discrimination?
>
> A:    Not during my employment, no.

Rodriguez Depo. Day 2, p. 12. While Plaintiff complained about Ms. Brown, and elevated concerns raised by Ms. Robinson and Ms. Nickerson about Ms. Brown, she never attributed Ms. Brown's alleged conduct to race or gender based animus. Nichols Dec., ¶¶21, 27; Rodriguez Depo. Day 2, pp. 17-19. In fact, with respect to her own concerns about Ms. Brown, Plaintiff did not provide any reason for Ms. Brown's alleged conduct. Nichols Dec., ¶27; Nichols Depo., pp. 130-132; Rodriguez Depo. Day 2, pp. 18-19. Plaintiff specifically testified that when she reported her concerns to Ms. Nichols she was unable to provide any reason as to why she believed Ms. Brown treated her differently than Mr. Kane and Mr. McGann. Rodriguez Depo. Day 2, pp. 18-19.

29

It is well-settled that protected activity does not encompass every workplace complaint. To the contrary, "[t]he term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." *Hanfland v. Brennan*, No. 10-CV-6106-FPG, 2015 U.S. Dist. LEXIS 141128, at *29 (W.D.N.Y. Oct. 16, 2015) (emphasis added). "To constitute protected activity, . . . an informal complaint must include 'sufficiently specific terms so that the employer is put on notice that the plaintiff believes he or she is being discriminated against on the basis of race, gender, . . . or any other characteristic protected'" by Section 1981 or the NYSHRL. *Id*. at *30 (citations omitted); *see also Panzarino v. Deloitte & Touche LLP*, No. 05 CIV.8502 BSJ RLE, 2009 U.S. Dist. LEXIS 101209, at *35-36 (S.D.N.Y. Oct. 29, 2009).

As Plaintiff merely complained about Ms. Brown without relating that alleged treatment to her race, gender, or any other protected characteristic, she did not engage in activity protected by Section 1981 or the NYSHRL. *Id*. "[I]t is objectively unreasonable to believe that complaining about poor treatment in the workplace entirely unrelated to any trait, protected or otherwise, is a protected activity" under Section 1981 or the NYSHRL. *Johnson v. City Univ. of New York*, 48 F. Supp. 3d 572, 577 (S.D.N.Y. 2014) (quotations omitted). Plaintiff's retaliation claims fail on this basis alone. *See Int'l Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC*, 470 F. Supp. 2d 345, 357 (S.D.N.Y. 2007) ("[A]mbiguous complaints that do not make the employer aware of alleged discriminatory misconduct do not constitute protected activity."); *Castro v. City of New York*, 24 F. Supp. 3d 250, 270 (E.D.N.Y. 2014) (same). Even when a plaintiff complains about allegedly differential treatment of employes falling outside their protected class, this is not sufficient to constitute protected activity. *See Lehman v. Bergmann Assoc.,* 11 F. Supp. 3d 408, 417-18 (W.D.N.Y. 2014) (dismissing retaliation allegation where plaintiff's complaint did not specify that she was being treated differently than her male colleagues because of her gender).

