UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

SHERI RODRIGUEZ,

               Plaintiff,

      v.

EXCELLUS BLUECROSS BLUESHIELD, INC.,

               Defendant.

**RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Civil Action No. 5:22-cv-1050 (GTS/CFH)

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The Washington Law Firm, PLLC
*Attorneys for Plaintiff*
1050 Connecticut Avenue, Suite 500
Washington, D.C. 20036
Telephone: 202-770-3440
Fax: 202-991-2992

Of Counsel:

    Melissa E. Washington, Esq.
    Desireé H. Langley, Esq.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT..........................................................................................1

STATEMENT OF FACTS .............................................................................................3

A.  Plaintiff's Employment at Excellus ......................................................... 3

B.  The Dismantling of Plaintiff's Authority and Reports of Racial Hostility ............................. 3

C.  Excellus Conducted a Sham Investigation into Discrimination Complaints. .......................... 4

D.  Excellus Pretextually Terminated Ms. Rodriguez's Employment......................................... 4

SUMMARY JUDGMENT STANDARD ......................................................................5

ARGUMENT................................................................................................................6

THE RECORD ESTABLISHES MS. RODRIGUEZ'S DISCRIMINATION CLAIMS. .............6

A.  Ms. Rodriguez Has Demonstrated That Excellus Terminated Her Employment Because of Race and/or Gender. ................................................................... 8

    i.   The "Same Actor" Inference Does Not Apply Where Subsequent Hostility and Evidence of Pretext Intervene. ............................................ 9

    ii.  Excellus' Comparator Argument Fails Because It Ignores Record Evidence and Misstates the Law. ...................................................................... 11

B.   Ms. Rodriguez's Remaining Evidence Further Supports an Inference of Discrimination. .. 14

    i.   Workload Disparities Support Discriminatory Treatment. ................................. 14

    ii.  Denial of Access to Contracting Data Undermined Plaintiff's Ability to Perform Her Contracting Duties. ...................................................... 15

    iii. Mr. Vitagliano's Statement to a Provider Supports Differential Scrutiny. ....................... 16

THE RECORD ESTABLISHES MS. RODRIGUEZ'S RETALIATION CLAIMS................... 16

A.  Ms. Rodriguez Engaged in Protected Activity, and the Record Supports a Triable Retaliation Claim. .................................................................... 17

B.  The "Intervening Event" Argument Fails Where Pretext is Shown. .................................... 19

i

THE RECORD ESTABLISHES PRETEXT................................................................................ **20**

CONCLUSION .............................................................................................................. **22**

## TABLE OF AUTHORITIES

**Cases**

*Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456 (2d Cir. 2001) ............................................. 14

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ............................................................. 8

*Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107 (2d Cir. 2004) ....................... 18

*Brown v. Henderson*, 257 F.3d 246 (2d Cir. 2001)................................................................ 9

*Carlton v. Mystic Transp. Inc.*, 202 F.3d 129 (2d Cir. 2000) ....................................... 10, 12, 14, 23

*Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29 (2d Cir. 1994) .................................. 10, 14, 17

*Choate v. Transp. Logistics Corp.*, 234 F. Supp. 2d 125 (E.D.N.Y. 2002)................................ 13

*Collins v. Conn. Job Corps*, 684 F. Supp. 2d 232 (D. Conn. 2010) ....................................... 12

*Ehrbar v. Forest Hills Hosp.*, 131 F. Supp. 3d 5 (E.D.N.Y. 2015) ....................................... 12

*Empire Elecs. Co. v. United States*, 311 F.2d 175 (2d Cir. 1962) ...................................... 9

*Feingold v. New York*, 366 F.3d 138 (2d Cir. 2004)................................................... 13, 18

*Fields v. New York State Off. of Mental Retardation & Developmental Disabilities*, 115 F.3d 116 (2d Cir. 1997)........................................................................................... 10

*Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276 (2d Cir. 1998) ....................... 21

*Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14 (2d Cir. 1995) ........................ 9

*Golston-Green v. City of New York*, 123 N.Y.S.3d 656 (N.Y. App. Div. 2020). ...................... 20

*Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93 (2d Cir. 2010) ...................................... 21

*Graham v. Long Island R.R.*, 230 F.3d 34 (2d Cir. 2000) ...................................... 9, 15, 16

*Hagan v. City of New York*, 39 F. Supp. 3d 481 (S.D.N.Y. 2014) ..................................... 13

*Holcomb v. Iona College*, 521 F.3d 130 (2d Cir. 2008) .............................................. 10

*Howley v. Town of Stratford*, 217 F.3d 141 (2d Cir. 2000) .......................................... 17

*Kelly v. Howard I. Shapiro & Assocs.*, 716 F.3d 10 (2d Cir. 2013) ................................... 20

*Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92 (2d Cir. 2000)................................. 9

*Littlejohn v. City of New York*, 795 F.3d 297 (2d Cir. 2015)................................... 19, 20

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ............................................................ 10

*McGuinness v. Lincoln Hall*, 263 F.3d 49 (2d Cir. 2001) ............................................................ 15

*McPherson v. New York City Dept. of Educ.*, 457 F.3d 211 (2d Cir. 2006) ................................. 23

*Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534 (2d Cir. 1992) ........................................... 16

*Ramos v. Marriott Int'l, Inc.*, 134 F. Supp. 2d 328 (S.D.N.Y. 2001) ........................................... 12

*Raniola v. Bratton*, 243 F.3d 610 (2d Cir. 2001) ....................................................................... 21

*Raskin v. Wyatt Co.*, 125 F.3d 55 (2d Cir. 1997) ........................................................................ 16

*Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133 (2000) ................................................. passim

*Ruiz v. Cnty. of Rockland*, 609 F.3d 486 (2d Cir. 2010) .............................................................. 15

