UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

SHERI RODRIGUEZ,

                Plaintiff,

                v.

EXCELLUS BLUECROSS BLUESHIELD, INC.,

                Defendant.

Civil Action No.  5:22-cv-1050-AJB-PJE

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BOND, SCHOENECK & KING, PLLC
*Attorneys for Defendant*
One Lincoln Center
Syracuse, New York 13202
Telephone:  315-218-8000
Fax:  315-218-8100

Of Counsel:

    Hannah K. Redmond, Esq.
    Adam P. Mastroleo, Esq.

23025597.v6-2/20/26

## TABLE OF CONTENTS

**Page**

POINT I ................................................................................................................ 1

PLAINTIFF'S DISCRIMINATION CLAIM FAILS AT THE *PRIMA FACIE* STAGE .............. 1

    A.   Plaintiff's So Called "Constellation of Evidence" Does Not Create Any Issue of Material Fact............................................................................................................................... 1

    B.   Plaintiff's Alleged Comparator Evidence is Insufficient....................................................... 5

    C.   The Same Actor Inference Applies.................................................................................... 9

    D.   Plaintiff's Remaining Arguments Fail to Establish She Was Terminated Under Circumstances Giving Rise to an Inference of Discrimination ........................................ 11

POINT II ............................................................................................................. 12

PLAINTIFF'S RETALIATION CLAIM FAILS AT THE *PRIMA FACIE* STAGE .................. 12

POINT III............................................................................................................. 15

THERE IS NO EVIDENCE OF PRETEXT............................................................................ 15

CONCLUSION...................................................................................................... 18

23025597.v6-2/20/26

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bart v. Golub Corp.*,
96 F.4th 566 (2d Cir. 2024) ....................................................................................................15

*Brummell v. Webster Cent. Sch. Dist.*,
06-CV-6437, 2009 U.S. Dist. LEXIS 7644 (W.D.N.Y. Jan. 29, 2009)....................................12

*Dobbs v. NYU Langone Med. Ctr.*,
No. 18-CV-1285 (MKV), 2021 U.S. Dist. LEXIS 59564 (S.D.N.Y. Mar. 29, 2021) .............16

*El v. New York State Psychiatric Inst.*,
No. 13-cv-6628, 2014 U.S. Dist. LEXIS 119749 (S.D.N.Y. Aug. 19, 2014) ........................13

*Fleming v. MaxMara USA, Inc.*,
371 F. App'x 115 (2d Cir. 2010) ...........................................................................................18

*Goldblatt v. N.Y. Inst. of Tech.*,
2:18-cv-00265, 2024 U.S. Dist. LEXIS 215536 (E.D.N.Y. Nov. 26, 2024) ...........................2

*Harrison v. N. Shore Univ. Hosp.*,
No. CV 04-2033 (WDW), 2008 U.S. Dist. LEXIS 17330 (E.D.N.Y. Mar. 6, 2008) ..............16

*Hernandez v. Int'l Shoppes, LLC*,
100 F. Supp. 3d 232 (E.D.N.Y. 2015) ...................................................................................17

*Jean-Louis v. N. Shore Univ. Hosp.*,
No. 06-CV-3023 (JFB)(ARL), 2007 U.S. Dist. LEXIS 92103 (E.D.N.Y. Dec. 14, 2007) ......2

*Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*,
716 F.3d 10 (2d Cir. 2013)...............................................................................................12, 13

*Kolesnikow v. Hudson Valley Hosp. Ctr.*,
622 F. Supp. 2d 98 (S.D.N.Y. 2009).......................................................................................16

*Manoharan v. Columbia University College of Physicians & Surgeons*,
842 F.2d 590 (2d Cir. 1988)....................................................................................................13

*Reyes v. Westchester Cty. Health Care Corp.*,
19-CV-08916 (PMH), 2021 U.S. Dist. LEXIS 18659 (S.D.N.Y. Jan. 29, 2021), *aff'd* 2021
U.S. App. LEXIS 31915 (2d Cir. 2021), *cert. denied* 142 S. Ct. 1671 (2022)........................12

*Roches-Bowman v. City of Mount Vernon*,
No. 21-CV-5572 (KMK), 2022 WL 3648394 (S.D.N.Y. Aug. 24, 2022)................................2

ii

*Ruiz v. County of Rockland,*
    609 F.3d 486 (2d Cir. 2010)...........................................................................................6, 8

23025597.v6-2/20/26

Defendant Excellus Health Plan, Inc. d/b/a Excellus BlueCross BlueShield ("Excellus BCBS" or "Defendant") respectfully submits this reply memorandum of law in further support of its motion for summary judgment dismissing plaintiff, Sheri Rodriguez's ("Plaintiff"), Complaint in its entirety and with prejudice.