30

22738443.v5-12/31/25

Plaintiff similarly did not engage in protected activity for purposes of Section 1981 or the NYSHRL when she (i) relayed the "bullying" concerns raised by Ms. Robinson and Ms. Nickerson to Ms. Nichols in February 2022; or (ii) assisted Ms. Robinson in raising similar bullying concerns in May-June 2022. It is well-settled that generalized complaints of workplace bullying unrelated to an employee's protected characteristics do not constitute protected activity for purposes of a retaliation claim. *See, e.g.*, *Malone v. Town of Clarkstown*, No. 19 CV 5503 (VB), 2022 U.S. Dist. LEXIS 128891, at *20 (S.D.N.Y. July 20, 2022) ("Similarly, plaintiff's complaints about harassing conduct . . . are not protected activity because they complaint of general bullying and harassment that plaintiff does not claim are linked to or motivated by her sex."); *Johnson*, 48 F. Supp. 3d at 577 (plaintiff's "complaints about his boss's bullying and harassment" did not constitute protected activity where there was no allegation that the complained of treatment was because of plaintiff's membership in a protected class); *Lynch v. Nat'l Fuel Gas Distribution Corp.*, 25 F. Supp. 3d 358, 367 (W.D.N.Y. 2014) ("plaintiff has produced no evidence of any complaint, formal or informal, sufficient to have placed [employer] on notice that by complaining about [supervisor]'s 'bullying' she was referring to discriminatory activity"). Here, it bears noting that Plaintiff testified that she and Ms. Robinson never discussed discrimination during Plaintiff's employment, further precluding any suggestion that Plaintiff engaged in protected activity by elevating Ms. Robinson's concerns. Rodriguez Depo. Day 2, p. 33-34.

Furthermore, both Plaintiff, an African American female, and Ms. Robinson, a White female, raised similar concerns about working and communicating with Ms. Brown, a White female. The fact that Plaintiff and Ms. Robinson allegedly experienced similar treatment by Ms. Brown is indicative that race played no role in Ms. Brown's conduct and provide no reason for Excellus BCBS to have understood Plaintiff's concerns as relating to concerns of discrimination.

31

Finally, Plaintiff also testified that she did not consider the treatment she experienced at Excellus BCBS (all of which was taken legitimate, non-discriminatory reasons) as discriminatory until *after* she was terminated.  Rodriguez Depo. Day 1, p. 122.  Having not believed the treatment she experienced was discriminatory until after she was separated from employment, Plaintiff cannot have possibly engaged in protected activity by asserting discrimination concerns.  This too warrants dismissal of Plaintiff's retaliation claims.

**B.      Plaintiff's Termination Was the Sole Result Her Unauthorized Offer of a Mid-Term Rate Increase to River Hospital**

Assuming *arguendo* that Plaintiff did engage in protected activity (she did not), her retaliation claims still fail due to a complete lack of causation.  That is, Plaintiff cannot demonstrate any causal connection between her allegedly protected activity and her termination.

In support of her retaliation claims, Plaintiff alleges that she was (i) "blamed" for the tension between Ms. Robinson and Ms. Brown; and (ii) ultimately terminated.  Rodriguez Depo. Day 2, pp. 29-31.

Plaintiff's allegation that she was blamed for the tension between Ms. Robinson and Ms. Brown does not constitute adverse employment action even under the liberal retaliation standard. *See Kurtanidze v. Mizuho Bank, Ltd.*, 23 Civ. 8716 (PAE), 2024 U.S. Dist. LEXIS 44178, at \*20 (S.D.N.Y. Mar. 13, 2024) (holding the theory that plaintiff "was 'blamed' for his coworkers mistakes" does not constitute adverse employment action); *Zhao-Royo v. New York State Educ. Dep't*, 1:14-CV-0935 (GTS/CFH), 2017 U.S. Dist. LEXIS 5080, at \*41-42 (N.D.N.Y. Jan. 13, 2017) (accepting defendant's argument that plaintiff did not suffer adverse employment action when "she was allegedly yelled at and blamed for mistakes that she did not commit").  Plaintiff was unable to offer any detail about this allegation except that "somehow" in the June 17, 2022 meeting with Ms. Brown, Ms. Nichols, Ms. DeFonde, and Ms. Wallenhorst, "[she] became the

32

reason for Christie and Sabrina's tensions on the team." Rodriguez Depo. Day 2, pp. 7-8, 29-31.

Plaintiff was unable to recall what was said or done to give her this impression. *Id.* This type of

pure speculation is simply not enough to support a *prima facie* retaliation claim. *See Ellison v.*

*Chartis Claims, Inc.*, 178 A.D.3d 665, 669 (2d Dep't 2019) ("The plaintiff offered nothing but

speculation that any of the defendants' challenged actions were motivated, even in part, by

unlawful discrimination or retaliation, and such speculation is insufficient to defeat summary

judgment."); *Trovato v. Air Express Intern.*, 254 A.D.2d 349, 350 (2d Dep't 1998) ("The plaintiffs'

conclusory allegations are insufficient to raise an issue of fact sufficient to deny the summary

judgment motion.").