*Summa v. Hofstra Univ.*, 708 F.3d 115 (2d Cir. 2013) ........................................................... 19, 20

*Terry v. Ashcroft*, 336 F.3d 128 (2d Cir. 2003) .......................................................................... 18

*Thomas v. iStar Fin., Inc.*, 438 F. Supp. 2d 348 (S.D.N.Y. 2006) ......................................... 12, 13

*Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70 (2d Cir. 2016) ........................................................... 17

*Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112 (2d Cir. 2006) ...................................... 9

*Windham v. Time Warner, Inc.*, 275 F.3d 179 (2d Cir. 2001) ...................................................... 10

*Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834 (2d Cir. 2013) ............................... 19, 22, 23, 24

*Zimmerman v. Associates First Capital Corp.*, 251 F.3d 376 (2d Cir. 2001) .............................. 10

**Statutes**

N.Y. Exec. Law § 300 ............................................................................................................. 16, 20

**Rules**

Fed. R. Civ. P. 56(c)(2) ................................................................................................................ 16

Fed. R. Evid. 801(d)(2)(D) ........................................................................................................... 16

iv

Pursuant to the Federal Rules of Civil Procedure, Plaintiff Sheri Rodriguez ("Ms. Rodriguez" or "Plaintiff"), respectfully submits this Memorandum of Law in Opposition to Defendant Excellus Health Plan, Inc.'s ("Excellus" or "Defendant") Motion for Summary Judgment.

## PRELIMINARY STATEMENT

This case comes before the Court on Defendant's Motion for Summary Judgment, which asks the Court to accept a manufactured justification for termination and to disregard substantial evidence of discrimination and retaliation. The record does not permit that result. When viewed in the light most favorable to Plaintiff, the evidence shows that Excellus terminated the employment of a high-performing Black woman not for any legitimate business reason, but shortly after she complained of racial hostility and disparate treatment. When the evidence is viewed as it must be –drawing all reasonable inferences in Plaintiff's favor—a reasonable jury could readily conclude that Ms. Rodriguez was fired because she complained about racial hostility and disparate treatment.

Ms. Rodriguez served as a high-performing Contract Negotiation Director II ("Contract Director") from January 2021 through July 19, 2022, managing two of the Company's most complex geographic territories. She consistently met expectations, maintained a "Performing" rating, and received performance bonuses throughout her tenure. Despite this objective record of success, Excellus summarily fired Ms. Rodriguez—its only Black Director, just weeks after she reported racial hostility and disparate treatment.

Defendant now moves for summary judgment by asserting a false narrative: that Ms. Rodriguez caused "significant financial harm" by violating a verbal directive regarding the River Hospital contract. Discovery has exposed this explanation as unsupported and pretextual. Under oath, Defendant's own witnesses admitted that the alleged $100,000 "loss" was an unverified

1

"approximation" pulled out of thin air because the Company cannot produce a single document quantifying even one dollar of actual loss resulting from Ms. Rodriguez's conduct.

The record further reveals a glaring double standard that proves pretext. While Excellus fired Ms. Rodriguez for a non-existent $100,000 fabricated loss, it protected and promoted White male leaders who committed far more serious and verifiable financial errors. Senior Vice President Antonio Vitagliano ("Mr. Vitagliano") admitted that a White male manager failed to report a staggering $40 million financial liability, yet he was placed on a Performance Improvement Plan ("PIP") and allowed to remain employed. Likewise, Vice President Paul Gandolfo ("Mr. Gandolfo") mistakenly cost the Company $500,000 through an unverified credit and retained his role. Excellus afforded Ms. Rodriguez no such leniency.

Ms. Rodriguez has therefore established a compelling *prima facie* case of race and gender discrimination and retaliation. She maintained a "Performing" rating and received performance bonuses right up until she complained about Christie Brown ("Ms. Brown"), the manager who surveilled her work daily, displayed a Confederate flag on social media, and targeted her because of her race. Rather than investigating Ms. Rodriguez's concerns, Human Resources personnel at Excellus conducted a perfunctory review that failed to interview a single key witness and then summarily fired Ms. Rodriguez.

Because Excellus' stated reasons for termination are contradicted by sworn testimony, documentary gaps, and comparator evidence, genuine issues of material fact exist for trial. Despite this, Defendant asks this Court to resolve disputed facts, credit its witnesses over Plaintiff's, and remove from the jury issues that the law squarely reserves for trial—relief that summary judgment does not permit. Consequently, the Court should deny Defendant's motion for summary judgment in its entirety.

2

## STATEMENT OF FACTS

### A. Plaintiff's Employment at Excellus

Ms. Rodriguez, an African American female, joined Excellus BCBS in January 2021 as a Contract Negotiation Director II. SOF ¶ 1. Ms. Rodriguez brought over a decade of specialized expertise to the role and successfully managed two of the company's largest and most complex geographic territories—Central New York and the Southern Tier—a workload that exceeded that of her White male counterparts. SOF ¶ 4, 7. Jennifer Nichols ("Ms. Nichols"), the Vice President who recruited her, directly supervised Ms. Rodriguez throughout her employment with Excellus. SOF ¶ 3, 6. Ms. Nichols rated Ms. Rodriguez as "Performing" (a satisfactory performance rating) in her 2021 annual evaluation, confirming that Ms. Rodriguez executed all job duties competently and met all company expectations. SOF ¶ 18. Ms. Rodriguez further validated her objective performance by earning a merit-based bonus during her brief tenure. SOF ¶ 17.