## POINT I

**PLAINTIFF'S DISCRIMINATION CLAIM FAILS AT THE *PRIMA FACIE* STAGE**

### A. Plaintiff's So Called "Constellation of Evidence" Does Not Create Any Issue of Material Fact

In an effort to avoid summary judgment, Plaintiff suggests that a "constellation" of evidence supports her race and gender discrimination claims at the *prima facie* stage. *Dkt. No. 63-17*, p. 12.[1]  Each of Plaintiff's arguments is addressed below.  Plaintiff's arguments misstate witness testimony, misconstrue the record evidence, and simply fall flat.

Throughout her opposition, Plaintiff vaguely refers to "racially charged workplace complaints," "race-linked complaints," and other similar complaints.  As set forth in Defendant's initial memorandum of law and addressed in Point II, *infra*, Plaintiff's misleading suggestion that she ever made such a complaint while employed by Excellus BCBS is categorically false and contradicted by Plaintiff's own testimony.  Indeed, Plaintiff testified that (i) she never complained of discrimination during her employment; (ii) never attributed Christie Brown's ("Ms. Brown") alleged conduct to race or gender bias; and (iii) only considered the treatment of which she now complains as discriminatory in hindsight—*i.e.*, post-termination.  Rodriguez Depo. Day 2, p. 12, 17-19; Rodriguez Depo. Day 1, p. 122.

Plaintiff also claims that Defendant failed to conduct an investigation.  This too is false.  As detailed in Defendant's initial memorandum of law, when Sabrina Robinson ("Ms. Robinson")

---

[1] Defendant cites the pagination generated by the Court's ECF stamped version of Plaintiff's memorandum of law.

raised concerns about Ms. Brown, Excellus BCBS's Employee Relations, Ethics, and Human Resources personnel (Jamie DeFonde, Francine Shea, and Monique Wallenhorst, respectively) were immediately engaged. Nichols Dec., ¶25; Wallenhorst Depo., pp. 28-30. 32-33; DeFonde Depo., pp. 56-58; Shea Depo., pp. 34-36. Following an initial review, it was clear the concerns about Ms. Brown were not related to unlawful discrimination or harassment, but instead involved interpersonal conflict. DeFonde Depo., pp. 15, 25-26; Shea Depo., pp. 5, 34-37. A series of meetings were held to address and resolve these issues. DeFonde Depo., pp. 25-27, 63; Nichols Depo., p. 104. After these meetings, Plaintiff did not raise any further concerns, indicating that Defendant's response was not only sufficient, but also effective. Nichols Dec., ¶28; Nichols Depo., p. 129; DeFonde Dec., ¶6; Wallenhorst Dec., ¶4; *see also Roches-Bowman v. City of Mount Vernon*, No. 21-CV-5572 (KMK), 2022 WL 3648394, at *6 (S.D.N.Y. Aug. 24, 2022) ("By far the best evidence that [the employer's] response was effective is that plaintiff does not allege that she has been . . . harassed . . . since reporting" the concern at issue). Plaintiff's newly formed opinion that Defendant's investigation and remedy was imperfect or not to her level of satisfaction is irrelevant. *See Goldblatt v. N.Y. Inst. of Tech.*, 2:18-cv-00265 (JMA)(LGD), 2024 U.S. Dist. LEXIS 215536, at *21 (E.D.N.Y. Nov. 26, 2024) ("any disputes as to the nature and quality of the investigation (even if accepted as true for purposes of the summary judgment motion) are ultimately beside the point because none of the purported irregularities even remotely suggest that [plaintiff's protected characteristic] was at all a factor in [p]laintiff's dismissal"); *Jean-Louis v. N. Shore Univ. Hosp.*, No. 06-CV-3023 (JFB)(ARL), 2007 U.S. Dist. LEXIS 92103, at *22 (E.D.N.Y. Dec. 14, 2007) (holding "conclusory allegations of an inadequate investigation of these complaints [are] insufficient to create a genuine issue of disputed fact" and "the fact that an employee disagrees with an employer's decision whether or not to conduct an investigation, or the reasons

2

given for the termination, does not demonstrate, by itself, that the employer's proffered reasons are a pretext for termination.").

Next, Plaintiff claims there was a "sudden emergence" of performance issues after she engaged in protected activity. First, as noted throughout this memorandum and in Defendant's initial motion papers, Plaintiff never engaged in protected activity. Second, Plaintiff once again misstates and misconstrues the record evidence. Plaintiff's performance issues were on-going and addressed by Jennifer Nichols ("Ms. Nichols") in early 2022 – *before* Plaintiff raised her generic concerns about Ms. Brown in June 2022. The evidence Plaintiff submitted with her opposition demonstrates as much. *See Dkt. No. 63-6.* In her notes from a February 11, 2022 meeting with Plaintiff, Ms. Nichols noted several performance issues and areas for improvement. *Id.* Ms. Nichols' notes specifically indicate: (i) that Plaintiff's "[w]ork was incomplete, and did not follow request;" (ii) that she "did not appear to understand what the budget was;" and (iii) that she "needs to show good judgment in evaluating requests," among other things. *Id.* Plaintiff's suggestion that performance issues were raised only after she complained about Ms. Brown is, therefore, disingenuous at best.