The real crux of Plaintiff's retaliation claims is that she was terminated for engaging in

what she is anticipated to assert was protected activity. This allegation completely ignores the

reality of Plaintiff's termination and fails to appreciate that the amendment she offered River

Hospital on July 7, 2022 was an intervening event that broke any chain of causation between her

complaint about Ms. Brown and her termination. "[I]in this Circuit, this causal connection

[between protected activity and adverse action] may be broken where an intervening event post-

dating the protected conduct provides an independent basis for the adverse action." *Mauze v. CBS*

*Corp.*, 15-CV-4905 (RDJ)(SLT), 2019 U.S. Dist. LEXIS 228561, at *7-8 (E.D.N.Y. Jan. 23, 2019)

(quotations omitted) (collecting cases); *see also Pompey-Howard v. N.Y. State Educ. Dep't*, 275

F. Supp. 3d 356, 368 (N.D.N.Y. 2017) ("Intervening casual events that occur after the protected

activity but before the adverse employment action remove any inference of causation where

the intervening event would have been good cause for the adverse employment action." (citation

omitted)).

33

Here, Plaintiff was terminated as a result of her insubordinate and unauthorized dealings with River Hospital, which occurred *after* Plaintiff raised any concern about Ms. Brown. Given this intervening event, Plaintiff cannot demonstrate that there was a causal connection between her alleged protected activity and her termination. *See Placide-Eugene v. Visiting Nurse Serv. of New York*, 86 F. Supp. 3d 132, 150 (E.D.N.Y. 2015) (employee's dishonestly during a grievance meeting was an intervening event breaking the chain of causation between her protected activity and termination); *see also Yarde v. Good Samaritan Hosp.,* 360 F.Supp.2d 552, 562 (S.D.N.Y.2005) (employee's breach of patient confidentiality, workplace disruption, and refusal to cooperate during employer's investigation were intervening causes for her suspension and termination).

## POINT III

### PLAINTIFF WAS TERMINATED FOR LEGITIMATE, NON-DISCRIMINATORY, NON-RETALIATORY REASONS

As set forth in Points I and II, *supra*, Plaintiff has not and cannot state a *prima facie* claim of discrimination or retaliation. Nevertheless, even if Plaintiff is deemed capable of stating a *prima facie* discrimination or retaliation claim, it is indisputable that Plaintiff was terminated for legitimate, non-discriminatory, non-retaliatory reasons – *i.e.*, her insubordination, which resulted in a negative financial impact on Excellus BCBS.

It is well-established that insubordination and costly errors are legitimate, non-discriminatory, non-retaliatory reasons for termination. *See, e.g.*, *Hart v. New York Univ. Hosps. Ctr.*, No. 09 CIV. 5159, 2011 U.S. Dist. LEXIS 116538, at *21 (S.D.N.Y. Oct. 7, 2011), *aff'd sub nom. Hart v. New York Univ. Hosp. Ctr.*, 510 F. App'x 22 (2d Cir. 2013) ("insubordination . . . is a legitimate non-discriminatory reason for [employer]'s decision to terminate Plaintiff's employment"); *Pierre v. Air Serv Sec.*, No. 14-CV-5915 (MKB) (ST), 2016 U.S. Dist. LEXIS

34

128891, at *20 (E.D.N.Y. Sept. 21, 2016) ("Plaintiff's insubordinate behavior and refusal to comply with the orders of his superiors were legitimate, nondiscriminatory reasons for discharging and terminating Plaintiff's employment.").