### B. The Dismantling of Plaintiff's Authority and Reports of Racial Hostility

Within weeks of Ms. Rodriguez beginning her employment, Christie Brown ("Ms. Brown"), a White female manager also on Ms. Nichols' team, initiated a pattern of hostile and undermining conduct toward Ms. Rodriguez, including verbal hostility directed at her before subordinates, instructing staff to "disregard" Ms. Rodriguez's directives, and monitoring her activities without authorization. SOF ¶ 27-32. Sabrina Robinson ("Ms. Robinson") (White), one of Ms. Rodriguez's direct reports, personally observed one of Ms. Brown's social media profile updates involving a photograph of herself wearing a Confederate flag t-shirt—conduct Ms. Robinson understood and testified reflected interpreted as a "white power move," confirming Ms. Brown's conduct toward Ms. Rodriguez was racially motivated. SOF ¶ 31 (Ms. Robinson testified that this imagery "connected the dots" that the hostility toward Ms. Rodriguez was a "racial thing.").

3

### C. Excellus Conducted a Sham Investigation into Discrimination Complaints.

In February 2022 and again in June 2022, Ms. Rodriguez explicitly complained to Jennifer Nichols that she felt "targeted" and "singled out" by Ms. Brown, compared to her White male counterparts. SOF ¶ 23. Corroborating this, Ms. Robinson reported to Ms. Nichols who then reported it to Human Resources that Ms. Brown's aggression toward Ms. Rodriguez carried racial undertones. SOF ¶ 34. Despite these serious allegations, Human Resources conducted a perfunctory investigation that failed to include a single interview with either the complainant (Ms. Rodriguez) or the accused (Ms. Brown), or any other employees who may have made relevant observations. SOF ¶ 42. Instead, Jaime DeFonde and Monique Wallenhorst in Human Resources convened a series of so-called mediation meetings in which Ms. Rodriguez was improperly cast as the source of workplace "tension," effectively reframing her protected complaints of racial hostility as interpersonal conflict and absolving Ms. Brown of scrutiny. SOF ¶ 43.

### D. Excellus Pretextually Terminated Ms. Rodriguez's Employment.

On July 19, 2022, Excellus summarily terminated Ms. Rodriguez's employment, claiming she violated a verbal directive regarding the River Hospital contract that supposedly cost the company $100,000. SOF ¶ 60, 69. Under oath, however, Defendant's own witnesses admitted the $100,000 figure was a complete fabrication based on an unverified "approximation." SOF ¶ 67. Mr. Vitagliano admitted that he could not identify any document in the Company's possession that quantified an actual loss of $100,000 resulting from the River Hospital contract. SOF ¶ 70.

The record further reveals a stark double standard. Ms. Rodriguez's skip level manager, Tony Vitagliano ("Mr. Vitagliano"), admitted that Excellus issued only a Performance Improvement Plan (PIP) to a White male manager who failed to report a catastrophic $40 million financial liability—an error four hundred times larger than the speculative loss used to justify terminating Ms. Rodriguez's employment. SOF ¶ 75. Leadership similarly protected White male

4

executives like Paul Gandolfo, who cost the company $500,000, and Kurt Brown, who made errors worth millions, while terminating the employment of its only Black Director for a non-existent $100,000 "theoretical" impact.

These facts create genuine disputes as to credibility, motive, and pretext—issues that are squarely within the province of the jury and foreclose summary judgment as a matter of law.

## SUMMARY JUDGMENT STANDARD

Summary judgment is a "drastic device" that mirrors a directed verdict and is therefore appropriate only where no reasonable jury could find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Because both procedures strip the jury of its fundamental role as the arbiter of facts, courts must exercise particular caution before granting summary judgment—especially where intent, motive, and credibility are central to the claims.

Under Federal Rule of Civil Procedure 56, the court may grant summary judgment only if the moving party establishes that "no genuine issue of material fact exists." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). An issue of fact is "material" if it "might affect the outcome of the suit under the governing law." *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 97 (2d Cir. 2000). A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006).

Critically, in deciding a motion for summary judgment, the court may not weigh evidence, assess credibility, or resolve competing inferences. It may determine only whether there are issues of fact to be tried. *Empire Elecs. Co. v. United States*, 311 F.2d 175, 179 (2d Cir. 1962).

For this reason, the Second Circuit has repeatedly cautioned that summary judgment should be granted "sparingly" in employment discrimination cases. *Brown v. Henderson*, 257 F.3d 246, 251 (2d Cir. 2001). Such cases often turn on an employer's underlying motivations and state of

5

mind, shifting explanations, and comparative treatment—subjects on which juries possess "special advantages over judges" in evaluating the evidence. *Id.* Furthermore, "careful scrutiny of the factual allegations may reveal circumstantial evidence to support the required inference of discrimination," even in the absence of direct proof. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

In this case, the record reveals significant disputed facts regarding the credibility of Defendant's stated reasons for termination, the existence of racial animus, and the disparate treatment of White male executives who engaged in provable significant infractions, but who Excellus did not similarly fire. Because a reasonable jury could find that Excellus' proffered justifications were a mere pretext for discrimination and retaliation, summary judgment is improper.

**ARGUMENT**

**The Record Establishes Ms. Rodriguez's Discrimination Claims.**

Claims of race discrimination under Section 1981 and the New York State Human Rights Law follow the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). At the summary judgment stage, however, the Court's role is not to weigh credibility or resolve factual disputes, but to determine whether the evidentiary record— viewed in the light most favorable to Ms. Rodriguez—would permit a reasonable jury to find that discriminatory animus played a role in the challenged employment decision. *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29 (2d Cir. 1994).

A plaintiff's burden at the prima facie stage is minimal. Ms. Rodriguez need only show that she belongs to a protected class, was qualified for her position, suffered an adverse employment action, and that the action occurred under circumstances permitting an inference of discrimination. *See Holcomb v. Iona College*, 521 F.3d 130, 138 (2d Cir. 2008). The inference

6

requirement is de minimis and may be satisfied through circumstantial evidence, including disparate discipline, shifting explanations, procedural irregularities, more favorable treatment of similarly situated employees outside the protected class, or evidence that the employer's stated reason is unworthy of credence. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 147 (2000); *Zimmerman v. Associates First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001); *Carlton v. Mystic Transp. Inc.*, 202 F.3d 129 (2d Cir. 2000).