Plaintiff also refers to "performance bonuses" that she received during her employment. Plaintiff received a $5,000 bonus six months into her employment pursuant to pre-hire negotiations intended to raise her total compensation to the level she required to accept the position. Nichols Depo., pp. 30-35; Rodriguez Depo. Day 1, p. 32. While Plaintiff received this bonus, it is not evidence of outstanding performance, but completion of certain goals during Plaintiff's first six months of employment. Nichols Depo., pp. 30-35. Plaintiff also refers to "merit-based bonuses." As Ms. Nichols testified, these are based not on individuals' performance, but Excellus BCBS's performance as a company. *Id.*, pp. 49-50

3

Plaintiff also suggests that discriminatory animus can be drawn from the fact that Tony Vitagliano's ("Mr. Vitagliano") June 14, 2022 directive not to offer mid-term reimbursement rate increases was given verbally rather than in writing. The manner of communication here is entirely irrelevant. Plaintiff's assertion that this somehow constitutes evidence of discrimination hardly warrants a response. Defendant must note, however, the incongruence between Plaintiff's assertion that she was a high-performing employee responsible for managing two of Excellus BCBS's most complex regions (all of which is disputed), while simultaneously suggesting directives must be in writing for her to understand and/or follow them. Whether verbal or written, a directive was given, which Plaintiff failed to follow. Nichols Dec., ¶¶31, 36; Vitagliano Depo., p. 34; *see also* Rodriguez Depo. Day 1, p. 86. Though she takes issue with the manner of communication, Plaintiff does not allege otherwise. It is Plaintiff's failure to comply with Mr. Vitagliano's directive—not the manner in which the directive was delivered—that is relevant.

As detailed in Defendant's initial memorandum of law, Plaintiff's employment was terminated because she reopened the River Hospital contract and offered a mid-term rate increase in violation of Mr. Vitagliano's directive that no such increases could be offered without his advance approval. Nichols Depo., pp. 159-160; Nichols Dec., ¶44. Plaintiff's insubordination had a negative financial impact and increased Excellus BCBS's costs. The estimated financial impact of Plaintiff's offer to River Hospital was $100,000. Nichols Depo., pp. 196-97; *see also* Vitagliano Depo., pp. 53-56. Plaintiff challenges the legitimacy of Defendant's justification, suggesting Defendant asserted a "false narrative" and that the estimated financial impact of her unauthorized offer of a mid-term rate increase to River Hospital was a "fabrication." Plaintiff's characterizations are brazenly misleading.

There is not, and never has been, any dispute that the estimated $100,000 cost of Plaintiff's

4

insubordination was just that – an estimation. *See id*. Given the terms of Excellus BCBS's pre-amendment agreement with River Hospital, *any* increase to the agreed upon reimbursement rate necessarily resulted in increased costs. Nichols Dec., ¶33-37; Nichols Depo., pp. 187, 191; Vitagliano Depo., pp. 35, 59-60, 74-76; *see also* Rodriguez Depo. Day 1, p. 101. Contrary to Plaintiff's suggestion, an estimation or approximation is not synonymous with "fabrication." Though she takes no accountability, Plaintiff herself admitted the amendment would represent additional costs for Excellus BCBS. Rodriguez Depo. Day 1, p. 101 (Plaintiff admitting that Excellus would have been "more under budget" had she not offered River Hospital the unauthorized amendment).

Critically, Plaintiff's opposition fails to connect any of her foregoing arguments to her race or gender. Absent such a nexus, Plaintiff cannot demonstrate the requisite causal connection for a discrimination claim under 42 U.S.C. § 1983 ("Section 1983") or the New York State Human Rights Law ("NYSHRL"). Each of these arguments therefore fails to demonstrate that Plaintiff was terminated under circumstances giving rise to an inference of race or gender discrimination.

### B. Plaintiff's Alleged Comparator Evidence is Insufficient

Much of Plaintiff's opposition focuses on what she suggests is more favorable treatment of White male employees. Plaintiff specifically alleges that several White male employees avoided discipline despite making serious financial errors.[2] Again, Plaintiff repeatedly misconstrues and mischaracterizes the record evidence to support this baseless allegation. In fact, none of the individuals to whom Plaintiff refers are appropriate comparators.

Contrary to Plaintiff's suggestion, Excellus BCBS did not and never has suggested that Plaintiff must find the "perfect comparator." This is a phrase of Plaintiff's own invention and is

---

[2] Plaintiff suggests these White males were "protected and promoted," however, there is no evidence in the record that any of the male employees she refers to (none of whom are appropriate comparators) were promoted.

5

not consistent with the positions stated in Defendant's motion papers.  While the law does not require identicality, it does demand that Plaintiff identify an appropriate comparator, "who engaged in comparable conduct."  *Ruiz v. County of Rockland*, 609 F.3d 486, 494 (2d Cir. 2010) (citation omitted).  "[T]he standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of [the] plaintiff's and [the] comparator's cases . . ."  *Id*. at 494.  This is a showing Plaintiff has not and cannot make.