Excellus BCBS's decision to terminate Plaintiff's position was solely based on Plaintiff's failure to follow the express directive given by Mr. Vitagliano on June 14, 2022. Nichols Depo., p. 160; DeFonde Depo., pp. 38-43. Despite the directive that all mid-term rate increases needed Mr. Vitagliano's prior authorization, Plaintiff reopened the River Hospital contract without his approval. Nichols Depo., pp. 160, 163-164, 192-193; Vitagliano Depo., pp. 34-37; *see* Rodriguez Depo. Day 1, p. 86. River Hospital accepted the amendment, thereby committing Excellus BCBS to pay more in 2022 for already contracted services. Nichols Depo., pp. 189-190; Nichols Dec., ¶¶33-38; Vitagliano Depo., pp. 55-56, 94-95; *see* Rodriguez Depo. Day 1, p. 92. As noted above, Plaintiff admitted that she had no discussion about the amendment with Mr. Vitagliano before extending the offer to River Hospital. Rodriguez Depo. Day 1, p. 86. This was not merely a mistake or computational error. Plaintiff's blatant disregard for Mr. Vitagliano's instruction constituted insubordination of the kind that could not be tolerated, particularly by an employee of Plaintiff's level, who had authority to create binding contracts between Excellus BCBS and healthcare providers. Nichols Dec., ¶44; *see also* Vitagliano Depo., pp. 33-35, 41.

## POINT IV

### PLAINTIFF CANNOT PREVAIL AT THE THIRD STAGE OF THE *MCDONNELL DOUGLAS* BURDEN-SHIFTING ANALYSIS

Having articulated legitimate, non-discriminatory, non-retaliatory reasons for terminating Plaintiff's employment, the burden of proof shifts from Defendant back to Plaintiff. Plaintiff can satisfy her third-stage burden under *McDonnell Douglas* by (i) "showing that the employer's stated reason was false and just a pretext, or cover, for a discriminatory intent;" or (ii) "by adducing

35

evidence that . . . the plaintiff's membership in a protected class was at least one motivating factor in the employer's adverse action." *Bart v. Golub Corp.*, 96 F.4th 566, 570, 578 (2d Cir. 2024); *see also Grella v. St. Francis Hosp.*, 149 A.D.3d 1046, 1047 (2d Dep't 2017).  "The burden of establishing pretext is a higher burden than that required to establish the *prima facie* case, and the Second Circuit has instructed that plaintiffs' 'initially vague allegation of discrimination' must be 'increasingly sharpened and focused' at this stage." *Isaac v. City of N.Y.*, 701 F. Supp. 2d 477, 488 (S.D.N.Y. Mar. 22, 2010) (quoting *Meiri*, 759 F.2d at 995).  Because Plaintiff cannot meet her ultimate burden of proof, summary judgment is appropriate.

With respect to the classic "pretext" analysis, Plaintiff must prove that (i) her insubordination and unauthorized offer of a mid-term increase to the River Hospital was not the real reason for her termination; and (ii) that her race, gender, and/or alleged protected activity are what actually motivated Defendant's decision.  *Id*.  Plaintiff cannot make this requisite showing.

Plaintiff does not dispute, and in fact, admits that she engaged in the exact conduct cited by Excellus BCBS as the basis for its termination decision.  Plaintiff specifically admitted that:

- Plaintiff's position as Contract Negotiation Director II gave her the authority to negotiate binding contracts on behalf of Excellus BCBS.  Nichols Dec., Ex. A; Rodriguez Depo. Day 1, pp. 56.

- Plaintiff was responsible for contracting with River Hospital on behalf of Excellus BCBS.  Rodriguez Depo. Day 1, p. 79; Nichols Dec., ¶32.

- The River Hospital contract was closed for 2022, effective January 1, 2022, having been rolled with an increase of 0% from the preceding year.  Rodriguez Depo. Day 1, pp. 66-67; Nichols Dec., ¶¶33-35.