Here, Ms. Rodriguez easily satisfies her prima facie burden. She was a Black Contract Director, objectively qualified, and Excellus terminated her employment. The surrounding circumstances include: (1) racially charged workplace complaints immediately preceding her termination, (2) the Company's failure to investigate those complaints, (3) the sudden emergence of "performance issues" only after protected activity, (4) reliance on an unwritten and inconsistently applied directive, (5) an unsubstantiated and later-discredited financial estimate; and (6) materially more favorable treatment of White male employees who committed actual and significantly larger financial or contractual errors. This constellation of evidence more than satisfies Ms. Rodriguez's prima facie showing.

Once that showing is made, the burden shifts to the employer to articulate a legitimate non-discriminatory reason for the termination. *McDonnell Douglas Corp.*, 411 U.S. at 802-03. Excellus purports to meet that burden by asserting that Ms. Rodriguez violated a verbal directive and caused a $100,000 financial loss. But that articulation does not end the inquiry.

The burden, therefore, shifts back to Ms. Rodriguez to demonstrate that Excellus' proffered justification is pretextual. *McDonnell Douglas Corp.*, 411 U.S. at 803-04. At this stage, Ms. Rodriguez need not prove discrimination conclusively; she must show only that the employer's explanation is not the true reason and that discrimination was at least a motivating factor. *Fields*

7

*v. New York State Off. of Mental Retardation & Developmental Disabilities*, 115 F.3d 116, 121 (2d Cir. 1997). A jury may infer discrimination where the employer's justification is factually disputed, unsupported, exaggerated, selectively enforced, or applied differently to employees outside the protected class. *Windham v. Time Warner, Inc.*, 275 F.3d 179, 188 (2d Cir. 2001).

That is precisely the record before the Court. Excellus' asserted justification rests on an unverified financial estimate, an unwritten directive, and explanations that emerged only after Ms. Rodriguez engaged in protected activity—while White male leaders who committed far more substantial financial or contractual errors were retained and protected. Viewed as a whole, the evidence would permit a reasonable jury to conclude that Excellus' stated reason was a pretext for discrimination and retaliation.

Because this case turns on credibility, motive, and competing inferences—matters uniquely within the province of a jury—summary judgment is improper.

### A. Ms. Rodriguez Has Demonstrated That Excellus Terminated Her Employment Because of Race and/or Gender.

The record contains multiple independent bases from which a reasonable jury could conclude that Ms. Rodriguez's termination was motivated by race or gender. Excellus attempts to evade that conclusion by invoking two familiar defense themes: the "same actor" inference and the alleged absence of a "perfect comparator." Neither argument withstands scrutiny. The same-actor concept is, at most, a permissive inference that weakens where circumstances change and cannot override evidence of pretext. Nor does the law require Ms. Rodriguez to identify an employee who engaged in identical conduct under identical circumstances. Discrimination may be established through the totality of the evidence, including disparate discipline, shifting or inconsistent explanations, and proof that Excellus' stated reason is unworthy of belief. Each of those categories of evidence is present here.

8

i.   The "Same Actor" Inference Does Not Apply Where Subsequent Hostility and Evidence of Pretext Intervene.

Excellus argues that the "same actor" inference virtually precludes Ms. Rodriguez's claims because Ms. Nichols and Mr. Vitagliano were involved in both her hiring and firing. *See* Def.'s Mem. at 24. That contention misstates the law and ignores record evidence that (i) circumstances changed materially after hiring, (ii) Ms. Rodriguez engaged in protected opposition and raised race-linked concerns following her hire, and (iii) Excellus' asserted rationale for discharge is contested and supported by evidence of pretext.

The same actor concept is, at most, a permissive inference, and it cannot be applied mechanically at summary judgment. In this Circuit the "same actor" concept arises from the commonsense observation that "it is difficult to impute to [a decisionmaker] an invidious motivation that would be inconsistent with the decision to hire." *Carlton*, 202 F.3d at 137 (quoting *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 560 (2d Cir. 1997)). But the inference is merely permissive, does not mandate dismissal, and courts routinely decline to apply it dispositively––particularly where the record reflects intervening events, shifting justifications or evidence of pretext. *See, e.g., Collins v. Conn. Job Corps*, 684 F. Supp. 2d 232, 251 (D. Conn. 2010) (collecting cases; describing the inference as permissive and declining to apply it dispositively at summary judgment); *Ehrbar v. Forest Hills Hosp.*, 131 F. Supp. 3d 5, 24-25 (E.D.N.Y. 2015) (courts must examine the totality of circumstances and should not apply the doctrine mechanically).

Moreover, where more than one manager played roles in the hiring and termination, courts may consider whether a management-level employee "played a substantial role" in both decisions—an evidentiary consideration, not a rule requiring dismissal. *Ramos v. Marriott Int'l, Inc.*, 134 F. Supp. 2d 328, 345-346 (S.D.N.Y. 2001); *see Thomas v. iStar Fin., Inc.*, 438 F. Supp.

9

2d 348, 361 (S.D.N.Y. 2006). This Circuit has not treated the inference as dispositive in Title VII cases and district courts in this Circuit consistently recognize its limited weight.

Critically, the inference weakens as time passes and where circumstances materially change after hiring. It carries the most weight when hiring and firing occur close in time; as time elapses, the inference weakens because "circumstances could have changed over the course of time" and animus may develop after hiring. *Thomas*, 438 F. Supp. 2d at 361. District courts in this Circuit likewise recognize that the inference has greatest force when the interval is short and becomes less compelling as the period grows. *Choate v. Transp. Logistics Corp.*, 234 F. Supp. 2d 125, 130 (E.D.N.Y. 2002).