Plaintiff points to four alleged comparators: an unnamed White male manager, Al Bradley ("Mr. Bradley"), Paul Gandolfo ("Mr. Gandolfo"), and Kurt Brown ("Mr. Brown").  As to Mr. Gandolfo and Mr. Brown, Defendant relies on the arguments set forth in its initial memorandum of law.

Plaintiff's opposition repeatedly alleges that a White male manager failed to report a $40 million liability, but was only placed on a performance improvement plan ("PIP") as a result.[3] Though she cites Mr. Vitagliano's deposition as support, Plaintiff misstates and mischaracterizes his testimony in virtually every aspect.

Mr. Vitagliano testified that in 2025 one of his direct reports, *a male*, placed one of his managers, *a female*, on a PIP.  Vitagliano Depo., pp. 45-46.  Mr. Vitagliano specifically testified: "So this year I can think of one of my direct reports who had a performance improvement plan with one of *his* managers."  *Id*., p. 45 (emphasis added).  At the time of his deposition, Mr. Vitagliano further testified that he believed the manager was still under the PIP, and that "[o]ne of *her* employees was terminated over the same incident . . ."  Vitagliano Depo., pp. 45-46 (emphasis added).  Other than the use of these pronouns, Mr. Vitagliano did not testify – because he was not

---

[3] Mr. Vitagliano testified that the liability in question was "large," describing it as "[l]ike $40 million or some such thing."  Vitagliano Depo., p. 46.  Interestingly, Plaintiff is willing to accept an estimation here, while maintaining such an estimation cannot be relied upon with respect to the River Hospital amendment.

6

asked – about the sex of these individuals.[4]  *See id.*, pp. 45-47.  As Mr. Vitagliano's testimony suggests, his direct report is male, and the manager involved, Bethany Stapley ("Ms. Stapley"), is female.  *Id.*; Reply Declaration of Antonio Vitagliano, sworn to February 17, 2026 ("Vitagliano Reply Dec."), ¶4.

Plaintiff also mischaracterizes the circumstances leading to Ms. Stapley's PIP.  The failure to report the approximately $40 million liability was committed not by Ms. Stapley, but by her direct report, Peter Cooke ("Mr. Cooke").  Vitagliano Reply Dec., ¶¶5-8.  Mr. Cooke is a White male.  Vitagliano Reply Dec., ¶5.  As Mr. Vitagliano testified, Mr. Cooke was terminated for his misconduct in failing to report a known liability.  Vitagliano Reply Dec., ¶8; Vitagliano Depo., pp. 45-47.  Additional details regarding the situation involving Mr. Cooke and Ms. Stapley are set forth in the reply declaration of Mr. Vitagliano.  It bears noting, however, that the situation did not result in a financial loss as Excellus BCBS did not concede its right to recover the liability.  Vitagliano Reply Dec., ¶7; Vitagliano Depo., p. 47.  Mr. Cooke was nevertheless terminated due to his grave error in judgment in failing to report the known liability to his manager.  Vitagliano Reply Dec., ¶8; Vitagliano Depo., p. 47.  Ms. Stapley was not aware of the liability and played no role in failing to report it.  Vitagliano Reply Dec., ¶9.  She was placed on a PIP, however, due to concerns about the level of supervision she was providing her direct reports.  *Id.*

Plaintiff's opposition fails to mention the fact that a male employee (Mr. Cooke) was terminated for his role in not reporting the financial liability – something that was clear from Mr. Vitagliano's deposition testimony.  *See* Vitagliano Depo., pp. 45-46.  Plaintiff's decision to ignore this critical fact is a tacit admission that the $40 million liability situation provides no comparator evidence whatsoever.  Indeed, the fact that a female employee received a PIP rather than

---

[4] Earlier in his deposition, Mr. Vitagliano testified about a different employee – a White male – who was placed on a PIP, but was unable to recall the circumstances.  Vitagliano Depo., pp. 44-45.

termination takes any wind out of the sails of a gender discrimination claim.  Any argument regarding the severity of Ms. Stapley's discipline is further diminished by the fact that her conduct (poor supervision of a subordinate) bears no resemblance to Plaintiff's conduct (defiance of an express directive).  *See Ruiz*, 609 F.3d at 494.

Critically, the fact that Mr. Cooke, a White male, was terminated for misconduct that did not actually materialize into a financial loss for Defendant, refutes any notion that Plaintiff's termination was racially motivated and eliminates Plaintiff's argument that there is any double standard under which White males receive better treatment or more lenient discipline at Excellus BCBS.

Finally, much like the alleged situations involving Mr. Brown and Mr. Gandolfo, the situation involving Mr. Bradley did not involve insubordination or misconduct; it involved performance issues and an error in a term sheet.  *See* Nichols Depo., pp. 44-45, 222-23.  Ms. Nichols testified that Mr. Bradley made an error when converting negotiated items from a term sheet into the contract document such that the contract misstated the agreed upon terms.  Nichols Depo., pp. 44-45, 222-23.  In other words, Mr. Bradley made "an error" in the written document, not in the underlying terms or negotiation.  *Id*.  He was given a final written warning as a result.  *Id*., p. 222.