- Although she could not recall what occurred, Plaintiff attended the June 14, 2022 meeting during which Mr. Vitagliano gave the directive that all mid-year increases needed his prior authorization.  Rodriguez Depo. Day 1, pp. 62-64; Vitagliano Depo., pp. 33-35; Nichols Depo., pp. 160, 164.

- On July 7, 2022, Plaintiff offered River Hospital a contract amendment which increased the reimbursement rate in 2022.  Rodriguez Depo. Day 1, pp. 69-72, 87-90; Nichols Dec., ¶¶36-37.

36

- Plaintiff did not discuss the amendment with Mr. Vitagliano before or after extending the offer on July 7, 2022.  <u>Rodriguez Depo. Day 1</u>, p. 86; <u>Vitagliano Dec.</u>, ¶5.

- River Hospital accepted the amendment.  <u>Nichols Depo.</u>, pp. 189-190; <u>Nichols Dec.</u>, ¶38; <u>Vitagliano Depo.</u>, pp. 55-56, 94-95; *see* <u>Rodriguez Depo. Day 1</u>, p. 92.

- The offered amendment increased River Hospital's reimbursement rate by 2.4%, effective September 1, 2022, instead of 0%.  <u>Rodriguez Depo. Day 1</u>, pp. 87-90; <u>Nichols Dec.</u>, ¶37.

- The offered amendment further increased River Hospital's reimbursement rate by an additional 3% effective January 1, 2023.  <u>Rodriguez Depo. Day 1</u>, pp. 87-90; <u>Nichols Dec.</u>, ¶37.

- Excellus BCBS incurred increased costs as a result of the River Hospital amendment. <u>Rodriguez Depo. Day 1</u>, p. 101; <u>Nichols Depo.</u>, pp. 196-197; <u>Vitagliano Depo.</u>, pp. 53-55, 94-95.

Having admitted that she engaged in all of the conduct that informed Defendant's legitimate, non-discriminatory, and non-retaliatory reason for terminating her employment, Plaintiff cannot demonstrate that Defendant's reasons were false.  *Carris v. First Student*, 5:13-cv-0923 (GTS/ATB), 2018 U.S. Dist. LEXIS 132432, at *35 (N.D.N.Y. Aug. 7, 2018) ("Plaintiff cannot establish that her employer's offered reason was false where she admits to the conduct that has been established as the legitimate, non-discriminatory reason for [the adverse employment action].").

It also bears noting that this is not a case of shifting explanations.  Indeed, Plaintiff testified that when she was terminated, she was told that her termination was the result of the River Hospital amendment.  <u>Rodriguez Depo. Day 1</u>, pp. 116-118; <u>Nichols Depo.</u>, pp. 230-232.  This testimony is of course consistent with the testimony on Defendants' witnesses.  *See id*.

Moreover, Plaintiff cannot demonstrate any facts to suggest that her race, gender, and/or alleged protected activity played any role in Defendant's decision to terminate her employment. While the Complaint provides little elaboration or factual support for Plaintiff's claim that she was terminated "for pretextual reasons," Plaintiff's reference to Messrs.  Brown and Gandolfo in this

same paragraph indicates that she intends to rely on comparator evidence in support of her pretext arguments. *See* Complaint, ¶ 53 (*Dkt. No. 1*). As set forth above, Plaintiff's attempt to rely on comparator evidence is fatally flawed. *See* Point I.A, *supra*. As such, Plaintiff's faulty comparator evidence fails to create an issue of fact at the pretext stage for the same reasons that it fails to support a *prima facie* claim.

Plaintiff's suggestion that Mr. Brown and Mr. Gandolfo were not disciplined for making errors with adverse financial consequences also ignores the duality of Excellus BCBS's reason for terminating her employment. As set forth above, the River Hospital amendment did result in increased costs for Defendant. However, this was not the only, or indeed the primary, reason for Plaintiff's termination. Nichols Depo., p. 197. Rather, Plaintiff was terminated because she blatantly disregarded an express directive given by Mr. Vitagliano. *Id*. This insubordination and failure to follow a clear directive is what led to her termination. *Id*. Excellus BCBS simply cannot have Contract Directors who fail to follow directives and create unauthorized contractual obligations that result in negative outcomes. Nichols Dec., ¶44.