Separately, the Second Circuit has emphasized that "changed circumstances" during employment can undermine the inference—particularly where the employee complains about discrimination, thereby becoming "not merely" a member of the protected class, but a member who "would not tolerate a discriminatory office culture." *Feingold v. New York*, 366 F.3d 138, 155 (2d Cir. 2004). Courts applying Feingold recognize that protected opposition can alter the employment dynamic and defeat any simplistic "same actor" narrative. *See Hagan v. City of New York*, 39 F. Supp. 3d 481, 498 (S.D.N.Y. 2014) (same-actor inference may be rebutted where circumstances change after the employee refuses to tolerate discriminatory treatment).

Here, the record reflects precisely the type of changed circumstances that undermine any same-actor gloss. Ms. Rodriguez testified that she approached Ms. Nichols with heightened caution specifically because she was a "leader of color," the only Black person on the team, and feared being perceived as problematic for raising concerns—race-linked dynamics that did not exist at hiring in the same way. Rodriguez Tr. Day 1 p. 176. A reasonable jury could find that Ms. Rodriguez's protected opposition and race-linked complaints materially altered the employment

10

relationship, making it entirely plausible that decisionmakers who previously supported her hiring later reacted with hostility, skepticism, or retaliatory impulse. *Feingold*, 366 F.3d at 155.

That conclusion is reinforced by the presence of independent evidence of pretext. Even where the same actor concept is considered, it cannot carry summary judgment where the record supports a finding that the employer's proffered rationale is inconsistent, unsupported, or unworthy of belief. *See Carlton*, 202 F.3d at 137–38. Courts consistently hold that where a plaintiff adduces evidence from which a jury could find the asserted reason is pretextual, the case must proceed to trial notwithstanding any same-actor argument. *See, e.g., Reeves*, 530 U.S. at 147–49, 150–51 (pretext evidence can support an inference of discrimination; credibility determinations and competing inferences are for the jury).

Accordingly, Defendant's attempt to short-circuit the case through the invocation of a "same actor" label fails. The doctrine is neither mandatory nor dispositive; it weakens with changed circumstances and time; and it cannot overcome evidence from which a jury could find Defendant's justification pretextual. Where, as here, the record supports competing inferences as to motive and credibility, summary judgment is improper.

    ii.    Excellus' Comparator Argument Fails Because It Ignores Record Evidence and Misstates the Law.

Excellus argues that Ms. Rodriguez cannot establish a "perfect comparator" and therefore cannot raise an inference of discrimination. Def's Mem. at 26-27. That contention rests on a misstatement of Second Circuit law and a selective reading of the record.

The Second Circuit has repeatedly held that discrimination may be shown through the totality of circumstantial evidence, including evidence of disparate discipline, inconsistent explanations, or pretext—not solely through comparator evidence. *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001); *Chambers*, 43 F.3d at 37. Disparate treatment is

11

"only one way" to satisfy a plaintiff's burden and is not required in every case. *Abdu-Brisson*, 239 F.3d at 468. A rule demanding a near-identical comparator would improperly insulate employers from liability where discrimination manifests through selective enforcement or pretextual discipline. *Id.*

Even where comparator evidence is considered, the governing standard is flexible. The comparator standard requires similarity in material respects not identical misconduct. *Graham*, 230 F.3d at 39–40. Employees are similarly situated if they are subject to the same standards and engaged in conduct of "comparable seriousness," not the same alleged violation. *Id.*; *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 493-94 (2d Cir. 2010). Courts repeatedly caution that the inquiry focuses on whether a jury could reasonably view the conduct as comparable, a determination that is ordinarily reserved for the jury. *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001).

Excellus nevertheless attempts to collapse this flexible standard into a requirement that Plaintiff identify an employee who committed the *exact same alleged violation* under *identical circumstances*. That is not the law. And the record reflects comparator evidence that Excellus ignores.

Excellus limits its discussion to Kurt Brown and Paul Gandolfo, while omitting other evidence in the record demonstrating differential discipline for significant contractual or financial errors. For example:

- Al Bradley, a White Contract Director in the same contracting function as Ms. Rodriguez, committed contractual errors involving financial representations, yet received a performance correction plan rather than termination. SOF ¶ 76.

12

- An unidentified White male manager, whom Mr. Vitagliano admitted failed to report a $40 million liability, but was placed on a performance improvement plan rather than terminated. SOF ¶ 75.

These individuals were employed in decision-making or contracting roles where financial accuracy was critical. A jury could reasonably find their conduct at least as serious as the River Hospital issue—particularly where Excellus cannot document any verified $100,000 loss attributable to Ms. Rodriguez.

Excellus cannot defeat comparator evidence simply by labeling one employee's conduct "insubordination" while treating other substantial financial errors as "coachable." Whether the conduct is of "comparable seriousness" is a factual question for the jury. *Graham*, 230 F.3d at 40. Nor does Excellus' hearsay argument bar consideration of this evidence. At summary judgment, evidence need only be capable of being presented in admissible form. Fed. R. Civ. P. 56(c)(2); *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997). Statements attributed to Ms. Nichols, Mr. Vitagliano, or other managers regarding disciplinary decisions are admissions of a party opponent under Fed. R. Evid. 801(d)(2)(D). *Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 537–38 (2d Cir. 1992).

Comparator evidence is relevant not only to the prima facie case but also to pretext. Where an employer claims immediate termination was mandatory for Plaintiff's conduct yet exercised discretion and progressive discipline for White employees who committed significant financial errors, a jury may infer the stated reason was not the true reason for termination. *Reeves*, 530 U.S. at 147–49; *Carlton*, 202 F.3d at 137–38.