While Plaintiff characterizes Mr. Bradley's mistake as "contractual errors involving financial representations," this is not supported by the record evidence.  *See id*.  Mr. Vitagliano was unable to recall the facts of the underlying situation, and Ms. Nichols gave no testimony suggesting that the incorrect contractual terms Mr. Bradley included in a contract document were financial in nature.  Vitagliano Depo., pp. 49-50;  Nichols Depo., pp. 44-45, 222-23.  Furthermore, Plaintiff does not allege, and the record does not support any suggestion that Mr. Bradley's error

8

resulted in any financial loss for Excellus BCBS. *Id.* As with Mr. Brown and Mr. Gandolfo, Plaintiff also cannot demonstrate that Mr. Bradley was insubordinate or acted in defiance of an express directive. Given Plaintiff's inability to demonstrate that Mr. Bradley engaged in misconduct comparable to her own, he is not an appropriate comparator.

It is evident from Plaintiff's opposition that she continues to minimize the seriousness of the conduct that led to her termination. Plaintiff's mid-term offer to River Hospital was not a simple mistake that increased costs for Excellus BCBS; it was an act taken in direct disregard of a clear and explicit directive. Plaintiff's purported comparator evidence fails to identify a single instance in which an employee engaged in insubordination yet avoided discipline. Instead, she relies solely on situations in which she claims White male employees were not disciplined for financial errors. As explained above and in Defendant's original memorandum of law, Plaintiff's assertions rest entirely on second-hand accounts, hearsay, and demonstrably incorrect information. Plaintiff also ignores Defendant's evidence regarding Ryan Donahue, a White male reporting up to Ms. Nichols, who was terminated for misconduct similar to Plaintiff's misconduct.

Plaintiff's attempted reliance on comparator evidence fails to create any issue of material fact. For the reasons above, together with those set forth in Defendant's initial motion papers, Plaintiff cannot rely on comparator evidence to demonstrate that she was terminated under circumstances giving rise to an inference of race or gender discrimination.

### C. The Same Actor Inference Applies

Citing "changed circumstances," Plaintiff argues that the same actor inference does not apply in this case. The changed circumstances that Plaintiff refers to is her alleged protected activity. Plaintiff's opposition repeatedly claims that she "raised race-linked concerns following her hire." *Dkt. No. 63-17*, pp. 14, 15. Plaintiff does not cite her own deposition testimony in support of this proposition nor did she submit a declaration or affidavit in support of her opposition

9

to Defendant's motion for summary judgment.  In fact, this assertion is inconsistent with Plaintiff's own testimony.

As set forth in Defendant's initial memorandum of law and above, Plaintiff admitted that she *never* complained about discrimination.  Rodriguez Depo. Day 2, p. 12, 17-19; Rodriguez Depo. Day 1, p. 122.  While Plaintiff noted that she was a leader of color and did not want to be problematic during a conversation with Ms. Nichols in February 2022, that hardly amounts to protected activity or "race-linked dynamics" that did not exist at the time of hire.  *See* Nichols Dec., ¶21; *see* Point II, *infra*.  Importantly, during this conversation with Ms. Nichols, Plaintiff primarily addressed concerns her team members – Sabrina Robinson ("Ms. Robinson") and Allison Nickerson ("Ms. Nickerson"), two White women – had about Ms. Brown.  Nichols Dec., ¶¶20-21; Rodriguez Depo. Day 1, p. 168; Nichols Depo., pp. 82-87.  Although Plaintiff also complained that Ms. Brown spoke to her disrespectfully about being on time for meetings, she made no allegations regarding race, sex, or any protected characteristic.  Rodriguez Depo. Day 1, p. 161, 175-177; Rodriguez Depo. Day 2, p. 12; *see also* Nichols Dec., ¶21.  To the contrary, Plaintiff suggested that Ms. Brown was generally difficult as Ms. Robinson, Ms. Nickerson, Dan Kane, and Plaintiff herself – all members of various protected classes – were allegedly on the receiving end of Ms. Brown's poor treatment.  *See Dkt. No. 63-6.*

Given these facts, Plaintiff's reliance on *Feingold v. New York* is misplaced.  366 F.3d 138, 155 (2d Cir. 2004).  Unlike the plaintiff in *Feingold v. New York*, Plaintiff never raised concerns of discrimination.  As set forth in Point II, *infra*, none of her concerns about Ms. Brown rose to the level of protected activity.  There are, therefore, no changed circumstances to be heard of.  Ms. Nichols knew when hiring Plaintiff that Plaintiff was a Black woman and that Plaintiff was being hired to fill a senior level supervisory position.  *See* Nichols Depo., pp. 17-21.  In other words,

10

Plaintiff noting that she was a leader of color was not new information and hardly presented changed circumstances. The same actor inference therefore applies for the reasons stated in Defendant's original memorandum of law.