Plaintiff also cannot demonstrate pretext given Defendant's evidence that Ryan Donahue ("Mr. Donahue"), a White male reporting up to Ms. Nichols, was terminated for misconduct similar to the misconduct that resulted in Plaintiff's termination. Nichols Depo., pp. 45-48. Like Plaintiff, Mr. Donahue extended a contract that he was not authorized to extend. *Id*., p. 45. Because he did not have authority for this action, Mr. Donahue was terminated. *Id*., pp. 45-46. Notably, Mr. Donahue was not a Contract Director, but employed in a lower level position. *Id*., p. 45-47. Despite his lesser authority, he was nevertheless terminated for his conduct – precisely as Plaintiff was. *Id*. The undisputed fact that a White male's similar misconduct resulted in the same

38

consequence as the River Hospital amendment situation involving Plaintiff further precludes any pretext argument.

"Only where an employer's business decision is so implausible as to call into question its genuineness should th[e] Court conclude that a reasonable trier of fact could find that it is pretextual." *Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 118 (2d Cir. 2010). Given the foregoing facts, including the undisputed facts of the River Hospital amendment and Plaintiff's complete inability to demonstrate that her race, gender, or protected activity played any role in her termination, there is no basis for a finding of pretext.

For the same reasons, Plaintiff is unable to demonstrate any evidence that her race, gender, or alleged protected activity played a role in the decision to terminate her employment. As noted above, the Second Circuit's decision in *Bart v. Golub Corp.* clarified that a plaintiff may alternatively satisfy their third-step burden by identifying evidence that their "membership in a protected class was at least one motivating factor in the employer's adverse action." 96 F.4th at 578. For the reasons stated in Point I, *supra*, and in Point III.A, above, Plaintiff cannot cite any evidence that suggests her race, gender, or alleged protected activity was a motivating factor in Defendant's decision to terminate her employment. To this point, it bears repeating:

- Plaintiff was recruited and hired by Ms. Nichols and Mr. Vitagliano in January 2021, and both were aware at the time that Plaintiff is an African American female. Rodriguez Depo., pp. 23-28; Nichols Dec., ¶6.

- Plaintiff was terminated a mere eighteen months later, in July 2022, by Ms. Nichols and Mr. Vitagliano, because she failed to follow a clear and unambiguous directive. Nichols Dec., ¶44.

- During her termination meeting, this was the explanation given to Plaintiff for her termination. Rodriguez Depo. Day 1, pp. 116-118.

39

- Plaintiff's attempt to demonstrate a pattern of discrimination against other Excellus BCBS employees is based on inadmissible hearsay and pure speculation. *See* Point I(ii), *supra*.

- Plaintiff's attempt to rely on comparator data falls flat as neither Mr. Kane nor Mr. Gandolfo engaged in comparable conduct. *See* Point I(iii), *supra*.

Plaintiff's inability to connect her termination to her race, gender, or alleged protected activity in any way is fatal to her claims at both the first and third stages of the *McDonnell Douglas* analysis.

## CONCLUSION

Based upon the foregoing, Excellus BCBS respectfully requests that its motion for summary judgment be granted, and Plaintiff's Complaint be dismissed in its entirety, with prejudice.

Dated:  December 31, 2025

BOND, SCHOENECK & KING, PLLC

By: _____

Hannah K. Redmond, Esq. (702036)
Adam P. Mastroleo, Esq. (514408)
Office and Post Office Address
One Lincoln Center
Syracuse, New York  13202-1355
Telephone:  (315) 218-8000
Facsimile:  (315) 218-8100
Email:     amastroleo@bsk.com
           hredmond@bsk.com

*Attorneys for Defendant Excellus BlueCross BlueShield*

40