Finally, Ms. Rodriguez's NYSHRL claim is subject to a broader standard. The NYSHRL claim must be construed liberally in favor of discrimination, and the 2019 amendments expressly

13

reject narrow federal interpretations, requiring courts to consider the full context of discriminatory treatment even where comparator evidence is imperfect. N.Y. Exec. Law § 300.

Ultimately, Excellus' comparator argument rests on an incorrect legal standard and an incomplete view of the record. Under controlling Second Circuit precedent, the totality of evidence—including disparate discipline, inconsistent application of rules, and evidence of pretext—is sufficient for a jury to determine whether discrimination motivated Ms. Rodriguez's termination. Summary judgment is therefore inappropriate.

### B. Ms. Rodriguez's Remaining Evidence Further Supports an Inference of Discrimination.

Excellus attempts to fragment the record and dismiss each piece of evidence as trivial. That is not the summary judgment standard. Courts must consider the totality of the circumstances, not parse each fact in isolation. *Chambers*, 43 F.3d at 37; *Howley v. Town of Stratford*, 217 F.3d 141, 151 (2d Cir. 2000). Evidence that might appear minor in isolation may collectively support an inference of discriminatory treatment. *Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 76 (2d Cir. 2016).

When viewed holistically, the evidence Excellus seeks to discount converges on a single, consistent theme: Ms. Rodriguez, the only Black Director, was subjected to materially different expectations, diminished support, and heightened scrutiny in the structure and execution of her role.

### i.    Workload Disparities Support Discriminatory Treatment.

Excellus concedes that Ms. Rodriguez was the only Director responsible for two regions. SOF ¶ 7. Ms. Nichols acknowledged that Ms. Rodriguez carried a "very large scope of responsibility" because she managed two regions while the other Directors managed one. *Id.* Defendant's attempt to neutralize this fact by pointing to one of the other regions, Rochester's, size presents a classic factual dispute. Workload in contracting is not determined solely by

geography alone; it turns on provider leverage, hospital financial condition, market dynamics, and negotiation complexity. SOF ¶ 15. Ms. Rodriguez testified that managing two distinct markets increased her administrative burden, stakeholder coordination, and strategic complexity. Rodriguez Tr. Day 1, p. 131. Nor does the presence of a Senior Manager eliminate the disparity. Ms. Rodriguez remained the Director with ultimate responsibility for Southern Tier negotiations while also supervising Central New York. SOF ¶ 7. Supervisory responsibility increases managerial workload; it does not reduce it. Courts recognize that unequal distribution of responsibilities may constitute adverse action where it materially alters working conditions. *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003). A reasonable jury could conclude that assigning the only Black female Director the broadest portfolio while White male Directors each managed one region reflects disparate treatment.

ii.    Denial of Access to Contracting Data Undermined Plaintiff's Ability to Perform Her Contracting Duties.

Ms. Rodriguez testified that Christie Brown was more willing to share analytics and modeling information with Mr. Kane than with her. SOF ¶ 39. Denying that support while providing it to a White Director directly impaired her ability to perform her core duties. Excellus argues that these events are not independently "adverse employment actions." But circumstantial evidence need not satisfy that element in isolation to be probative of discriminatory motive. Walsh, 828 F.3d at 76. Background evidence of unequal workload, withheld support, undermining commentary, and differential treatment provides essential context for assessing whether the River Hospital discipline was motivated by legitimate concerns or discriminatory animus. Whether Ms. Brown selectively withheld information and whether this treatment differed by race presents a factual dispute inappropriate for summary judgment. *Feingold*, 366 at 152 (2d Cir. 2004) (differential treatment in work support contributes to inference of discrimination).

15

iii.    Mr. Vitagliano's Statement to a Provider Supports Differential Scrutiny.

Ms. Rodriguez testified that a provider representative relayed Mr. Vitagliano's comment that she "always leans on legal." SOF ¶ 48. Even when couched as performance commentary, remarks that undermine a professional's credibility with external partners can materially affect job standing and support an inference of discriminatory motive. *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 119 (2d Cir. 2004) (*citing Price Waterhouse v. Hopkins*, 490 U.S. 228, 251 (1989).

Defendant's contention that the comment was "true" misses the point. Discriminatory treatment may take the form of disproportionate criticism or undermining conduct, not merely false statements. The credibility, context, and effect of the remark are classic jury questions that cannot be resolved on summary judgment

Excellus argues that these events are not "adverse employment actions" standing alone. That framing misstates the inquiry. Circumstantial evidence need not independently satisfy each element of a claim to be probative of discriminatory motive. *Walsh*, 828 F.3d at 76. Background evidence of unequal workload, withheld support, undermining commentary, and differential hiring context all directly inform whether the River Hospital discipline was motivated by legitimate reasons or discriminatory animus. Viewed collectively, the evidence shows:

1.  The only Black Director was assigned to the broadest portfolio;

2.  She received materially less cooperation and support from a White manager; and

3.  Senior leadership affirmatively undermined her professional credibility.

A reasonable jury could find that this pattern supports an inference of discriminatory treatment, precluding summary judgement.

**The Record Establishes Ms. Rodriguez's Retaliation Claims.**

To establish a prima facie case of retaliation under Section 1981 and the NYSHRL, a

16

plaintiff's burden is minimal. She must show only that (1) she engaged in protected activity, (2) the employer was aware of that activity, (3) she suffered an adverse employment action, and (4) a causal connection exists between the protected activity and the adverse action. *Littlejohn v. City of New York*, 795 F.3d 297, 315–16 (2d Cir. 2015); *Summa v. Hofstra Univ.*, 708 F.3d 115, 125–26 (2d Cir. 2013). At this stage, a plaintiff need not prove retaliation was the sole reason for the employer's action, nor must she establish the ultimate merits of her claim. Rather, she must produce evidence from which a reasonable jury could infer retaliatory motive, and that inference may arise from temporal proximity, changes in treatment after complaints, inconsistent explanations, or evidence that the employer's stated reason is unworthy of credence. *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845–46 (2d Cir. 2013); *Reeves*, 530 U.S. at 147 . Courts must view the record as a whole and may not weigh credibility or resolve competing inferences at summary judgment.