### D. Plaintiff's Remaining Arguments Fail to Establish She Was Terminated Under Circumstances Giving Rise to an Inference of Discrimination

Finally, Plaintiff claims that she was subjected to workload disparities, denied access to unidentified data, and the subject of a stray comment Mr. Vitagliano made about her reliance on legal. These arguments are addressed in Defendant's original memorandum of law. As set forth therein, none of these allegations have any relation to Plaintiff's race or sex, or to her termination from employment. In addition to the arguments made in Defendant's original memorandum of law, however, Plaintiff seemingly concedes that none of these allegations constitute adverse employment action.

With respect to her data-related allegations, Plaintiff argues that Ms. Brown's alleged unwillingness to share certain unidentified data is evidence of discriminatory motive with respect to the unrelated River Hospital amendment. This is nonsensical and conflates two distinct matters. Plaintiff has not alleged that Ms. Brown's alleged withholding of data impacted the River Hospital negotiations or amendment in any way. Further, there is no dispute that Ms. Brown was not at all involved in Plaintiff's termination. *See* <u>Nichols Depo.</u>, pp. 193-195; <u>Vitagliano Depo.</u>, pp. 80-81; <u>DeFonde Depo.</u>, p. 38. Thus, whether Ms. Brown did or did not withhold certain data is immaterial and does not create an issue of fact sufficient to overcome summary judgment.[5]

---

[5] Citing the deposition testimony of Sabrina Robinson, Plaintiff's opposition alleges that Ms. Brown posted a photograph of herself wearing a Confederate flag t-shirt on Facebook. This is a demonstrably false allegation. Ms. Brown has never updated her Facebook profile picture to a photo of herself wearing a t-shirt with a Confederate flag on it, has never taken such a photograph, and has never owned anything bearing the Confederate flag. Declaration of Christie Brown, sworn to February 17, 2026, ¶¶3-4, Exs. A-B. Moreover, because it is undisputed that Ms. Brown played no role in Plaintiff's termination, this allegation has no relevance. Plaintiff's inclusion of this unsupported claim serves only to divert attention from the issues that actually matter.

Despite her kitchen-sink approach, Plaintiff cannot establish any genuine issue of material fact regarding the circumstances of her termination.  Consequently, her race and gender discrimination claims fail at the *prima facie* stage.

## POINT II

**PLAINTIFF'S RETALIATION CLAIM FAILS AT THE *PRIMA FACIE* STAGE**

Plaintiff did not engage in protected activity for purposes of a retaliation claim under Section 1983 or the NYSHRL.  While Plaintiff is correct that there are no magic words required to complain of discrimination, she underappreciates the requirement that a complaint of discrimination must be "in sufficiently specific terms so that the employer is put on notice that the plaintiff believes he or she is being discriminated against on the basis of race, gender, national origin, or any other characteristic protected by" applicable law.  *Brummell v. Webster Cent. Sch. Dist.*, 06-CV-6437, 2009 U.S. Dist. LEXIS 7644, at *17-18 (W.D.N.Y. Jan. 29, 2009); *Reyes v. Westchester Cty. Health Care Corp.*, 19-CV-08916 (PMH), 2021 U.S. Dist. LEXIS 18659, at *31 (S.D.N.Y. Jan. 29, 2021), *aff'd* 2021 U.S. App. LEXIS 31915 (2d Cir. 2021), *cert. denied* 142 S. Ct. 1671 (2022) ("'Although particular words such as 'discrimination' are certainly not required to put an employer on notice of a protected complaint, neither are they sufficient to do so if nothing in the substance of the complaint suggests that the complained-of activity is, in fact, unlawfully discriminatory.'" (quoting *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 17 (2d Cir. 2013))).

Plaintiff – who admittedly did not complain of discrimination and did not perceive her treatment as race related until *after* her termination – does not meet this standard.  *See Kelly*, 716 F.3d at 17 ("Because there is no indication that Kelly believed that her sex had anything to do with her treatment or that defendants could have understood her statements as such, she has failed to establish a prima facie case for retaliation under Title VII or the NYSHRL.").  Plaintiff claims

12

there are issues of material fact because she was the only Black Contract Director in the department, reported that Ms. Brown treated her differently for unknown reasons, and separately noted that she was a leader of color. *Dkt. No. 63-17*, p. 23. None of this constitutes protected activity.

First, Plaintiff noted that she was a person of color in a February 2022 meeting with Ms. Nichols. <u>Nichols Dec.</u>, ¶21. She later reported that she felt Ms. Brown treated her differently than her counterparts, Mr. Kane and Chris McGann ("Mr. McGann"), in June 2022. <u>Nichols Dec.</u>, ¶¶ 26-27. Plaintiff's failure to delineate the timeline artificially suggests that these events occurred simultaneously. There was no discussion of race or gender during Plaintiff's June 2022 discussion with Ms. Nichols. <u>Nichols Dec.</u>, ¶21.