Moreover, Plaintiff's retaliation claim under the NYSHRL must be construed independently and liberally. Following the 2019 amendments, the NYSHRL requires courts to construe the statute "liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws… have been so construed." N.Y. Exec. Law § 300. As a result, the standard for showing retaliatory conduct is broader than under pre-amendment federal law, and courts must consider the full context of an employer's response to discrimination complaints rather than applying unduly rigid or technical limitations. *See Golston-Green v. City of New York*, 123 N.Y.S.3d 656, 664 (N.Y. App. Div. 2020).

### A. <u>Ms. Rodriguez Engaged in Protected Activity, and the Record Supports a Triable Retaliation Claim.</u>

Excellus' assertion that Plaintiff "never complained about discrimination" relies on an artificially narrow reading of the record and a legal standard that the Second Circuit has repeatedly

17

rejected. Protected activity does not require the use of legal terminology, formal complaints, or the explicit invocation of the words "race" or "discrimination." It requires only that the employee communicate opposition to conduct she reasonably believes reflects unlawful bias. *Littlejohn*, 795 F.3d at 317–18; *Summa*, 708 F.3d at 126. The record reflects precisely that.

An employee engages in protected activity when she opposes workplace conduct that she reasonably perceives to be discriminatory, even if she does not use legal terms. *Kelly v. Howard I. Shapiro & Assocs.*, 716 F.3d 10, 14 (2d Cir. 2013). Complaints are protected if they "could reasonably have understood that [] prohibited discrimination was the subject of her protest." *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 287 (2d Cir. 1998). Here, the record shows that Ms. Rodriguez:

1. Was the only Black Contract Director in the department.

2. Reported that Christie Brown treated her differently than the other Directors, all of whom were White men. SOF ¶ 38, 40.

3. Explained she was hesitant to complain because she was a leader of color and the only Black Director, heightening the risk of retaliation or isolation. Rodriguez Tr. Day 1 p. 176.

Courts routinely hold that complaints of being treated less favorably than non-protected coworkers suffice, even absent the word "discrimination." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010). A jury could easily conclude Plaintiff was opposing race-linked differential treatment.

Moreover, Excellus had awareness that Ms. Rodriguez's and Ms. Robinson's complaints against Ms. Brown implicated race. SOF ¶ 41. Employer awareness is satisfied where the

18

circumstances would lead a reasonable employer to understand that discrimination was being alleged. *Summa*, 708 F.3d at 126. Here, HR involvement itself shows awareness:

1. Ms. Robinson explicitly raised that Ms. Brown's treatment of Ms. Rodriguez was race-related. SOF ¶ 34.

2. Internal HR communications reference race concerns. SOF ¶ 42.

3. HR chose to treat the matter as "interpersonal conflicts" rather than discrimination, SOF ¶ 42, which a jury could reasonably view as minimization, not a lack of notice.

An employer cannot escape liability by re-labeling discrimination complaints as mere "communication issues." *Raniola v. Bratton*, 243 F.3d 610, 624 (2d Cir. 2001). Indeed, under these circumstances, Excellus cannot plausibly claim that Ms. Rodriguez's concerns were understood as neutral workplace friction. Where an employer is aware of the employee's protected status, aware of differential treatment, and aware of race-linked context surrounding the complaint, a jury may conclude the employer understood the employee to be opposing discrimination. *See Feingold v. New York*, 366 F.3d 138, 156 (2d Cir. 2004).

### B. The "Intervening Event" Argument Fails Where Pretext is Shown.

Excellus contends that Ms. Rodriguez's negotiation of the River Hospital amendment in July 2022 constitutes an "intervening event" that severs any causal connection between her discrimination complaints and her termination. That argument fails as a matter of law where the employer's proffered justification is itself disputed and supported by evidence of pretext. An employer cannot manufacture a break in causation by pointing to the very conduct a jury could find was selectively characterized as misconduct in order to justify a predetermined termination. *Zann Kwan*, 737 F.3d at 846 (2d Cir. 2013). Here, the record contains substantial evidence from which a jury could conclude that the River Hospital amendment was not an independent, neutral basis for discharge, but rather a pretextual vehicle for discipline.

19

First, Excellus cannot document that the amendment caused any actual financial loss, and its own witnesses could not explain or substantiate the speculative $100,000 figure used to justify termination. Second, there was no written policy requiring advance approval from Mr. Vitagliano for mid-year amendments, nor any formally distributed directive prohibiting such negotiations. Third, Contract Directors were employed precisely to exercise professional judgment in structuring amendments and rate adjustments, and the Legal Department's review of contract language was part of the ordinary process. Lastly, White employees who committed significantly larger contractual or financial errors were subjected to coaching, performance plans, or corrective counseling, not immediate termination.

Where an employer's stated reason is contested and accompanied by evidence of disparate discipline and procedural irregularities, the "intervening event" doctrine does not foreclose causation. A reasonable jury could find that the River Hospital issue was seized upon as a justification for the discipline leadership had already decided to impose after Ms. Rodriguez raised concerns about racially disparate treatment. Under those circumstances, the amendment does not "break" causation, rather it reinforces the inference that the stated reason was pretextual.