Second, without more, the fact that Plaintiff was the only Black Contract Director in her department is not relevant to her retaliation claims. Courts have consistently held that generalized complaints – even when noting one's race or generically mentioning a protected class – do not constitute protected activity for purposes of a retaliation claim. *See*, *e.g.*, *Manoharan v. Columbia University College of Physicians & Surgeons*, 842 F.2d 590, 594 (2d Cir. 1988) (holding complaint that minority candidates should have been given more consideration in a hiring process was not protected activity given that plaintiff-appellant's "objections at the time neither pointed out discrimination against particular individuals nor discriminatory practices by [defendant]"); *Kelly*, 716 F.3d at 17 (even where plaintiff's complaint used words like "discrimination," "harassment," and "sexual favoritism" it did not constitute protected activity given the lack of any suggestion that she was discriminated against because of sex). Similarly, in the discrimination context, merely belonging to a protected class is not enough to establish a discrimination claim. *See El v. New York State Psychiatric Inst.*, No. 13-cv-6628, 2014 U.S. Dist. LEXIS 119749, at *11 (S.D.N.Y.

13

Aug. 19, 2014) ("The fact that [plaintiff], the only black male on his floor in 2010, was terminated in 2014 does not 'render plausible' an inference that he was terminated because of his gender or race.).

It naturally follows that mere membership in a protected class does not transform a generic complaint into protected activity. If membership in a protected class were sufficient to convert an otherwise neutral complaint into protected activity, every routine workplace gripe would qualify. This is not the law.

Third, with respect to Plaintiff's complaint that she felt Ms. Brown treated her differently than Mr. Kane and Mr. McGann, Plaintiff conveniently fails to mention that when she was asked by Ms. Nichols why that might be, Plaintiff was unable to provide any explanation. Nichols Dec., ¶27; Rodriguez Depo. Day 2, pp. 18-19. Plaintiff also fails to appreciate the reality that Ms. Robinson – a White woman – made similar complaints about Ms. Brown, further eliminating any basis for Excellus BCBS to believe that Plaintiff's facially neutral complaint was at all related to race.

Even assuming *arguendo* that Plaintiff engaged in protected activity, the River Hospital amendment constituted an intervening event that breaks any causal connection to her facially neutral concerns about Ms. Brown. For this additional reason, Plaintiff cannot state a *prima facie* retaliation claim.

Plaintiff claims that Defendant's intervening event argument fails because there is evidence of pretext. Again, Plaintiff claims that Defendant's legitimate explanation for Plaintiff's termination is manufactured because Excellus BCBS estimated the financial impact of the River Hospital amendment. Plaintiff misses the forest for the trees. Excellus BCBS has never claimed that the *financial impact* of the River Hospital amendment was the sole reason for Plaintiff's

14

termination.    As set forth in Defendant's initial motion papers, and as corroborated by the undisputed testimony of Defendant's witnesses, it was Plaintiff's defiance of an express directive, which resulted in financial losses, that led to Plaintiff's termination.    Nichols Depo., p. 160; DeFonde Depo., pp. 38-43.    Plaintiff's suggestion that there is evidence of disparate discipline (there is not) which undermines application of the intervening event doctrine fails for the reasons set forth in Section I.B, *supra*.

Because Plaintiff did not engage in protected activity in the first instance and cannot demonstrate any causal connection in the second instance, her retaliation claims fail as a matter of law.

## POINT III

### THERE IS NO EVIDENCE OF PRETEXT

Lastly, Plaintiff cannot demonstrate pretext.[6]    As discussed at length in Defendant's original memorandum of law, Plaintiff was terminated for legitimate, non-discriminatory, non-retaliatory reasons – *i.e.*, her insubordination, which resulted in a negative financial impact on Excellus BCBS.

In her futile endeavor to identify issues of material fact as to pretext, Plaintiff largely reiterates the allegations made in support of her *prima facie* discrimination claims.    That is, Plaintiff claims there is evidence of pretext because (i) Excellus BCBS estimated the financial impact of the mid-term increase she offered River Hospital; (ii) the directive not to extend mid-term increases without Mr. Vitagliano's approval was not written or adopted as standard procedure; (iii) she was hired as a Contract Director to exercise professional judgment; (iv) White

---

[6] Plaintiff's opposition focuses on the traditional pretext analysis.  Plaintiff does not address, and therefore fails to oppose, Defendant's argument that neither Plaintiff's race nor gender was a "motivating factor" in the termination determination at the third step of the relevant burden shifting analysis.  *Bart v. Golub Corp.*, 96 F.4th 566, 570, 578 (2d Cir. 2024).  Plaintiff's failure to oppose this aspect of Defendant's argument constitutes waiver.

males received lesser discipline for larger contractual or financial errors; (v) she was not offered a PIP in the wake of the River Hospital situation; and (vi) there is a dispute as to the characterization of her insubordination.  Most of these arguments are addressed above, and fail at the more demanding pretext stage for the same reasons that they fail at the *prima facie* stage.