### The Record Establishes Pretext.

Excellus argues that Plaintiff cannot satisfy the third stage of the *McDonnell Douglas* framework because she "admits" negotiating the River Hospital amendment. Def's Mem. at 42. That contention misstates the governing legal standard and ignores substantial record evidence from which a jury could find its explanation unworthy of credence. At the pretext stage, the question is not whether the employee engaged in the underlying conduct, but whether the employer's characterization of that conduct, and its decision to treat it as a terminable offense, was honestly held or instead a cover for discrimination. *McPherson v. New York City Dept. of Educ.*, 457 F.3d 211, 215–16 (2d Cir. 2006). The Second Circuit has repeatedly held that a plaintiff may

20

establish pretext even where the underlying act occurred, if a jury could find the employer's explanation exaggerated, selectively enforced, procedurally irregular, or applied differently to similarly situated employees. *Reeves*, 530 U.S. at 147–49; *Zann Kwan*, 737 F.3d at 846; *Carlton*, 202 F.3d at 137–38.

Excellus' reliance on the notion that "admitting the conduct defeats pretext" is legally incorrect. *McPherson*, 457 F.3d at 216 ("In a discrimination case, however, we are decidedly not interested in the truth of the allegations against plaintiff. We are interested in what '*motivated* the employer.'") (quoting *United States Postal Services Bd. Of Governors v. Aikens*, 460 U.S. 711, 716 (1983) (emphasis in original)). A plaintiff may establish pretext even where the underlying act occurred if a jury could find the employer's explanation exaggerated, selectively enforced, procedurally irregular, or applied differently to similarly situated employees. *See Reeves*, 530 U.S. at 147–48; *Zann Kwan*, 737 F.3d at 846

Here, Ms. Rodriguez's evidence of pretext is substantial:

1.      No documented loss: though Excellus claims Ms. Rodriguez's conduct cost the company approximately $100,000, the Company has not and cannot produce a single document confirming this alleged $100,000 loss; its own witnesses could not explain the calculation or confirm an actual financial impact.

2.      Absence of governing policy: the purported "approval rule" was never memorialized, distributed, or adopted as standard procedure.

3.      Scope of job responsibilities: Contract Directors were hired to exercise professional judgment in structuring amendments and negotiations, including legal review of contract language.

21

4.    Disparate discipline: White employees who committed significantly larger contractual or financial errors were provided with coaching, performance plans, or corrective counseling rather than termination.

5.    Procedural irregularities: Excellus did not offer Ms. Rodriguez a PIP, an opportunity for corrective counseling, a warning, or any other form of progressive discipline, despite the Company's history of using progressive discipline for others (White men).

6.    Disputed characterization of insubordination: whether Ms. Rodriguez's conduct constituted "blatant disregard" or an exercise of contractual judgment is a factual question for a jury.

A reasonable jury could find Excellus' asserted "honest belief" that Ms. Rodriguez violated a directive was not honestly held. The relevant question at the pretext stage is not whether the employer believed its reason, but whether a jury could find that belief was exaggerated, selectively enforced, procedurally irregular, or used as a cover for discrimination. *Reeves*, 530 U.S. at 147. Courts routinely reject summary judgment where the "honest belief" is undermined by the employer's own conduct. The aforementioned facts alone are sufficient for a reasonable jury to conclude Excellus' stated reason was exaggerated or selectively applied, which are classic indicators of pretext.

### CONCLUSION

Summary judgment is a drastic remedy reserved for cases in which no reasonable jury could find in the nonmovant's favor. This is not such a case. The record shows that Ms. Rodriguez was a qualified Contract Director hired to exercise independent judgment in complex provider negotiations. After she raised concerns about racially disparate treatment, leadership's posture toward her shifted. Within months, the Company seized upon a routine contract amendment, which

22

Ms. Rodriguez negotiated through normal channels, was reviewed by Legal, and was never shown to have caused a documented loss and transformed it into a terminable offense.

At the same time, White employees who committed substantially larger financial or contractual errors were coached, counseled, or placed on performance plans, not summarily discharged. The purported $100,000 "loss" remains undocumented and unexplained. The alleged approval "directive" was never reduced to writing, issued as policy, or consistently enforced. HR minimized race-linked complaints as mere "communication issues," conducted no discrimination investigation, and nonetheless participated in the termination decision.

Viewed as a whole—as the summary judgment standard requires—the evidence would permit a reasonable jury to conclude that Excellus' stated justification was exaggerated, selectively enforced, and used as pretext for discrimination and retaliation. Credibility determinations, competing inferences, and questions of motive are for a jury, not the Court, to resolve. Accordingly, Excellus' motion for summary judgment should be denied in its entirety.

Dated: February 6, 2026

The Washington Law Firm, PLLC

By: _____
Desireé H. Langley, Esq.
(Bar Roll No. 702883)
Melissa E. Washington, Esq.
(Bar Roll No. 4677001)
1050 Connecticut Avenue, Suite 500
Washington, D.C. 20036
Telephone: 202-770-3440
Fax: 202-991-2992
*Attorneys for Plaintiff*

23

## CERTIFICATE OF SERVICE

I hereby certify that on February 6, 2026, a copy of the foregoing Notice of Opposition to Defendant's Motion for Summary Judgment, Plaintiff's Response to Defendant's Statement of Material Facts, Plaintiff's Statement of Material Facts, and Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, as well as relevant exhibits, were served on all counsel of record via email:

Hannah K. Redmond, Esq. (702036)
Adam P. Mastroleo, Esq. (514408)
Bond, Schoeneck & King, PLLC
One Lincoln Center
Syracuse, New York 13202-1355
Telephone: (315) 218-8000
Facsimile: (315) 218-8100
Email: amastroleo@bsk.com
        hredmond@bsk.com
*Attorneys for Defendant*

*/s/ Desireé Langley*
Desireé Langley

24