In addition to the reasons stated above, Plaintiff's arguments regarding the estimated financial impact of the River Hospital amendment miss the mark at the pretext stage of the relevant analysis.  Even assuming *arguendo* that Excellus BCBS's estimation was incorrect, that is not evidence of discrimination.  *Id.*  Indeed, "[e]ven if [an employer's] decision to terminate [an employee] was informed by erroneous facts or mistaken beliefs," as long as it is not based on a discriminatory reason, it provides no basis for liability.  *Harrison v. N. Shore Univ. Hosp.*, No. CV 04-2033 (WDW), 2008 U.S. Dist. LEXIS 17330, at *35 (E.D.N.Y. Mar. 6, 2008); *see also Kolesnikow v. Hudson Valley Hosp. Ctr.*, 622 F. Supp. 2d 98, 111 (S.D.N.Y. 2009) ("Where a plaintiff has been terminated for misconduct, the question is not whether the employer reached a correct conclusion in attributing fault [to the plaintiff] . . . but whether the employer made a good-faith business determination."  (quotations and citations omitted)); *Dobbs v. NYU Langone Med. Ctr.*, No. 18-CV-1285 (MKV), 2021 U.S. Dist. LEXIS 59564, at *17 (S.D.N.Y. Mar. 29, 2021).  Given that any increase in the River Hospital reimbursement rate necessarily resulted in increased costs, Excellus BCBS terminated Plaintiff's employment based on its reasonable belief that the scope of the financial impact was approximately $100,000.  However, even if the estimated amount was wrong, it is not evidence of discrimination, as there is no dispute that there was an adverse financial impact.  *See* <u>Nichols Dec.</u>, ¶33-37; <u>Nichols Depo.</u>, pp. 187, 191; <u>Vitagliano Depo.</u>, pp. 35, 59-60, 74-76;  <u>Rodriguez Depo. Day 1</u>, p. 101.

16

With respect to Plaintiff's suggestion that there is a dispute about whether the River Hospital amendment constituted a blatant disregard for Mr. Vitagliano's directive or the exercise of contractual judgment, however, it is Plaintiff who attempts to manufacture an issue of fact. Plaintiff seemingly suggests that her defiance of Mr. Vitagliano's directive can be justified as an "exercise of contractual judgment," and that this is a question for the jury to decide. *Dkt. No. 63-17*, p. 27.  This is not a relevant inquiry at the pretext stage.

Plaintiff is correct that her position as Contract Director allowed her to negotiate contracts, however, she was responsible for doing so "within an established budget" and in a manner that ensured Excellus BCBS was a "prudent purchaser of services." Nichols Dec., Ex. A.  As soon as the River Hospital contract was finalized for 2022 without any increase in the reimbursement rate, the budget for 2022 became 0%.  Nichols Dec., ¶35; Nichols Depo., p. 191; Vitagliano Depo., pp. 59-60.  When Plaintiff offered River Hospital an increase effective September 1, 2022, she not only negotiated a contract outside of the established budget, but did so in defiance of Mr. Vitagliano's directive.

We must emphasize that ***Plaintiff does not – and cannot – claim that Mr. Vitagliano did not give the directive at issue.***  Instead, her argument suggests she should have been permitted to disregard it.  Plaintiff's suggestion that a jury should be allowed to excuse her failure to follow Mr. Vitagliano's directive because her job duties gave her authority to negotiate contracts must be rejected.  It is not the province of the trier of fact to second guess an employer's business judgment or the propriety of the job-related directives given by leadership. *Hernandez v. Int'l Shoppes, LLC*, 100 F. Supp. 3d 232, 263 (E.D.N.Y. 2015) ("Federal courts do not have a roving commission to review business judgments, and may not sit as super personnel departments, assessing the merits— or even the rationality—of employers' non-discriminatory business decisions." (citation and

17

quotations omitted)); *Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 118 (2d Cir. 2010) ("Only where an employer's business decision is so implausible as to call into question its genuineness should th[e] Court conclude that a reasonable trier of fact could find that it is pretextual.").

In this case, there is no evidence of shifting explanations, disparate discipline, or proof that Plaintiff was terminated for any reason but her unauthorized offer of a mid-term rate increase to River Hospital in July 2022. The totality of the evidence is devoid of any suggestion that Plaintiff's race, gender, or alleged protected activity (which did not occur in the first instance) played any role in the decision to terminate her employment. As Plaintiff has not identified any triable issue of fact, Defendant's motion for summary judgment must be granted in full.

## CONCLUSION

Based upon the foregoing, together with the reasons set forth in its original memorandum of law, Excellus BCBS respectfully requests that its motion for summary judgment be granted, and Plaintiff's Complaint be dismissed in its entirety, with prejudice.

Dated:  February 20, 2026                         BOND, SCHOENECK & KING, PLLC

By:_____
    Hannah K. Redmond, Esq. (702036)
    Adam P. Mastroleo, Esq. (514408)
    Office and Post Office Address
    One Lincoln Center
    Syracuse, New York  13202-1355
    Telephone:  (315) 218-8000
    Facsimile:  (315) 218-8100
    Email:     amastroleo@bsk.com
               hredmond@bsk.com

    *Attorneys for Defendant Excellus*
    *BlueCross BlueShield*

18

23025597.v6-2/20/26